Jarrad L. Wood (SBN 310688)
Email: jlwood@reedsmith.com
Avraham E. Aizenman (SBN 304663)
Email: eaizenman@reedsmith.com
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

James Pistorino (SBN 226496)
Email: james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff
Ronald Maddern

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MADDERN,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,<br><br>　　　　　Defendant. | No.: 3:21-cv-01298-MMA-BLM<br><br>**FIRST AMENDED COMPLAINT**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE**<br><br>**JURY TRIAL DEMANDED** |

1. Plaintiff, Staff Sargent, Ronald Maddern brings this action against Defendant Lloyd Austin, in his official capacity as Secretary of the United States Department of Defense, to obtain injunctive relief for violation of federal law. Plaintiff makes the following allegations based on the investigation of counsel and on information and belief.

## I. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 10 U.S.C., ch. 55 (military health benefits) 5 U.S.C. § 701, et seq. (the Administrative Procedure Act), and 28 U.S.C. § 1331 (federal question).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because the plaintiff resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## II. PARTIES

4. Plaintiff Ronald Maddern is an individual and a resident of San Diego County, California.

5. Defendant Lloyd Austin is sued in his official capacity as the Secretary of United States Department of Defense.

## III. FACTUAL BACKGROUND

6. Currently, Mr. Maddern is 73 years of age and lives in El Cajon, California with his wife of more than 47 years (Deborah).

7. Mr. Maddern retired as a Staff Sargent after 24 years of service with the United States Army, principally on overseas assignments.

8. As a result of his service, Mr. Maddern qualified for certain health care benefits provided to retired uniformed service members under the "TRICARE" program. *See* 10 U.S.C. § 1075.

/ / /

/ / /

/ / /

9. The TriCare Policy Manual in effect at the relevant time[1] provided, in relevant part (Chapter 4, Section 6.1, Paragraph 4.1):

> Services and supplies required in the diagnosis and treatment of illness or injury involving the musculoskeletal system are covered. U.S. Food and Drug Administration (FDA) approved surgically implanted devices are also covered.

10. Pursuant to 32 C.F.R. § 199.4(a)(1)(i), TriCare is required to pay for medically reasonable and necessary services and supplies required to diagnose an illness or injury, unless there is an exclusion or limitation.

11. Over a period of several years, Mr. Maddern developed lumbar spinal stenosis.

12. Lumbar spinal stenosis is a narrowing of the spinal canal in the lower region of the spine which causes pressure on the spinal cord resulting in, *inter alia*, debilitating/excruciating pain, weakness, and inability to walk. Typically, stenosis is caused by narrowing of the space between/compression of the vertebrae.

13. Mr. Maddern's condition deteriorated until, eventually, he was unable to walk more than a few feet at a time, was wheelchair bound, in constant pain, and essentially homebound and isolated (other than the company of his wife, Deborah, who also acted as his primary caregiver).

14. Mr. Maddern remained in this condition for some 14 years.

15. During this period, various approaches to address the symptoms (but not cause) of his stenosis were tried by his treating physicians. Among these approaches were opioid patches that themselves have many serious, negative side effects.

16. In the most severe cases, lumbar spinal stenosis can be addressed using a procedure called a "laminectomy."

---

[1] *See* TriCare Policy Manual, Change 12 dated November 2, 2017 available at https://manuals.health.mil/.

– 2 –
AMENDED COMPLAINT

17. In a laminectomy, portions of the vertebra (*i.e.*, the lamina) are crushed and removed to create space for the spinal cord.

18. A laminectomy is conducted under general anesthesia, involves a large incision in the back, a significant amount of blood loss, time in the intensive care unit, and a prolonged recovery period.

19. Because a laminectomy is a major surgery and has the risks associated therewith (including the risk of general anesthesia), many people who might benefit from a laminectomy are unable to have one as a result of other medical issues.

20. One medical issue that might contraindicate a laminectomy is diabetes. As compared to the general population, persons suffering from diabetes experience higher infection rates and slower healing.

21. Unfortunately, laminectomy operations have a significant failure rate - in the range of 60% at three years.

22. An alternative approach to a laminectomy is the use of a product called an "interspinous spacer" (ISS).

23. An ISS is a mechanical device that fits between the vertebrae. While initially quite small, once inserted, the ISS expands to create more separation between the relevant vertebrae.

24. As a result, compression of the vertebrae and the spinal cord is reduced/eliminated as well as the associated pain, weakness, and immobility.

25. If more there is compression between multiple vertebra, then more than one ISS can be used to treat the effected areas.

26. An ISS can be inserted using a local anesthetic, through a half-inch incision.

27. An ISS is provided on an out-patient basis with the procedure lasting less than one hour and with the patient returning home that same day.

28. The ISS at issue in this case is the Vertiflex Superion product.

29. The Superion product was the subject of an FDA pre-market approval in May 2015.

30. A pre-market approval is the most stringent type of approval required by the FDA and approval indicates that the device/service at issue is proven to be safe and effective.[2]

31. No later than January 1, 2017, the Superior product was assigned Current Procedural Technology (CPT) Codes 22869 (single ISS) and 22870 (multiple ISSs).

32. A regular CPT code, such as that enjoyed by the Superion product, indicates that the device is not considered experimental or investigational and is proven safe and effective.

33. The Superion product has been the subject of a number of scientific studies in peer-reviewed publication demonstrating the safety and effectiveness of the Superion product.

34. The Superion product is a Medicare covered benefit.

35. It would not have been safe to perform a laminectomy on Mr. Maddern because of other conditions he suffers from (e.g., diabetes).

36. On August 10, 2017, Mr. Maddern underwent an outpatient procedure and the Superior product was inserted to his spine to relieve pressure on some of the vertebrae.

37. Within days, Mr. Maddern was out of his wheelchair, able to walk, and his pain had reduced dramatically.

38. On November 9, 2017, Mr. Maddern underwent an additional procedure where another Superion ISS was inserted to relieve additional pressure.

39. Mr. Maddern's claims for TriCare coverage for these procedures were denied through multiple appeals.

---

[2] See https://www.fda.gov/medical-devices/premarket-submissions/premarket-approval-pma

– 4 –
AMENDED COMPLAINT

40. As the penultimate step, these appeals included a hearing held on August 22, 2019 before Administrative Law Judge (ALJ) Nichole Noel.

41. This was a four-hour hearing, including testimony from Mr. and Mrs. Maddern, Mr. Maddern's doctor (Dr. Verdloin, who testified without compensation), and some 24 exhibits (including multiple studies showing the safety and effectiveness of the Superion product).

42. In addition to a pre-hearing brief, on September 13, 2019, Mr. Maddern submitted a post-hearing Closing Statement, thereby closing the record.

43. Pursuant to 32 C.F.R. § 199.10(d)(12), after the record is closed, within 60 days, the ALJ was required to issue a recommendation regarding coverage, including a written statement of the findings and statement of the reasons for a recommended decision.

44. Sixty days after September 13, 2019, November 11, 2019.

45. When no recommendation was received by January 2020, Mr. Maddern's counsel inquired (ccing TriCare/the department's counsel) about the recommendation and the ALJ indicated that a recommended decision would issue by the end of January 2020.

46. When nothing had been received by June 2020, Mr. Maddern's counsel again inquired (ccing TriCare/the department's counsel) and requested a copy of any recommendation.

47. Counsel for TriCare/the department responded that an inquiry was made as to where the final decision was.

48. No explanation was given for how TriCare/the department's representative had information about the case that Mr. Maddern's counsel lacked.

49. In response to further questioning, the ALJ responded that a recommendation issued earlier in the year but that the ALJ believed the authority to provide a copy of the recommendation was with another entity.

50. Mr. Maddern's counsel again requested to know when a recommendation issued and no response was received and no copy of the recommendation provided.

51. Pursuant to 32 C.F.R. § 199.10(e)(1), the Secretary is expected to act within 90 days of receiving a recommended decision from the ALJ.

52. When no decision had been received by May 2021, Mr. Maddern's counsel again inquired.

53. Mr. Maddern's counsel wrote the ALJ (cc'ing TriCare/the department's counsel) and again requested information on when a recommendation issued, a copy of the decision, and whether a copy was sent to TriCare/the department's counsel.

54. The ALJ responded without copying TriCare/the department's counsel and indicated that a recommendation had issued in February 2020, that no copy had been provided to TriCare/the department's counsel, and that a final decision would "hopefully" issued by the end of May.

55. Mr. Maddern forwarded the ALJ's *ex parte* communication to TriCare/the department's counsel.

56. Separately, Mr. Maddern's counsel wrote TriCare/department's counsel and indicated Mr. Maddern's intention to seek a *writ of mandamus* unless a decision on his claims was received within 10 days. In addition, Mr. Maddern's counsel indicated Mr. Maddern's intention to seek all communications with the ALJ in order to determine how TriCare/department's counsel had information about a recommendation/decision that Mr. Maddern lacked.

57. Thereafter, on May 19, 2021, TriCare/the department's counsel sent a copy of decision not previously provided to Mr. Maddern dated that same day denying Mr. Maddern's claim.

58. The decision addressed only address Mr. Maddern's claim for the August 10, 2017, treatment and did not address Mr. Maddern's claim for November 9, 2017 treatment.

59. Further, the decision confused the X-STOP product (manufactured by another company) with the Superion product at issue.

60. In addition, the decision contended that the Superon products was "unproven."

61. Mr. Maddern lacked the funds to pay for his treatment directly.

62. As a result of the Secretary's failure to provide coverage in accordance with the statute, regulations, and coverage manuals, Mr. Maddern's credit has been damaged and both he and his wife have been denied additional needed medical treatment.

63. On information and belief, Tricare/the department's counsel (Ms. Leslie Greer) engaged in improper, *ex parte* communications with the ALJ (Ms. Nicole Noel) and/or the decision maker (*i.e.*, Dr. Kenneth Yale)/his office.

64. On information and belief, and/or after reasonable opportunity for further investigation or discovery, Ms. Greer consulted with Ms. Noel and/or the decision maker (*i.e.*, Dr. Kenneth Yale)/his office on a fact in issue on an *ex parte* basis.

65. On information and belief, and/or after reasonable opportunity for further investigation or discovery, Ms. Greer communicated with Ms. Noel and/or the decision maker (*i.e.*, Dr. Kenneth Yale)/his office relevant to the merits of the proceeding on an *ex parte* basis.

66. On information and belief, and/or after reasonable opportunity for further investigation or discovery, Ms. Greer participated or advised in the decision and/or recommended decision with Ms. Noel and/or the decision maker (*i.e.*, Dr. Kenneth Yale)/his office.

## IV.  CAUSES OF ACTION

### COUNT I

### Violation of 5 U.S.C. § 706(1)

(unlawfully withheld or unreasonably delayed)

67. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

68. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

69. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as unlawfully withheld or unreasonably delayed and unsupported by the evidence, and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT II

### Violation of 5 U.S.C § 706(2)(A)

(arbitrary and capricious, abuse of discretion, not in accordance with law)

70. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

71. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

72. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law, and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT III

### Violation of 5 U.S.C § 706(2)(C)

(in excess of statutory jurisdiction, authority, or

limitations or short of statutory right)

73. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

74. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

75. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as in excess of the Secretary's authority and limitations and short of Plaintiff's statutory rights and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT IV

### Violation of 5 U.S.C § 706(2)(D)

(without observance of procedure required by law)

76. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

77. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

78. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as done without observance of the procedure required by law (*e.g.*, issuing a recommendation complying with the regulations, not providing a neutral trier of fact, an (on information and belief) engaging in *ex parte* communications) and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT V

### Violation of 5 U.S.C § 706(2)(E)

(not supported by substantial evidence)

79. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

– 9 –
AMENDED COMPLAINT

80. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

81. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decision as not supported by substantial evidence and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT VI

## Violation of 5 U.S.C. § 554(d)(1)/(2)

82. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

83. Based on the foregoing, Plaintiff asks the Court to set aside and reverse the Secretary's Decision as rendered in violation of the prohibitions on *ex parte* contacts and not issued by a neutral decision maker.

## COUNT VII

## Violation of 5 U.S.C. § 557(c)

84. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

85. In violation of 5 U.S.C. § 557(c), Plaintiff was not provided a copy of the recommended decision, a reasonable opportunity to submit exceptions to the recommended decision, and neither the recommended decision nor final decision complies with the requirements to include all findings and conclusions, the reasons or basis therefor, on all the material issues of fact, law, or discretion, or an appropriate rule, order, relief, or denial thereof.

86. Based on the foregoing, Plaintiff asks the Court to set aside and reverse the Secretary's decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

# COUNT VIII

## Violation of the Due Process Clause of the United States Constitution

87. Paragraphs 1-66 are incorporated by reference as if fully set forth herein.

88. Pursuant to the Fifth Amendment to the United States Constitution, Plaintiff was entitled to procedural Due Process, including notice and an opportunity to be heard before an impartial and disinterested decision maker.

89. The *ex parte* contacts between Greer, Noel, and and/or the decision maker (*i.e.*, Dr. Kenneth Yale)/his office failed to preserve the appearance and reality of fairness in the proceedings in violation of Plaintiff's rights.

90. Based on the foregoing, Plaintiff asks the Court to set aside and reverse the Secretary's decision and issue an order finding that Mr. Maddern's claims are covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court:

A. Enter an order finding that Mr. Maddern's claims are covered and directing the Secretary to make appropriate payment for the claims at issue in this case.

B. Award attorney's fees and costs to Plaintiffs as permitted by law; and

C. Such further and other relief this Court deems appropriate (including nominal and exemplary damages).

DATED: December 9, 2021         Respectfully submitted,

                                REED SMITH LLP

                                By: s/ Avraham E. Aizenman
                                    Jarrad L. Wood
                                    Email: jlwood@reedsmith.com
                                    Avraham E. Aizenman
                                    Email: eaizenman@reedsmith.com
                                    Attorneys for Plaintiff, Ronald Maddern

                                By: s/ James C. Pistorino
                                    James C. Pistorino
                                    Attorneys for Plaintiff, Ronald Maddern
                                    Email: james@dparrishlaw.com

**ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(i)**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: December 9, 2021           By: s/ Avraham E. Aizenman
                                       Avraham E. Aizenman
                                       Email: eaizenman@reedsmith.com