# Exhibits

# Table of Contents

Exhibit A ..................Page 2

Exhibit B ..................Page 11

Exhibit C ..................Page 18



# DEPARTMENT OF DEFENSE
# DEFENSE OFFICE OF HEARINGS AND APPEALS

**January 31, 2020**
**RECOMMENDED DECISION**
**Claim for DHA Benefits**

| | |
|---|---|
| Appeal of: ) | Case No. 19-01 |
| ) | |
| Ronald E. Maddern ) | 297 Interlaminar/Interspinous |
| ) | Process Stabilization Device |
| ) | |
| TRICARE for Life Beneficiary ) | |

**Appearances**

Leslie B. Greer, Esq., Defense Health Agency (DHA)[1]
James Pistorino, Esq., for Beneficiary

This appeal arises from a decision by the Defense Health Agency (DHA) to deny TRICARE cost-sharing coverage for surgical insertion of an interlaminar/interspinous process stabilization device for relief of pain from lumbar spinal stenosis (LSS). The Beneficiary, a retired military member, is the appealing party. The appeal and hearing process is established by Title 10 United States Code (USC) § 1071 *et seq.* and Title 32, Code of Federal Regulations (C.F.R.) § 199.10. Based on a review of the exhibits (Ex.) provided by DHA and by the Beneficiary, I recommend that the Director, DHA, sustain the decision to deny cost-sharing.

## Procedural and Factual History

The Beneficiary in this case is a 71-year-old retired U.S. Army staff sergeant. He is eligible for coverage under both Medicare and the TRICARE for Life medical insurance programs. On August 10, 2017 and November 9, 2017, he underwent a surgical procedure for insertion of a Vertiflex® Superion® interspinous process spacer (hereinafter, IPD).[2] This procedure was provided to treat Beneficiary for LSS, a

---

[1] DHA was formerly TRICARE Management Activity (TMA) and the Office of Civilian Health and Medical Program of the Uniformed Services (OCHAMPUS). The acronyms "TMA," "CHAMPUS," and "OCHAMPUS" are no longer used; however, some of the regulatory and policy publications have not been revised and still contain these acronyms. Any reference in publications, authorities, and other documentation, cited in this recommended decision, to these acronyms is synonymous with "DHA."

[2] The Superion® device is manufactured and marketed by Vertiflex®, Inc.

FOR OFFICIAL USE ONLY
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

degenerative condition usually found in persons over age 50. LSS is caused by a narrowing of the spinal canal, which causes pressure on the spinal cord, usually at the lower vertebrae. It causes limited mobility and often forces the person to walk with a pronounced limp. It also results in varying degrees of pain in the lower back, buttocks, leg, and groin.

Traditional non-operative treatment for LSS consists of physical therapy combined with medication. Epidural nerve blocks and steroidal medications are also used in non-operative regimens. Traditional operative treatment usually involves a laminectomy. Most recently, however, the Vertiflex® Superion® IPD procedure has been developed as a possible operative treatment option. The Vertiflex® Superion® is the second IPD device to receive FDA approval since 2005 and has been the only IPD available on the market since 2015. As with previous versions of IPDs, the Vertiflex® Superion® involves surgical installation of the device at the affected lower lumbar vertebra to relieve compression, by restoring the spacing between the discs in that region of the spinal column. The previous version of the device accomplished the implantation through open surgery performed under general anesthesia. The Vertiflex® Superion® is different from its predecessor in that the device can be implanted laparoscopically using local anesthesia by an interventional pain specialist, as is the case here. The Vertiflex® Superion® is also different from its predecessor in that it is anchored to the spinal column by tines, largely eliminating issues with the device migrating from its point of implantation over time. (Ex.1; Ex. 2; Ex. 9)

Beneficiary began experiencing back pain in the late 1990s. Over the years, Beneficiary's condition worsened. He became unable to walk and by 2000, he relied exclusively on an electric scooter for mobility. Beneficiary sought treatment at the Balboa Naval Hospital from January 2012 to February 2016, when his treating physician referred him to Dr. Michael Verdolin of Pain Consultants of San Diego. Initially, Dr. Verdolin treated Beneficiary with a series of conservative treatment options, such as interlaminar epidural steroid injections (March 2016 and April 2017), lumbar medical branch blocks (April 2016 – May 2016 and October – November 2016), and radiofrequency ablation (July 2016, December 2016, and January 2017). These treatments offered short-term pain relief, but did not restore mobility. In June 2017, Dr. Verdolin determined that Beneficiary was a good candidate for the minimally invasive lumbar decompression (MILD) surgery. However, the hospital cancelled the procedure after receiving notice from Medicare that the procedure would not be covered. With the MILD procedure no longer an option, Dr. Verdolin recommended the implantation of an IPD as the next best treatment option given Beneficiary's medical history, which contraindicates the use of general anesthesia – a requirement for other surgical interventions such as the laminectomy procedure. (Ex. 6)

In August 2017, Dr. Verdloin inserted the Vertiflex® Superion® IPD at L4-5. Beneficiary experienced immediate improvement. He reported being able to walk, unassisted, for short distances. He reported experiencing an absence of pain. Given the success with the insertion of the first IPD, Dr. Verdolin inserted a second Vertiflex® Superion® IPD at L3-4 in November 2017. Beneficiary continued to experience positive results. By the time of the hearing, Beneficiary reported being able to walk on his own for

FOR OFFICIAL USE ONLY
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

increasing distances. The day of the hearing, he was able to walk from the car, stand in the security line for entrance to the courthouse, and walk to the courtroom using a cane. He no longer relies on the electric scooter for mobility. He is able to attend to his personal hygiene without assistance from his wife. He no longer relies on opioid pain medication. Beneficiary's wife reported that his mood has improved and he is no longer depressed. The couple has been able to resume an active lifestyle for the first time since 2000. (Ex.6; TR. 25-44, 51-66)

Beneficiary submitted claims for insurance made to Medicare and TRICARE using the Current Procedural Terminology (CPT) code 22869, and the Healthcare Common Procedure Coding System (HCPS) code C1821. Both codes describe medical procedures related to the implantation of spinal devices. The claim sought payment for $81,771 in cost related to the August 10, 2017 procedure. Medicare, which began covering the procedure in April 2017, paid $9,232 of Beneficiary's costs for the IPD procedure; however, Beneficiary was not liable for the uncovered costs through Medicare because of contractual obligation. TRICARE denied Beneficiary's claim for cost-sharing of the services. The actual amount in controversy is $2,378. This amount is only for the August 2017 procedure. At the time Beneficiary filed the appeal to Wisconsin Physicians Service (WPS), the company contracted by TRICARE to process claims for persons with dual TRICARE for Life and Medicare eligibility, he had only been billed for the August 2017 procedure. (Ex. 1-3; Tr. 136-137)

On March 12, 2018, WPS upheld the decision to deny cost-sharing for Beneficiary's treatment, because the Vertiflex® Superion® device is included in a class of devices and procedures that is specifically excluded from coverage in the TRICARE Policy Manual (TPM). Specifically, WPS referred to Chapter 4, Section 6.1 (*Musculoskeletal System*) of the TPM, which lists several medical and surgical devices and services related to the musculoskeletal system. (Ex. 5) The TPM in effect at the time of Beneficiary's August 2017 procedure, TPM 6010.60-M, April 1, 2015 (revision C-4, dated June 20, 2017), specifically lists as excluded:

> XSTOP Interspinous Process Decompression System (CPT procedure codes 0171T and 0172T, HCPS code C1821[3]) for the treatment of neurogenic intermittent claudication secondary to lumbar stenosis is unproven.

Current Procedural Terminology, more commonly known as CPT®, established by the American Medical Association in 1966, refers to a set of medical codes used by physicians, allied health professionals, nonphysician practitioners, hospitals, outpatient facilities, and laboratories to describe the procedures and services they perform. These codes are informational – not endorsements of procedures or devices, or opinions about the efficacy of care or product.[4] The CPT code at issue, 0171T, is used for procedures

---

[3] This procedure code applies to the insertion of a interspinous process distraction device (implantable).

[4] *See,* https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval; *see also* https://www.aapc.com/resources/medical-coding/cpt.aspx

**FOR OFFICIAL USE ONLY**
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

involving the insertion of posterior spinous process distraction device [including necessary removal of bone or ligament for insertion and imaging guidance], at a single lumbar level. The CPT Code 0172T is used at each additional level the device is inserted. The alpha character "T" at the end of the code indicates that the code number is temporary and is used to describe services and procedures considered emerging or experimental. These "T" codes remain effective for five years at which time the procedure code may be replaced with a permanent five-digit numeric code if the procedure or device meets certain criteria.[5] The assignment of a new CPT code to a procedure previously designated as experimental or emerging, is recognition that the procedure or device is used by the medical community and merits a uniform descriptor. CPT Codes 0171T and 0172T expired on December 31, 2016, and were replaced by permanent CPT codes 22869 and 22870.[6]

On April 9, 2018, Beneficiary submitted a request to the DHA Hearings and Claims Division for a review of the WPS denial decision. In support of his request, he provided a letter from Dr. Verdolin briefly explaining Beneficiary's treatment history and why Beneficiary was not a good candidate for a laminectomy. Beneficiary also submitted a summarized history detailing his medical care from 1977 to November 2017. In both his request for review of the denial and his statement of intent to appeal that review, Beneficiary argues that TRICARE should make an exception to the TPM exclusion and approve the procedure for coverage. (Ex.6)

DHA received Beneficiary's appeal on April 17, 2018. On April 30, 2018, DHA Counsel requested a Medical Benefits and Reimbursement Division (MB&RB) review of the Vertiflex® Superion®, the only IPD on the market with FDA approval at the time of Beneficiary's procedures, to determine if the device is proven and considered covered treatment under TRICARE. The five previous MB&RB reviews of IPDs focused on the XStop IPD, the only FDA-approved IPD on the market between 2005 and 2015. In addition to the medical review of the Veriflex® Superion® device, DHA also sought clarification from MB&RB regarding the No Government Pay Codes as listed in the TPM. The CPT code 22869 that Beneficary used in his claim was not published in the TPM in effect at the time of his procedures. The TPM did not update the manual to address the code used in Beneficiary's claim, 22869, until the TPM effective January 25, 2019.[7] (Ex. 8, 16)

On July 2, 2018. DHA counsel requested additional information from Vertiflex®, the manufacturer of the Superion® device, seeking additional information not already

---

[5] https://www.ama-assn.org/practice-management/cpt/criteria-cpt-category-i-and-category-iii-codes

[6] See, https://www.uhcprovider.com/content/dam/provider/docs/public/policies/medadv-guidelines/i/insertion-posterior-spinous-process-device.pdf

[7] TPM 6010.60-M, April 1, 2015 (revision C-40, January 25, 2019), Section 5.9 excludes from coverage: Interlaminar/interspinous process devices (CPT procedure codes 22867-22870, and HCPCS code C1821), including, but not limited to, interspinous distraction devices and interspinous stabilizers, for the treatment of neurogenic and/or secondary to lumbar spinal stenosis are unproven.

**FOR OFFICIAL USE ONLY**
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

available on the manufacturer's website about the device. On August 14, 2018, Vertiflex® responded with a letter to DHA Counsel summarizing the evidentiary materials supporting its position that the IPD for the treatment of LSS and that the Superion® device, in particular, should be considered proven care by TRICARE. (Ex. 10, 12-13)

On October 18, 2018, MB&RD issued a *Medical Benefit Determination for Interlaminar/Interspinous Devices for the Treatment of Neurogenic Claudication and/or Lumbar Spinal Stenosis*. The finding remained consistent with the previous reviews of IPD devices that the use of IPDs, including the Vertiflex® Superion®, for the treatment of LSS remains unproven and should not be covered by TRICARE. The review also concluded that the change in terminology and coding associated with IPDs did not add any coverage to the devices. (Ex. 14)

On December 7, 2018, DHA issued a *Formal Review Decision* on Beneficiary's appeal. (Exhibit 16) DHA upheld the denial of cost-sharing for Beneficiary's IPD procedure for the following reasons:

> 1. The TPM, at Chapter 1, Section 2.1, excludes unproven procedures and devices. More specifically, based on two previous MB&RD reviews, devices such as the Superion® device at issue in this case were listed as excluded by TPM, Chapter 4, Section 6.1; and
>
> 2. MB&RD has reviewed such procedures six times since 2007, most recently on October 18, 2018. Each time, MB&RD affirmed its previous conclusions that procedures involving lumbar spacing devices are unproven. MB&RD determined that, at best, such devices and procedures have potential benefit, but have yet to be shown by reliable evidence to be safe and reliable.

The DHA *Formal Review Decision* further advised Beneficiary that he could request a hearing to appeal the TMA decision to uphold the denial of cost-sharing. (Exhibit 16)

On February 5, 2019, Beneficiary appealed the DHA *Formal Review Decision* and requested a hearing. (Exhibit 18) In March 2019, DHA counsel filed a pre-hearing motion requesting the Beneficiary to point to specific articles discussing well-controlled studies discussing the safety and efficacy of Vertiflex® Superion® compared to laminectomy published on or before August 8, 2018, showing the Vertiflex® Medical Device is not unproven. On April 2, 2019, DHA Counsel submitted DHA's *Statement of Position*. (Exhibit 20) On or about April 5, 2019, DHA forwarded to the Defense Office of Hearings and Appeals (DOHA) a case file containing 22 Exhibits. The case was assigned to me on April 30, 2019.

DOHA issued a Notice of Hearing in this case on August 1, 2019, scheduling the hearing for August 22, 2109. At the hearing, I admitted DHA exhibits (Ex.) 1 – 22, and the Notice of Hearing as Ex. 23, without objection from the parties. Beneficiary offered ten additional documents for consideration, consisting of a cover letter and nine articles, which are admitted as Ex. 24-0 through 24-9. Of the articles offered by Beneficiary, five

**FOR OFFICIAL USE ONLY**
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

5
Exh A - Page 6

are duplicates of documents offered by DHA: Ex. 24-2, 24-3, 24-5, and 24-6 are included in Ex.9; Ex. 24-7 is duplicative of Ex. 15. MB&RB considered these articles in its October 2018 Medical Benefit Determination. DHA objected to the consideration of Ex. 24-8 because the August 2019 publication date indicates that the data was not available at the time Beneficiary received the services at issue. This objection is overruled. DHA also objected to Ex. 24-9 because the article, a review of peer-reviewed literature does not meet the DHA reliable evidence standard. However, the document offers a helpful summary of the available research on IPDs. Accordingly, DHA Counsel's objection is overruled, but the article's use is limited to the aforementioned purpose. I also admitted to the record as Ex. 25, the email correspondence generated during this case, and Ex. 26 a copy of the Hearing Officer's opening statement. After the hearing, I admitted DHA's closing statement and Beneficiary's closing statements as Ex. 27 and Ex. 28, respectively.

## Issues Presented

(1) Whether the Vertiflex® Superion® IPD the Beneficiary, was properly denied as excluded unproven care; and

(2) Whether the Vertiflex® Superion® IPD, provided to Beneficiary in August 2017, has been proven safe, effective, and comparable to standard treatment for his diagnosed condition.

## Legal Authorities

TRICARE benefits are authorized by Chapter 55 of Title 10, United States Code, and implemented by Title 32, Code of Federal Regulations, Part 199 (32 C.F.R. § 199). The burden of proof is on the Beneficiary to establish entitlement to benefits by substantial evidence. 32 C.F.R. § 199.10(a)(3) TRICARE cost-sharing is authorized only for medically necessary supplies and services. 32 C.F.R. § 199.4(a)(i). Even medically necessary care must be provided at the appropriate level. 32 C.F.R. § 199.4(b)(1)(iv).

Also to be considered here is the requirement that only services whose safety and effectiveness are comparable or superior to conventional therapies are covered by TRICARE. Otherwise, such care is excluded. 32 C.F.R. § 199.4(g)(15); TPM, Chapter 1, Section 2.1 A decision that a service, device, or procedure is safe and effective must be based on "reliable evidence," which is defined, in descending order of relative persuasive value, by 32 C.F.R. § 199.2(b), as follows:

i. well-controlled studies of clinically meaningful endpoints, published in refereed medical literature;

ii. published formal technology assessments;

iii. published reports of national professional medical associations;

FOR OFFICIAL USE ONLY
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

6
Exh A - Page 7

iv. published national medical policy organization positions; and

v. the published reports of national expert opinion organizations.

Conversely, any device, treatment or procedure that has not been shown to be safe and effective is to be viewed as unsafe and must be excluded from coverage. 32 C.F.R. § 199(g)(15)(i). Additionally, a determination of whether a procedure, device or treatment is proven or unproven includes a review of medical literature to see if there is a consensus among national medical policy organizations that sufficient information exists showing the procedure is safe and effective. 32 C.F.R. §§ 199(b) and 199(g)(15).

FDA and Medicare approval of Vertiflex® Superion® IPD or other procedures is not binding on TRICARE. Although Medicare may approve such procedures on a regional basis, there has been no national coverage determination about devices such as the Superion® IPD. FDA approval is only one piece of reliable evidence of the safety and effectiveness of a treatment, device or procedure. Coverage must result from consideration of all other regulations, laws and policy pertaining to TRICARE. If the device or procedure is specifically not covered, cost-sharing will be disallowed. TPM, Chapter 8, Section 5.1.

In this case, the specific exclusion listed in the TPM and relied on by WPS and DHA in its denial of cost-sharing applied to an interspinous decompression device that is no longer in use. Whereupon, DHA sought review of this matter by MB&RD, who determined that the Vertiflex® Superion® IPD is part of the same class of devices for treatment of LSS. Further, MB&RD recommended for the sixth time since 2007, and for the same reasons, that the Vertiflex® Superion® IPD should not be covered, because it is unproven and presented concerns about safety and durability. Accordingly, a rebuttable presumption exists that Beneficiary is not entitled to cost-sharing for that device and procedure. Therefore, the appealing party had the burden to present substantial evidence that establishes entitlement to benefits. 32 C.F.R. § 199.10(a)(3)

TRICARE policy, as contained in the Code of Federal Regulations and the TRICARE Policy Manual, is binding on the Hearing Officer in reaching a recommended decision. A Hearing Officer may not establish or amend policy, procedures, instructions or guidelines. 32 C.F.R. § 199(d)(6).

## Discussion

The TPM, related regulations, and a recent review by MB&RD specifically exclude devices and procedures such as Vertiflex® Superion® IPD from coverage by TRICARE. Approval by the FDA and 80 percent coverage by Medicare are not controlling here. Well-established policy supports the way TRICARE determines the safety and efficacy of a device, treatment or procedure. Five times between 2007 and 2017 and again in October 2018, MB&RB determined that that there is no national consensus regarding the efficacy of IPDs for the treatment of LSS and the procedure is not a proven technology as contemplated by TRICARE policies and regulations. As a result, the Director, DHA, has

**FOR OFFICIAL USE ONLY**
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

7
Exh A - Page 8

issued multiple decisions denying cost-sharing for this group of devices because they have not been shown by reliable evidence to be safe and effective.

The specific exclusion from coverage of a prior version of this IPD device and procedure, along with yet another recommendation against coverage, created a rebuttable presumption against cost-sharing here. The burden to rebut that presumption and present reliable evidence to show that this procedure is safe and effective rests with Beneficiary.

At the time of Beneficiary's August and November 2017 procedures, the TPM specially identified the XSTOP device and the associated procedure codes, 0171T, 0172T, and C1821 as excluded care. Beneficariary is correct that the TPM did not specifically address the status of the Vertiflex® Superion® or the CPT code 22869. However, this defect is administrative, not substantive and did not create a loophole for the coverage of the Superion device or represent a change in the long-standing DHA position classifying the use of IPDs as unproven care. The TPM in effect at the time of Beneficiary's procedures made it sufficiently clear that procedures performed under the codes related to the insertion of interspinous devices were considered unproven care and would not be covered.

In Beneficary's case the implantation of the Vertiflex® Superion® IPD for the treatment of his LSS was a success. Given Beneficiary's medical history, implantation of the IPD using local anesthesia was a better and safer option than undergoing general anesthesia for a laminectomy. He is pain free and has regained mobility. The procedures undoubtedly restored Beneficiary's quality of life and his independence. However, this result alone does not qualify the procedure for coverage under the TRICARE program. There have not been any studies directly comparing the efficacy of the Vertiflex® Superion® IPD to that of laminectomy, only studies comparing the efficacy of Vertiflex® Superion® IPDto the XSTOP IPD. The articles in the record establish that Vertiflex® Superion® is not inferior to the now-discontinued XSTOP device as a treatment for LSS. This finding of non-inferiority is not sufficient to reclassify the Vertiflex® Superion® device from unproven to proven care.

**FOR OFFICIAL USE ONLY**
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

8
Exh A - Page 9

## Conclusions and Recommendation

After carefully reviewing all of the evidence, I conclude that the Vertiflex® Superion® IPD device and procedure provided to the Beneficiary in August 2017 has not been shown to be safe and effective. On appeal, the Beneficiary did not meet his burden to overcome the rebuttable presumption against coverage for an unproven device or procedure. Accordingly, it does not meet the TRICARE requirements for cost-sharing. The decision to deny cost-sharing should be sustained.

/signed original in file/

NICHOLE L. NOEL
Administrative Judge
TRICARE Hearing Officer

**FOR OFFICIAL USE ONLY**
When unredacted this document contains information
EXEMPT FROM MANDATORY DISCLOSURE under the FOIA
Exemption 6 applies

9

Exh A - Page 10



**DEFENSE HEALTH AGENCY**
7700 ARLINGTON BOULEVARD, SUITE 5101
FALLS CHURCH, VIRGINIA 22042-5101

# FAX COVER SHEET

| | |
|---|---|
| **TO:** | James Pistorino |
| | Debra Parrish |
| | Parrish Law Offices |
| | 788 Washington Road, Pittsburgh PA 15228 |
| **FAX NUMBER:** | (412) 561-6253 |
| **DATE:** | May 20, 2021 |
| **FROM:** | Appeals & Hearings Division |
| | Office of General Counsel |
| | Fax: 303-676-3616 |
| **SUBJECT:** | Maddern Final Agency Decision |
| | Total Number of Pages Including this Cover: 7 |

NOTES:

Attached please find a copy of the Agency's final decision in the above-referenced matter. A copy has been sent via FedEx.

Further inquiries may be addressed in writing to the address in the letterhead above.

***Confidentiality Statement***: The information contained in this facsimile transmission is confidential and is intended only for the use of the recipient listed above. If you are neither the intended recipient or an employee or agent of the intended recipient responsible for the delivery of this information, you are hereby notified that the disclosure, copying, use or distribution of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately to arrange for the return of the transmitted documents or to verify their destruction.

# HA/DHA
# Protected Data Cover Sheet

To be used on all documents containing
any of the information types listed below

Please check the appropriate box to identify the type of information that requires special handling and protection from unauthorized release:

- [✓] **Personally Identifiable Information**: Information that is subject to the Privacy Act of 1974

- [✓] **Protected Health Information**: Information that is subject to the Health Insurance Portability and Accountability Act (HIPAA) of 1996

- [ ] **Acquisition/Source Selection Information**: See FAR 3.104; documents which may not be disclosed to the public.

- [ ] **Other Sensitive (but unclassified) Information.**

Unauthorized disclosure of this information may result in penalty under federal law. If you are not the intended recipient or believe that you have received this document(s) in error, do not copy, disseminate or otherwise use the information and contact the owner/originator or the DHA Privacy and Civil Liberties Office for further instructions.



**DEFENSE HEALTH AGENCY**
7700 ARLINGTON BOULEVARD, SUITE 5101
FALLS CHURCH, VIRGINIA 22042-5101

MAY 20 2021

OGC-AC

SSG Ronald E. Maddern, USA (Ret.)
410 South First Street, Space 100
El Cajon, CA 92019 - 4726

Dear Sergeant Maddern:

The Director, Healthcare Operations, issued the final decision in your case. This is the concluding step in the TRICARE® administrative appeal and hearing process. The final decision is enclosed.

Sincerely,

DONAHUE.MARK.PATRICK.1177778172
Digitally signed by DONAHUE.MARK.PATRICK.1177778172
Date: 2021.05.20 10:17:01 -05'00'

Mark P. Donahue
Director
Appeals, Hearings & Claims Collection

Cc:

Debra Parrish
Parrish Law Office
788 Washington Road
Pittsburgh, PA 15228

James Pistorino
Parrish Law Office
788 Washington Road
Pittsburgh, PA 15228

Enclosure:
As Stated



**DEFENSE
HEALTH AGENCY**

**OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE
HEALTH AFFAIRS**
7700 ARLINGTON BOULEVARD, SUITE 5101
FALLS CHURCH, VIRGINIA  22042-5101

## BEFORE THE DIRECTOR

## DEFENSE HEALTH AGENCY

## UNITED STATES DEPARTMENT OF DEFENSE

|  |  |
|---|---|
| Appeal of:  Ronald Maddern<br>A TRICARE for Life Beneficiary | Defense Health Agency<br><br>Case File No. 20-1<br><br>**FINAL DECISION** |

    This is the FINAL DECISION of the Director, Defense Health Agency[1] (DHA), in the TRICARE® appeal of case file 20-1 pursuant to Title 10, United States Code (U.S.C.), sections 1071-1110, and Department of Defense Regulation, 32 Code of Federal Regulations (C.F.R.) Part 199.10.  By delegation, the authority to issue Final Decisions pursuant to 32 C.F.R. §199.10(e)(1) is vested in the Chief, TRICARE Health Plan, DHA.

    This appeal involves the denial of TRICARE cost-sharing for insertion of a Vertiflex® Superion® interspinous process spacer surgical procedure performed on August 10, 2017, to treat the Beneficiary's degenerative lumbar spinal stenosis.  The Appealing Party was 71 years old at the time of surgery and is a retired uniformed services member.  The appealing party has dual eligibility for both Medicare and TRICARE for Life.  The provider is non-network and participating.  The amount in dispute is $2,378.

    I have reviewed the hearing file of record and the Hearing Officer's Recommended Decision.  The Hearing Officer recommends that DHA deny cost-sharing of the Vertiflex® Superion® interspinous process spacer surgical procedure as unproven.  Based on the Hearing Officer's finding, evidenced by the DHA's Medical Benefits and Reimbursement Division (MB&RD) review of the published medical literature that there was not sufficient reliable evidence to establish that the procedure was safe, effective, and comparable to conventional treatment (i.e., proven).

---

[1] This regulatory provision establishes the final decision authority as the "Director, OCHAMPUS, or a designee." In 2001, the TRICARE Management Activity (TMA) was established by DoD Directive (DoDD) 5136.12. This authority explained that references to OCHAMPUS (Office of Civilian Health and Medical Program for the Uniformed Services) shall be understood to be references to TMA. Subsequently, DoD Directive 5136.13, September 30, 2013, canceled DoDD 5136.12, disestablished TMA, and established the Defense Health Agency (DHA) effective October 1, 2013. TMA functions were transferred to DHA.

Exh B - Page 14

## BACKGROUND

The Beneficiary was diagnosed with degenerative disc disease in the entire lumbar spine. The Beneficiary underwent Vertiflex® Superion® interspinous process spacer surgery restoring the spacing between the discs in the lower lumbar vertebra. The DHA contractor, Wisconsin Physicians Services, denied cost-sharing. The Beneficiary requested reconsideration. Upon reconsideration, the contractor upheld its denial of cost-sharing of the unproven Vertiflex® Superion® interspinous process spacer surgical procedure.

Beneficiary requested a hearing and submitted a letter from the treating physician and a history of medical care. DHA requested additional information from the manufacturer of the Vertiflex® Superion® interspinous process spacer that was sent to MB&RD for review.

On October 18, 2018, MB&RD issued, "Medical Benefit Determination for Interlaminar/Interspinous Devices for the Treatment of Neurogenic Claudication and/or Lumbar Spinal Stenosis." MB&RD's conclusion is consistent with previous reviews finding the published evidence on Vertiflex® Superion® interspinous process spacer surgery is not sufficient to establish that the procedure is safe, effective, and comparable to conventional treatment (i.e., proven). (Ex. 14) The review also concludes that the change in terminology and coding associated with Vertiflex® Superion® interspinous process spacer did not add any coverage to the devices. Vertiflex® Superion® interspinous process spacer surgery, Current Procedural Terminology (CPT) code 22869, Healthcare Common Procedure Coding System (HCPCS) code 1821, is specifically excluded from TRICARE cost-sharing. The CPT code at issue, 0171T, is used for procedures involving the insertion of posterior spinous process distraction device (including necessary removal of bone or ligament for insertion and imaging guidance), at a single lumbar level. The CPT Code 0172T is used at each additional level the device is inserted. The alpha character "T" at the end of the code indicates that the code number is temporary and is used to describe services and procedures considered emerging or experimental. These "T" codes remain effective for five years at which time the procedure code may be replaced with a permanent five-digit numeric code if the procedure or device meets certain criteria. The assignment of a new CPT code to a procedure previously designated as experimental or emerging, is recognition that the procedure or device is used by the medical community and merits a uniform descriptor. CPT Codes 0171T and 0172T expired on December 31, 2016, and were replaced by permanent CPT codes 22869 and 22870.

## LEGAL AUTHORITIES

The burden of proof is on the appealing party to establish affirmatively, by substantial evidence, an entitlement to benefits. 32 C.F.R. §199.10(a)(3). Cost-sharing under the TRICARE program is limited to medically necessary services. 10 U.S.C. §1079(a)(12). To be covered under TRICARE, medical treatments and procedures must be "proven" on the date the medical treatment or procedure is rendered. In accordance with the TRICARE regulation, "unproven" procedures cannot be cost-shared. 32 C.F.R. §199.4(g)(15). Under this provision, a procedure is "unproven" when "the safety and efficacy... have not been established":

2

(C) Unless reliable evidence shows that any medical treatment or procedure has been the subject of well-controlled studies of clinically meaningful endpoints, which have determined its maximum tolerated dose, its toxicity, its safety, and its efficacy as compared with standard means of treatment or diagnosis. (See the definition of reliable evidence in Section 199.2 of this part for the procedures used in determining if a medical treatment or procedure is unproven.)

(D) If reliable evidence shows that the consensus among experts regarding the medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated doses, its toxicity, its safety, or its effectiveness as compared with the standard means of treatment or diagnosis (see the definition of reliable evidence in Section 199.2 for the procedures used in determining if a medical treatment or procedure is unproven).

32 C.F.R. Part 199.2 defines the term "reliable evidence" as follows:

[T]he term reliable evidence means only:

(i) Well controlled studies of clinically meaningful endpoints, published in refereed medical literature.
(ii) Published formal technology assessments.
(iii) The published reports of national professional medical associations.
(iv) Published national medical policy organization positions; and
(v) The published reports of national expert opinion organizations.

(2) The hierarchy of reliable evidence of proven medical effectiveness, established by (1) through (5) of this paragraph, is the order of the relative weight to be given to any particular source. With respect to clinical studies, only those reports and articles containing scientifically valid data and published in the refereed medical and scientific literature shall be considered as meeting the requirements of reliable evidence. Specifically not included in the meaning of reliable evidence are reports, articles, or statements by providers or groups of providers containing only abstracts, anecdotal evidence or personal professional opinions. Also not included in the meaning of reliable evidence is the fact that a provider or a number of providers have elected to adopt a drug, device, or medical treatment or procedure as their personal treatment or procedure of choice or standard of practice.

    TRICARE Policy Manual (TPM), Chapter 4, Section 6.1, specifically lists as excluded: X-STOP Interspinous Process Decompression System (CPT procedure codes 0171T and 0172T, HCPCS code C1821) for the treatment of neurogenic intermittent claudication secondary to lumbar stenosis is unproven.

3

## ANALYSIS

As noted above, the Appealing Party carries the burden of proof to establish entitlement to benefits by substantial evidence. The Beneficiary failed to meet his burden of proof when it came to establishing entitlement to cost-sharing of the Vertiflex® Superion® interspinous process spacer procedure. There have not been any studies directly comparing the efficacy of the Vertiflex® Superion® interspinous process spacer procedure to that of laminectomy, only studies comparing the efficacy of the X-STOP Interspinous Process Decompression System.

The articles in the record establish that Vertiflex® Superion® is not inferior to the now-discontinued X-STOP device as a treatment for lumbar spinal stenosis. This finding of non-inferiority is not sufficient to reclassify the Vertiflex® Superion® device from unproven to proven care.

At the time of Beneficiary's August 2017 procedure, the TPM specially identified the X-STOP device and the associated procedure codes, 0171T, 0172T, and C1821 as excluded care. The TPM did not specifically address the status of the Vertiflex® Superion® or the CPT code 22869. However, this defect is administrative, not substantive and did not create a loophole for the coverage of the Vertiflex® Superion® device or represent a change in the long-standing DHA position classifying the Vertiflex® Superion® interspinous process spacer procedure as unproven care. The TPM in effect at the time of Beneficiary's procedures made it sufficiently clear that procedures performed under the codes related to the insertion of interspinous devices were considered unproven care and would not be covered.

While the overall health of the Beneficiary is a cogent medical reason for treatment, I am constrained by statutory and regulatory authorities to adjudicate the benefit on the basis of specific criteria. In my opinion, the Hearing Officer, in the Recommended Decision, adequately stated and analyzed the issues, applicable authorities, and evidence regarding the Vertiflex® Superion® surgical procedure. The Hearing Officer's findings are supported by the appeal record. I adopt and incorporate the Hearing Officer's findings into this Final Decision.

## DECISION

I find that the Recommended Decision adequately analyzes the evidence submitted by the Appealing Party and adequately applies the applicable authorities in this case. Therefore, the FINAL DECISION is to deny cost-sharing for the Vertiflex® Superion® interspinous process spacer surgery procedure. Execution of this FINAL DECISION completes the administrative appeal process under 32 C.F.R. §199.10 and no further administrative appeal is available.

YALE.KENNETH.PAUL.SR.1483183425
Digitally signed by YALE.KENNETH.PAUL.SR.1483183425
Date: 2021.05.18 16:40:17 -04'00'

Dr. Kenneth P. Yale, DDS, JD
Acting Chief, TRICARE Health Plan

4