1   RANDY S. GROSSMAN
    United States Attorney
2   GLEN F. DORGAN (SBN 160502)
    Assistant U.S. Attorney
3   Office of the U.S. Attorney
    880 Front Street, Room 6293
4   San Diego, CA 92101
    Tel: (619) 546-7665
5   Fax: (619) 546-7751
    Email: glen.dorgan@usdoj.gov
6

7   Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

8

9                   **UNITED STATES DISTRICT COURT**

10                  **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   RONALD MADDERN,                         Case No. 3:21-cv-01298-MMA-BLM

13              Plaintiff,                    **DEFENDANT'S OPPOSITION TO
                                              PLAINTIFF'S MOTION FOR
14   v.                                       DISCOVERY**

15   LLOYD AUSTIN, in his capacity as         JUDGE:    Hon. Barbara L. Major
     Secretary of the United States
16   Department of Defense,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 1

   A. The Hearing, the Recommended Decision, and the Final Decision....................... 2

   B. The Parties Post-Hearing Communications............................................. 3

III.  ARGUMENT ...................................................................................... 5

   A. Discovery is Disfavored in APA Cases................................................. 5

   B. The APA Defines Improper *Ex Parte* Communication.............................. 6

   C. There Is No Evidence of Improper *Ex Parte* Contacts............................. 6

   D. Plaintiff's Remaining "Bad Faith" Theories Fail................................... 9

   E. The Scope of Plaintiff's Proposed Discovery Is Grossly Overbroad ............... 10

IV.   CONCLUSION.................................................................................. 11

1
2

# TABLE OF AUTHORITIES

3 ## CASES

4   *Amfac Resorts, LLC v. United States DOI,*
5   143 F. Supp. 2d 7 (D.C. Dist. Ct. 2001) ................................................... 5, 10

6   *Center for Biological Diversity v. Lohn,*
    511 F.3d 960 (9th Cir. 2007) ....................................................................... 9

7   *Dep't of Commerce v. New York,*
8   139 S. Ct. 2551 (2019) ............................................................................ 5, 10

9   *Elec. Power Supply Ass'n v. FERC,*
    391 F.3d 1255 (D.C. Cir. 2004) ................................................................. 6

10  *Fla. Power & Light Co. v. Lorion,*
11  470 U.S. 729 (1985) ................................................................................... 5

12  *Greene v. Babbit,*
    943 F. Supp. (W.D. Wash. 1996) ............................................................... 8

13  *Kern Cty. Farm Bureau v. Allen,*
14  450 F.3d 1072 (9th Cir. 2006) ................................................................... 5

15  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA,*
    499 F.3d 1108 (9th Cir. 2007) ................................................................... 5

16  *Raz Inland Navigation Co. v. Interstate Commerce Com.,*
17  625 F.2d 258 (9th Cir. 1980) .................................................................. 1, 6

18  *Saratoga Dev. Corp. v. United States,*
    21 F.3d 445 (D.C. Cir. 1994) ..................................................................... 5
19

20 ## STATUTES

21  5 U.S.C. § 551 ....................................................................................... 1, 6

22  5 U.S.C. § 554 ....................................................................................... 1, 6

23  5 U.S.C. § 557 ....................................................................................... 1, 6

24  32 C.F.R. § 199.10 ................................................................................ 2, 3

25
26
27
28

Defendant Lloyd Austin, Secretary of the United States Department of Defense ("Defendant"), respectfully submits the following opposition to the motion filed by Plaintiff Staff Sergeant Ronald Maddern ("Plaintiff") seeking discovery in this Administrative Procedures Act ("APA") case.

## I.  INTRODUCTION

The APA recognizes a difference between *ex parte* communications that concern the merits of the proceeding and *ex parte* communications that are merely procedural or akin to a "status report." 5 U.S.C. §§ 551(14), 557(d)(1), 554(d). When *ex parte* communications "affect the way a given case is decided," they are improper and prohibited; when the communications "amount only to a request for" procedural information, they are "exempted from the prohibition of ex parte contacts." *Raz Inland Navigation Co. v. Interstate Commerce Com.*, 625 F.2d 258, 260 (9th Cir. 1980). Here, Plaintiff has not—and cannot—identify any *ex parte* communications that fall within the scope of this prohibition. Because his allegation of improper *ex parte* contact is merely a theory, he fails to meet his burden in seeking discovery. Additionally, as set forth below, Plaintiff has failed to support his motion with evidence of bad faith. Accordingly, Plaintiff's motion must be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a retired U.S. Army service member and beneficiary under TRICARE for Life ("TRICARE") and Medicare. In 2017, Plaintiff underwent two surgical procedures, one performed in August 2017 and a second in November 2017, to implant Vertiflex Superion interlaminar/interspinous process stabilization/distraction devices into his vertebrae in an effort to treat his lumbar spinal stenosis. *See* Recommended Decision, Plaintiff's Ex. "A," pp. 1-2 [ECF #12-1].

Prior to undergoing surgery, neither Plaintiff nor his provider requested approval from TRICARE or Medicare for the procedure to implant the Vertiflex Superion. *Id*. at pp. 2-3. Post-surgery, Plaintiff submitted claims to Medicare and TRICARE for the August 2017 procedure. *Id*. While he included documents related to the November 2017 procedure, Plaintiff had yet to receive a bill when he filed his claim. For the August 2017 procedure,

Medicare paid $9,232.00, and Plaintiff was not responsible for the uncovered cost because of Medicare's contract. TRICARE then denied the claim for cost sharing in the amount of $2,378. *Id*.

On March 5, 2018, Plaintiff initially appealed TRICARE's denial of cost sharing to Wisconsin Physicians Service ("WPS"), which processes claims on behalf of TRICARE beneficiaries eligible under TRICARE and Medicare. *See* Letter, Ex. "1" to Dorgan Decl. At the time of his appeal, Plaintiff still had not yet been billed for the November 9, 2017 surgery. *Id*. On March 12, 2018, WPS denied Plaintiff's initial appeal, noting that Plaintiff only submitted a copy of a bill for the August 10, 2017 procedure. *See* WPS Denial, p. 0055, Ex. "2" to Dorgan Decl. After reviewing Plaintiff's submitted records, WPS concluded that the original decision to deny cost sharing was correct. *Id*. at p. 0056.

Following WPS' decision, Plaintiff requested formal review from the Appeals, Hearings, and Claims Collection Division ("Hearings and Appeals") of the Defense Health Agency ("DHA"), which is part of DHA's Office of General Counsel. *See* Letter, Ex. "3" to Dorgan Decl. Plaintiff did not include any additional documents with his request, including the bill for the November 2017 procedure. In fact, Plaintiff never supplemented the record with any bill for the November 2017 procedure during the course of the formal review. *See*, *e.g.*, Recommended Decision, Plaintiff's Ex. "A," p. 3 [ECF #12-1]. On December 7, 2018, Hearings and Appeals completed the formal review, determining that cost-sharing could not be approved because the procedure is unproven to treat Plaintiff's condition. Formal Review Decision, Ex. "4" to Dorgan Decl. Plaintiff then requested a hearing under 32 C.F.R. § 199.10(d).

### A.   The Hearing, the Recommended Decision, and the Final Decision

Under the governing regulations,[1] "[a] hearing is an administrative proceeding in which facts relevant to the appealable issue(s) in the case are presented and evaluated in relation to applicable law, regulation, policies, and guidelines in effect at the time the care

---

[1] The regulations refer to OCHAMPUS, OCHAMPUSEUR, and CHAMPUS, all of which are predecessors to DHA.

in dispute was provided or requested." 32 C.F.R. § 199.10(d). The process requires the appointment of a "hearing officer," the collection and submission of "all records in the possession of [DHA] that are pertinent to the matter, and the scheduling of proceedings to permit the aggrieved party an opportunity to present evidence." *See id*., § 199.10(d)(3)-(8). Additionally, this process contemplates the presentation of witnesses, evidence, and argument by both the aggrieved party and an attorney representing the interests of the agency. *See id.*, § 199.10(d)(10). The burden of proof is on the appealing party to establish an entitlement through substantial evidence. *Id*. § 199.10(a)(3).

For the administrative hearing at issue here, Administrative Judge Nicole Noel ("AJ Noel") was appointed the hearing officer, and attorney Leslie Greer ("Attorney Greer") was assigned as the agency advocate. The hearing was held on August 22, 2019, in San Diego, and the record was deemed closed on September 6, 2019, after the parties submitted closing statements. *See* Notice, Plaintiff's Ex. "C," pp. 19-20 [ECF #12-2]. AJ Noel then issued her recommended decision to the final decision maker on or about January 21, 2020.[2] Recommended Decision, Plaintiff's Ex. "A," pp. 2-10 [ECF #12-1].

In her recommended decision, AJ Noel found that Plaintiff failed to meet his burden to rebut the presumption created by the agency's specific exclusion of the procedure. *Id*. at p. 10. In short, AJ Noel concluded that the record lacked substantial and reliable evidence to show that the Vertiflex Superion was safe and effective. *Id*. On May 18, 2021, the Chief, TRICARE, issued DHA's final decision, accepting the recommended decision and denying the appeal. Final Decision, Plaintiff's Ex. "B," pp. 14-17 [ECF #12-1].

## B.    The Parties Post-Hearing Communications

In January 2020, Plaintiff's counsel contacted AJ Noel to request a status update regarding the recommended decision. Emails, Plaintiff's Ex. "C," pp. 223-224 [ECF #12-2]. AJ Noel responded that she would issue the decision by the end of the month. *Id*. at p. 223.

---

[2] Currently, by operation of delegation of authority, the Chief, TRICARE Health Plan, is the final decision maker.

Then, on January 31, 2020, AJ Noel wrote an email to Attorney Greer that was not copied to Plaintiff's counsel:

> I have completed the decision in the Maddern case. I wanted to confirm the procedure for issuing the recommended decision and returning the file to DHA. If Mary Wright is the appropriate person to walk me through this, could you please send me her phone number?

January 31, 2020 Email, Ex. "5" to Dorgan Decl. As is clear from the text of the email, AJ Noel's only purpose for the email was to secure the contact information for the individual within DHA responsible for transferring the decision to the final decision maker.

On June 18, 2020, Plaintiff's counsel again emailed AJ Noel to request a status update. Emails, Plaintiff's Ex. "C," p. 223 [ECF #12-2]. Insofar as AJ Noel had completed her task in forwarding the recommended decision, she responded by asking Attorney Greer to provide the update. *Id*. at p. 222. On June 23, 2020, Attorney Greer responded that "Judge Noel issued her recommended decision" and DHA's Headquarters had not yet issued a final decision. *Id*. at p. 220.

On May 11, 2021, Plaintiff's counsel emailed Attorney Greer to advise that his client would pursue litigation if copies of the recommended decision and the issuance of the final decision were not forthcoming. *Id*. at p. 226. In a separate email to AJ Noel the same day, Plaintiff's counsel assumed incorrectly that Attorney Greer must have received a copy of the recommended decision. *Id*. at p. 249. AJ Noel responded only to Plaintiff's counsel to confirm that she previously issued her recommendation and she stated that Attorney Greer, "like you, will learn the final disposition of the case when the Director of DHA issues the final decision." *Id*. at p. 248.

On May 19, 2021, Plaintiff's counsel emailed Attorney Greer to advise that his client "intends to proceed with [litigation] absent a decision on or before May 21, 2021. *Id*. at p. 239. Attorney Greer responded by email on May 19, 2021, "A copy of the Agency's final decision shall be sent via USPS First Class mail today." *Id*.

///

///

4

## III.   ARGUMENT

### A.   Discovery Is Disfavored in APA Cases

As the District Court has already recognized, a court tasked with reviewing a final agency action under the APA must generally confine its analysis to the administrative record, must presume the agency action is valid, and may permit discovery in only four narrowly-defined instances. *See* Order [ECF #6], 1:20-2:10, citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072 (9th Cir. 2006), and *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108 (9th Cir. 2007). The four "narrow exceptions" arise if (1) "admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision;" (2) "the agency has relied on documents not in the record," (3) the record must be supplemented "to explain technical terms or complex subject matter," or (4) "plaintiffs make a showing of bad faith." *Ranchers*, 499 F.3d at 1117. "Accordingly, no formal discovery may be undertaken unless it is necessary for effective judicial review or if the existing record 'cannot be trusted.'" Order [ECF #6], 2:8-10, citing *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 457-58 (D.C. Cir. 1994).

To establish bad faith sufficient to justify discovery, as Plaintiff attempts to do here, a party is not permitted to rely on theories or supposition; the party must produce evidence demonstrating a "strong showing" of bad faith or improper behavior. *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2573-74 (2019). Plaintiff misconstrues this standard when he argues that discovery is permitted "when there is a reasonable basis to believe that 'bad faith'/'improper behavior' has occurred." *See* Motion [ECF #9], 9:24-27. Instead, the standard requires a "significant showing—variously described as a 'strong,' 'substantial,' or 'prima facia' showing—that [discovery] will find material in the agency's possession indicative of bad faith." *See Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7, 12 (D.C. Dist. Ct. 2001). Plaintiff fails to meet that difficult burden here.

///

///

### B.    The APA Defines Improper *Ex Parte* Communication

Under the APA, *ex parte* communication is defined as "communication not on the public record with respect to which reasonable prior notice to all parties is not given, but it shall not include requests for status reports on any matter or proceeding . . . ." 5 U.S.C. § 551. The APA further clarifies that *ex parte* communications are only improper if they are "relevant to the merits of the proceeding." 5 U.S.C. § 557(d)(1); *see id*. § 554(d) (permitting the "employee who presides at the reception of evidence" to engage in "*ex parte* matters as authorized by law," but prohibiting *ex parte* communications "on a fact in issue"). Excluded from these provisions are "those contacts that do not affect the way a given case is decided." *Raz Inland Navigation Co. v. Interstate Commerce Com.*, 625 F.2d 258, 260 (9th Cir. 1980). As explained in *Elec. Power Supply Ass'n v. FERC*, 391 F.3d 1255 (D.C. Cir. 2004), the term "relevant to the merits of the proceeding" necessarily "excludes procedural inquiries, such as requests for status reports, which will not have any effect on the way the case is decided." *Id*. at 1259.

### C.    There Is No Evidence of Improper *Ex Parte* Contacts

In his motion, Plaintiff asks, "[H]ow, other than an *ex parte* contact, could Ms. Greer have known that ALJ Noel issued a recommended decision sometime before Plaintiff first saw it in November 2021?" Motion [ECF #9], 10:11-13. The answer is simple: Attorney Greer knew AJ Noel completed her recommended decision, because AJ Noel emailed her to ask to whom it should be delivered. *See* Email, Ex. "5" to Dorgan Decl. Yet this is not proof of an improper *ex parte* communication; the communication was entirely procedural in nature and had no bearing whatsoever on the merits of the agency decision. Indeed, as demonstrated by AJ Noel's email, the recommended decision was already drafted, the decision had not yet been shared with anyone including Attorney Greer,[3] and the discussions focused solely on process for delivering that decision to the final decision maker.

///

---

[3] There is no evidence the recommended decision was shared with Attorney Greer at any point prior to the issuance of the Final Decision, consistent with the governing regulations.

The only other *ex parte* contact identified by Plaintiff in his motion also fails to qualify as improper within the meaning of the APA. Plaintiff notes that "ALJ Noel sent a message only to Plaintiff's counsel [on May 19, 2021] and contended that she issued a recommended decision in February 2020 and hoped that a decision would issue by the end of the month." Motion [ECF #9], 7:7-10, citing Plaintiff's Ex. "C," p. 248 [ECF #12-2]. By Plaintiff's own admission, this email communication was nothing more than a status update and a comment on procedure; it had nothing to do with the merits of the underlying decision.

Finally, Plaintiff theorizes that additional *ex parte* communications must have occurred to explain the timing of the final decision, issued May 18, 2021, because Plaintiff threatened litigation in an email dated May 11, 2021. *See* Motion [ECF #9], 10:21-27 (asking, "How, other than *ex parte* contacts, could this information have become known to [the final decision maker]?"). This theory assumes that (1) Attorney Greer forwarded Plaintiff's threats of litigation to the office of the final decision maker prior to May 18; and (2) the office of the final decision maker responded to Attorney Greer on or about May 19 that the final decision was issued and would be delivered that day. While those may be fair assumptions, one key aspect of these communications cannot be presumed on the basis of this record: namely that any such communications were improper. Any report of a threat of suit *should* be communicated within an agency, and any such report is akin to a status report to provide situational awareness. It requires a giant leap of logic to argue that this report had any effect on the agency's determination of the merits of Plaintiff's case.

Indeed, the communications at issue here were the product of Plaintiff's own conduct. *He* threatened suit. If the agency were to ignore this threat, he would argue that the agency's indifference is evidence of bad faith. That he now argues the agency's presumed internal communications regarding this threat are proof of bad faith is not only ironic, it is cynical and baseless. Plaintiff's argument effectively seeks to add a fifth "narrow exception" to the APA's bar on discovery by authorizing depositions and subpoenas any time a final decision is issued after a threat of suit.

///

Given the benign nature of the *ex parte* contacts identified above, Plaintiff's reliance on *Greene v. Babbit*, 943 F. Supp. (W.D. Wash. 1996) is misplaced. *See* Motion [ECF #9], 9:22. In *Greene*, the court granted APA relief based on undisputed evidence that the Bureau of Indian Affairs attorney assigned as the agency's advocate in the underlying administrative proceedings "had an *ex parte* meeting with [the final decision maker] for the purpose of attempting to persuade the Assistant Secretary to reject the Administrative Law Judge's recommendation of [the Samish Indian Tribe's] federal recognition." *Id*. at 1282-83. The closed-door lobbying by the attorney was so "fundamentally unfair to the Samish" that the court held the agency attorney in contempt. *Id*. at 1288-89. In stark contrast to the facts before the court in *Greene*, the *ex parte* contacts in this case were merely status reports or procedural inquiries. Indeed, it bears emphasizing that the final decision in this case upheld the recommended decision.

Here, the record demonstrates that the *ex parte* communications at issue were not improper because they did not concern the merits of the proceedings.[4] Plaintiff's counsel conceded as much when he responded to the May 19, 2021 emails that confirmed the recommended decision was issued only to the final decision maker:

> [I]t is comforting to hear that the parties are in the same position with regard to the contents of the recommendation. Somehow, Ms. Greer knew more information than I did regarding the processing of the appeal and that raised a red flag for me. While I do not know how that occurred, given that

---

[4] In addition to AJ Noel's May 19, 2021 email to Plaintiff's counsel, *see* Email, Plaintiff's Ex. "C," p. 248 [ECF #12-2], and AJ Noel's January 31, 2020 email to Attorney Greer, *see* Ex. "5" to Dorgan Decl., Defendant is aware of only four additional *ex parte* communications with AJ Noel. First, during the pendency of the appeal hearing, Plaintiff's spouse sent an email to AJ Noel asking for guidance regarding Plaintiff's medical bills. *See* Email, Ex. "6" to Dorgan Decl. Second, during the pendency of the proceedings, AJ Noel sent a Notice of Hearing to the parties, and Attorney Greer emailed a response without copying Plaintiff's counsel in which she wrote, "Confirming receipt. Thanks." *See* Email, Ex. "7" to Dorgan Decl. Third, on February 4, 2020, AJ Noel emailed Attorney Greer to advise that she had not received a response from "Mary," the same individual whose contact information AJ Noel sought on January 31, 2020, and Attorney Greer responded that "Ms. Wright was out for a few days." *See* Emails, Ex. "9" to Dorgan Decl. Fourth, and finally, on May 18, 2021, AJ Noel emailed Attorney Greer to ask that she provide Plaintiff's counsel with a status update, and Attorney Greer responded to confirm her understanding that "Headquarters will send the Agency's decision to counsel post haste." *See* Emails, Ex. "10" to Dorgan Decl. *None* of the emails evidence *ex parte* contacts that are improper under the APA because they are merely status updates or procedural inquiries.

> it apparently does not go to the contents of the recommendation, I am less concerned.

Emails, Plaintiff's Ex. "C," p. 248 [ECF #12-2]. Accordingly, Plaintiff's theory that the *ex parte* communications evidence bad faith sufficient to warrant discovery must fail, and the Court should deny Plaintiff's motion.

### D.    Plaintiff's Remaining "Bad Faith" Theories Fail

Plaintiff argues that the recommended decision and the final decision were made in bad faith because the decision focuses on the August 2017 procedure and not the November 2017 procedure. Motion [ECF #9], 12:10-12, 13:16-18. As explained above, however, Plaintiff never submitted the November 2017 billings at any stage of the review and appeal process, and he never supplemented the record with any bill for the November 2017 procedure during the course of the formal review. *See, e.g.*, Recommended Decision, Plaintiff's Ex. "A," p. 3 [ECF #12-1]. When a plaintiff fails to seek prior approval for a procedure, the governing regulations require a Plaintiff to establish an "amount in dispute" during the appeal. 32 C.F.R. § 199.10(a)(7). Accordingly, the decisions were properly limited in scope to an evaluation of the August 2017 procedure.

Next, Plaintiff argues that the recommended decision was "concealed" from him in bad faith. Motion [ECF #9], 12:13-19.[5] Here, the agency provided the recommended decision prior to the lodgment of the administrative record. Therefore, any additional right to discovery has been mooted.

Plaintiff further alleges that the recommended decision and the final decision failed to address the evidence submitted at the hearing and that the decision lacks basis. Motion [ECF # 9], 12:14-22. This argument questions the legal sufficiency of the final decision,

---

[5] To the extent Plaintiff also contends any delay in issuing the final decision is evidence of bad faith, that contention must be rejected. This is not a case where an agency has failed to act and relief to compel action is sought under 5 U.S.C. § 701(1). *See Center for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (rejecting as moot an argument based on § 701(1)). Moreover, before filing suit, Plaintiff's counsel expressed his understanding that the delay was associated with the pandemic, noting in an email, "The Madderns appreciate that since March 2020 things have been, shall I say, 'crazy.'" Emails, Plaintiff's Ex. "C," p. 248 [ECF #12-2].

1   which is answered solely on a review of the administrative record. In the administrative

2   record, Defendant provided all exhibits presented at the hearing, opening and closing

3   statements, a transcript of the hearing, the recommended decision, and the final decision.

4   *See* Notice of Lodgment [ECF #13]. There is no other relevant evidence needed to

5   adjudicate the legal sufficiency of the final decision. Here, the Plaintiff is arguing his

6   complaint, which is a matter for summary judgment, not for discovery. Therefore, this

7   argument should be disregarded as a premature attempt to litigate the issues raised in

8   Plaintiff's complaint, lacking a relevant basis, and presenting no evidence of bad faith.

9        Finally, Plaintiff takes issue with the timing of certification of the Administrative

10   Record. Motion [ECF #9], 13:1-7. The record was lodged on January 4, 2022, *because the*

11   *Court's Scheduling Order set this deadline*. *See* Order [ECF #6], 2:15; Notice of Lodgment

12   [ECF #13]. That counsel did not get his way in convincing the Court to set an earlier

13   deadline has no bearing on the issue of whether his client is entitled to discovery.

14   **E.   The Scope of Plaintiff's Proposed Discovery Is Grossly Overbroad**.

15        As noted above, the burden is on Plaintiff to make a "significant showing" that

16   discovery "will find material in the agency's possession indicative of bad faith." *Amfac*

17   *Resorts, LLC*, 143 F. Supp. 2d at 12.  This heavy burden "reflects the recognition that further

18   judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the

19   workings of another branch of Government and should normally be avoided." *Dep't of*

20   *Commerce*, 139 S.Ct. at 2573.

21        Here, proof that AJ Noel sent an *ex parte* email to Plaintiff's counsel to provide a

22   status update or sent an *ex parte* email to Attorney Greer requesting a phone number falls

23   far short of the "substantial showing" of bad faith necessary to justify discovery. Moreover,

24   the broad scope of Plaintiff's proposed discovery only serves to underscore this conclusion.

25   Not only is Plaintiff intent on written discovery, but he wants depositions of Attorney Greer,

26   AJ Noel, *and* Dr. Kenneth Yale (*the* Acting Chief of TRICARE Health Plan). Motion [ECF

27   #9], 14:1-7. For good measure, Plaintiff seeks to depose "anyone else Ms. Greer/ALJ Noel

28   had communications with about this matter." *Id.*

Clearly, Plaintiff's goal is not, as he suggests, to "get[] to the bottom of this matter." *Id.* at 14:10. If his goal was simply to confirm that no inappropriate *ex parte* communications occurred, the parties would have resolved this dispute informally and without Court intervention.[6]  Instead, it is clear that Plaintiff's goal is to cause the very "substantial intrusion" into the workings of Defendant's agency that the APA is designed to avoid.  The Court, therefore, should deny Plaintiff's request for *any* discovery in this case.[7]

## IV.    CONCLUSION

For each of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion for discovery.

Date:  January 10, 2022                              RANDY S. GROSSMAN
                                                                 United States Attorney

                                                                 By  /s/ *Glen F. Dorgan*
                                                                 GLEN F. DORGAN
                                                                 Attorneys for Defendant

---

[6] When Plaintiff first demanded discovery, the Court responded with an Order directing the parties to first meet and confer regarding the demand. Order [ECF #7], 2:4-10. On December 13, 2021, counsel discussed the demand by telephone but were unable to reach a resolution. In an effort to bridge the gap, Defendant's counsel sent an email to Plaintiff's counsel on December 17, 2021, with a proposal to produce emails informally to "provide context" for the statements made by Attorney Greer that give rise to Plaintiff's suspicions of improper *ex parte* contact.  *See* Dorgan Decl., ¶ 9. Plaintiff's counsel rejected the proposal, noting "I do not know anything your people could say or produce that would avoid the need for discovery." *Id.* Plaintiff's refusal to meet and confer should not be condoned, and counsel's conduct now supplies a separate basis for denial of the motion.

[7] Because no privilege or protection applies, Defendant has produced herewith all *ex parte* communications involving AJ Noel known to Defendant, none of which are improper under the APA definition.  *See* Dorgan Decl., ¶ 12. Defendant will continue to assert applicable privileges and protections regarding the agency's internal communications. However, should the Court require an *in camera* inspection of the agency's internal communications for purposes of this motion, Defendant will fully cooperate.