RANDY S. GROSSMAN
United States Attorney
GLEN F. DORGAN (SBN 160502)
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7665
Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MADDERN, | Case No. 3:21-cv-01298-MMA-BLM |
| Plaintiff, | **DECLARATION OF GLEN F. DORGAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY** |
| v. | |
| LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense, | |
| Defendants. | JUDGE:    Hon. Barbara L. Major |

I, Glen F. Dorgan, declare as follows:

1.     I am an Assistant U.S. Attorney and counsel for Defendant in the above-captioned action. I am over the age of 18 and legally competent and capable of making this Declaration. I have personal knowledge of the matters set forth in this declaration and could and would competently testify thereto, except as to those matters based on information and belief and, as to those matters, I believe them to be true.

2.     Attached hereto as Exhibit "1" is a true and correct copy of Plaintiff's appeal letter to Wisconsin Physicians Service ("WPS"), which is included in the lodged Administrative Record in this case.

1

3. Attached hereto as Exhibit "2" is a true and correct copy of WPS' denial of Plaintiff's initial appeal, which is included in the lodged Administrative Record in this case.

4. Attached hereto as Exhibit "3" is a true and correct copy of Plaintiff's request for a formal review from the Appeals, Hearings, and Claims Collection Division of the Defense Health Agency ("Hearings & Appeals"), which is included in the lodged Administrative Record in this case.

5. Attached hereto as Exhibit "4" is a true and correct copy of Hearings & Appeals' formal review, which is included in the lodged Administrative Record in this case.

6. Attached hereto as Exhibit "5" is a true and correct copy of an email dated January 31, 2020, from AJ Nicole Noel ("AJ Noel") to Attorney Leslie Greer ("Attorney Greer").

7. Attached hereto as Exhibit "6" is a true and correct copy of email correspondence between AJ Noel and Deborah Maddern dated September 6, 2019, which is included in the lodged Administrative Record in this case.

8. Attached hereto as Exhibit "7" is a true and correct copy of email correspondence between AJ Noel and Attorney Greer dated August 7, 2019, which is included in the lodged Administrative Record in this case.

9. Attached hereto as Exhibit "8" is a true and correct copy of email correspondence between me and Plaintiff's counsel, James Pistorino, dated December 17, 2021, regarding the parties' efforts to meet and confer regarding Plaintiff's discovery demand.

10. Attached hereto as Exhibit "9" is a true and correct copy of email correspondence between AJ Noel and Attorney Greer dated February 4, 2020.

11. Attached hereto as Exhibit "10" is a true and correct copy of email correspondence between AJ Noel and Attorney Greer dated May 18, 2021.

///

12.    After diligent search and reasonable inquiry, Defendant is unable to locate any additional *ex parte* communications involving AJ Noel other than those identified herein or in Plaintiff's documents submitted in support of his motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of January, 2022, at San Diego, California.


*s/ Glen F. Dorgan*
Glen F. Dorgan
Assistant United States Attorney

# EXHIBIT "1"

(Page 4 of 7, KANQ900)

180640003200

Ronald E. Maddern

████████████████

TRICARE for Life Appeals
P.O. Box 7490
Madison, WI 53707

I am submitting this appeal and request for reconsideration of the non-payment of services for
8/10/2017 Claim # ████████████ and 11/09/2017 Claim # ████████████ The Provider at
Balboa Naval Medical Center of San Diego sent a referral to Tricare for approval for me to be seen by Dr.
Verdolin a pain specialist. The Naval Medical Center could not help my anymore with my lower back
and I was finally approved by Tricare to see this specialist. I should be an exception to the rule for
government non-payment for this procedure. In respect of this request, I have served my country for
over 20 years and feel this is a great injustice to myself and other military or retired that would benefit
from this procedure to reduce pain and have a better quality of life.

In addition, Dr. Verdolin tried everything possible for about 1 year prior to reduce the pain in my
lower spine so that I could be more mobile. As a result, this procedure helped me, and I can walk short
distances without depending on an electronic wheelchair.

In conclusion, please reconsider paying for your portion of the procedure which is in the amount
of $2,378.40 for 8/10/2017. We have not been billed by Scripps Mercy Pavilion to date for 11/9/2017,
but I might be billed in the future if it is denied. Enclosed is all  the paperwork that you requested and a
bill from Scripps Mercy Pavilion for 8/10/2017.

*Ronald E. Maddern*
Ronald E. Maddern
Staff Sargent /Retired U. S. Army

████████████████

WPS REC'
MAR 05 2018
APPEAL

2018064  200086375

Exhibit 3 Page  1

# EXHIBIT "2"



**TRICARE®**

March 12, 2018

RONALD E MADDERN ▮▮▮▮▮▮

Patient: Ronald E Maddern
Sponsor #: ▮▮▮▮▮▮
Sponsor: Ronald E Maddern
Provider: Scripps Mercy Surgery Pavilion
Type of Care: Insertion of Interlaminar/Interspinous Process Stabilization/Distraction Device
Date of Service: 11/09/2017
Type of Appeal: Retrospective
Claim #: ▮▮▮▮▮▮

Dear Mr. Ronald E Maddern :

This response is being provided by Wisconsin Physicians Service (WPS), who is responsible for processing the claims for TRICARE and Medicare Dual Eligible beneficiaries.

Defense Health Agency (DHA), formerly TRICARE Management Activity (TMA) and the Office of the Civilian Health and Medical Program of the Uniformed Services (OCHAMPUS), no longer uses the acronyms, "TMA," "OCHAMPUS," and "CHAMPUS." Many statutory, regulatory and policy instruments, however, still contain these acronyms. When these authorities or other documentation are quoted herein, reference to "OCHAMPUS" and "TMA" is synonymous with "DHA" and reference to "CHAMPUS" is synonymous with "TRICARE".

We have completed a reconsideration of your claim for services provided by Scripps Mercy Surgery Pavilion to Ronald E Maddern. For the reasons noted herein, the denial is upheld.

Statement of Issue:

You questioned whether insertion of interlaminar/interspinous process stabilization/distraction device is a covered benefit of TRICARE & meets the criteria for payment under the Exclusions & Musculoskeletal Policies

Applicable Authority:



**Wisconsin Physicians Service Insurance Corporation**
P.O. Box 7889 | Madison, WI 53707-7889
www.TRICARE4U.com | Proprietary and Confidential
1

**According to TRICARE Policy Manual 6010.57-M, February 2008, Chapter 1, Section 1.2: Exclusions:**

Policy

In addition to any definitions, requirements, conditions, or limitations enumerated and described in other sections of this manual, the following specifically are excluded:

Unproven Procedures

**The following is specifically excluded in accordance with The Code of Federal Regulations (32 CFR 199), Chapter 4, G., 15:** Unproven drugs, devices, and medical treatments or procedures. By law, CHAMPUS can only cost-share medically necessary supplies and services. Any drug, device, or medical treatment or procedure, the safety and efficacy of which have not been established, as described in this paragraph (g)(15), is unproved and cannot be cost-shared by CHAMPUS except as authorized under paragraph 199.4(e)(26) of this part.

**In accordance with The Code of Federal Regulations (32 CFR) 199.4(e)(26):** National Institutes of Health clinical trials. By law, the general prohibition against CHAMPUS cost-sharing of unproven drugs, devices, and medical treatments or procedures may be waived in connection with clinical trials sponsored or approved by the National Institutes of Health National Cancer Institute if it is determined that such a waiver will promote access by covered beneficiaries to promising new treatments and contribute to the development of such treatments. A waiver shall only be excercised as authorized under this paragraph.

**According to TRICARE Policy Manual 6010.57-M, February 2008, Chapter 1, Section 2.1:** Unproven drugs, devices, medical treatments, and procedures.

By law, TRICARE can only cost-share medically necessary supplies and services. TRICARE regulations and program policies restrict benefits to those drugs, devices, treatments, or procedures for which the safety and efficacy have been proven to be comparable or superior to conventional therapies. Any drug, device, medical treatment, or procedure whose safety and efficacy has not been established is unproven and is excluded from coverage.

A drug, device, medical treatment, or procedure is unproven:

If the drug or device cannot be lawfully marketed without the approval or clearance of the U.S. Food and Drug Administration (FDA) and approval or clearance for marketing has not been given at the time the drug or device is furnished to the patient.

If a medical device with an Investigational Device Exemption (IDE) approved by the FDA is categorized by the FDA as experimental/investigational (FDA Category A).

Unless reliable evidence shows that any medical treatment or procedure has been the subject of a well-controlled studies of clinically meaningful endpoints, which have determined its maximum tolerated

2

dose, its toxicity, its safety, and its efficacy as compare with the standard means of treatment or diagnosis.

If reliable evidence shows that the consensus among experts regarding the medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, or its effectiveness as compared with the standard means of treatment or diagnosis.

This exclusion includes all services directly related to the unproven drug, device, medical treatment or procedure.

Cost-sharing may be allowed for services or supplies when there is no logical or causal relationship between the unproven drug, device, treatment, or procedure and the treatment at issue or where such a logical or causal relationship cannot be established with a sufficient degree of certainty. This cost-sharing is authorized in the following circumstances:

Treatment that is not related to the unproven, drug, device, treatment, or procedure e.g., medically necessary treatment the beneficiary would have received in the absence of the unproven drug, device, treatment or procedure.

Treatment which is a necessary follow-up to the unproven drug, device, treatment, or procedure but which might have been necessary in the absence of the unproven treatment.

In making a determination that a drug, device, medical treatment, or procedure has moved from the status of the unproven to the position of nationally accepted medical, practice, TRICARE uses the following hierarchy of reliable evidence (see 32 CFR 199.2):

Well controlled studies of clinically meaningful endpoints, published in refereed medical literature.

Published formal technology assessments.

The published reports of national professional medical associations.

Published national medical policy organization positions.

The published reports of national expert opinion organizations.

The hierarchy of reliable evidence of proven medical effectiveness, established by paragraphs 5.1 through 5.5, is the order of the relative weight to be given to any particular source. With respect to clinical studies, only those reports and articles containing scientifically valid data and published in the refereed medical and scientific literature shall be considered as meeting the requirements of reliable evidence. Specifically not included in the meaning of reliable evidence are reports, articles, or statements by providers or groups of providers containing only abstracts, anecdotal evidence or personal professional opinions. Also not included in the meaning of reliable evidence is the fact that a provider or a number of providers have elected to adopt a drug, device, medical treatment, or procedure as their personal treatment or procedure of choice or standard of practice.

3

TRICARE policy and benefit structure is never based solely that of other government medical programs, including Medicare, because each operates under its own statutes and regulations. Furthermore, while TRICARE may examine the policies of private third party payers. TRICARE coverage may only be based on governing statutes and regulations.

The contractor(s) shall routinely review the hierarchy of reliable evidence, as defined in 32 CFR 199.2, and bring to Defense Health Agency's (DHA) attention, drugs, devices, medical treatments, or procedures that they believe have moved from unproven to proven. DHA will apply the standards and procedures in TRICARE regulation and policy and if determined by DHA to have moved to proven, will notify all contractors that the drug, device, medical treatment, or procedure is proven and a part of the TRICARE benefit.

For drugs, devices, medical treatments, and procedures that TRICARE has determined have moved from the status of unproven to the status of proven in accordance with the procedure established in paragraph 5.0, the effective date (or the date on which the particular drug, device medical treatment, or procedure may be cost-shared) is the date published reliable evidence (as described in 32 CFR 199.2) shows proven medical effectiveness. For example, the effective date may be established as the date of publication of a well-controlled study of clinically meaningful endpoints published in refereed medical literature, or the publication date of a formal technology assessment.

According to the TRICARE Policy Manual 6010.57-M, February 2008, Chapter 4, Section 6.1,: Musculoskeletal System:

Services and supplies required in the diagnosis and treatment of illness or injury involving the musculoskeletal system are covered. U.S. Food and Drug Administration (FDA)-approved surgically implanted devices are also covered.

Effective August 25, 1997, Autologous, Chondrocyte Implantation (ACI) surgery for the repair of clinically significant, symptomatic, cartilaginous defects of the femoral condyle (medial, lateral or trochlear) caused by acute or repetitive trauma is a covered procedure. The autologous cultured chondrocytes must be approved by the FDA.

Single or multilevel anterior cervical microdiskectomy with allogenic or autogenic iliac crest grafting and anterior plating is covered for the treatment of cervical spondylosis.

Percutaneous vertebroplasty (CPT[1] procedure codes 22520-22522, S2360, S2361) and balloon kyphoplasty (CPT[1] procedure codes 22523-22525) are covered for the treatment of painful osteolytic lesions and osteoporotic compression fractures refractory to conservative medical treatment.

4

Exhibit 5 Page   4

Total Ankle Replacement (TAR) (CPT [2] procedure code 27702 and 27703) surgery is covered if the device is FDA approved and the use is for an FDA approved indication. However, a medical necessity review is required in case of marked varus or valgus deformity.

Core decompression of the femoral head (hip) for early (precollapse stage I or II) avascular necrosis may be considered for cost sharing.

Single-level, cervical Total Disc Replacement (TDR) (CPT [2] procedure code 22856) using an FDA approved cervical artificial intervertebral disc for the treatment of cervical DDD, intractable radiculopathy, and/or myelopathy is covered if the disc is used in accordance with its FDA labeled indications.

High Energy Extracorporeal Shock Wave Therapy (HE ESWT) for the treatment of plantar fasciitis is covered when all of the following conditions are met:

- Patients have chronic plantar fasciitis of at least six months duration;

- Patients have undergone and failed six months of appropriate conservative therapy; and

- HE ESWT is defined as Energy Flux Density (EFD) greater than 0.12 millijoules per square millimeter (mJ/mm2).

EXCLUSIONS

Meniscal transplant (CPT [2] procedure code 29868) for meniscal injury is unproven.

Ligament replacement with absorbable copolymer carbon fiber scaffold is unproven.

Prolotherapy, joint sclerotherapy and ligamentous injections with sclerosing agents (HCPCS procedure code M0076) are unproven.

Trigger point injection (CPT [2] procedure codes 20552 and 20553) for migraine headaches.

Total disc arthroplasty (artificial disc), anterior approach, including discectomy with end plate preparation (includes osteophytectomy for nerve root or spinal cord decompression and micro

5

dissection), cervical, second level (CPT[2] procedure code 22858) and three or more levels (CPT[2] procedure code 0375T) is unproven.

Removal of total disc arthroplasty (artificial disc), anterior approach cervical, each additional interspace (CPT[2] procedure code 0095T) is unproven. Also, see section 1.1.

Lumbar total disc arthroplasty (lumbar artificial intervertebral disc revision including replacement, lumbar total disc replacement) for degenerative disc disease is unproven (CPT[2] procedure code 22857, 22862, 0163T, 0164T and 0165T).

Low Energy (LE) or radial ESWT for the treatment of plantar fasciitis is unproven.  Any form of ESWT for the treatment of lateral epicondylitis is unproven.

X STOP Interspinous Process Decompression System (CPT[2] procedure code 0171T and 0172T, HCPCS code C1821) for the treatment of neurogenic intermittent claudication secondary to lumbar spinal stenosis is unproven.

Femoroacetabular Impingement (FAI) open surgery, surgical dislocation (CPT[2] procedure codes 27140 and 27179), for the treatment of hip impingement syndrome or labral tear is unproven.

Hip arthroscopy with debridement of articular cartilage (CPT[2] procedure code 29862) for the treatment of FAI is unproven.

Femoroplasty (CPT[2] procedure code 29999) for treatment of FAI syndrome is unproven.

Osteochondral allograft of the humeral head with meniscal transplant and glenoid microfracture in the treatment of shoulder pain and instability is unproven.

Thermal Intradiscal Procedures (TIPs) (CPT[3] procedure codes 22526, 22527, 62287, and Healthcare Common Procedure Coding System (HCPCS) code S2348) are unproven.  TIPs are also known as: Intradiscal Electrothermal Annuloplasty (IEA), Intradiscal Electrothermal Therapy (IDET), Intradiscal Thermal Annuoplasty (IDTA), Percutaneous Intradiscal Radiofrequency Thermocoagulation (PIRFT), Coblation Percutaneous Disc Decompression, Nucleoplasty (also known as Percutaneous Radiofrequency (RF) Thermomodulation or Percutaneous Plasma Diskectomy), Radiofrequency Annuloplasty (RA), Intradiscal Biacuplasty (IDB), Percutaneous (or Plasma) Disc Decompression (PDD), Targeted Disc Decompression (TDD), Cervical Intradiscal RF Lesioning.

Total hip resurfacing (HCPCS code S2118) for treatment of degenerative hip disease is unproven.

6

Spinal manipulation under anesthesia (CPT[3] procedure codes 00640 and 22505) for the treatment of back pain is unproven.

Minimally Invasive Lumbar Decompression (mild®) for the treatement of Degenerative Disc Disease (DDD) and/or spinal stenosis is unproven.

ACI surgery for the repair of patellar cartilage lesions is unproven.

iFuse Implant System (CPT[3] procedure code 27279) for treatment of sacroiliac joint pain is unproven.

EFFECTIVE DATES

February 6, 2006, for percutaneous vertebroplasty and balloon kyphoplasty.

May 1, 2008, for TAR.

May 1, 2008, for core decompression of the femoral head.

December 24, 2012, for single-level, cervical TDR using an FDA approved cervical artificial intervertebral disc.

December 2, 2013, for HE ESWT for plantar fasciitis.

TRICARE benefits are authorized by Congressional legislation incorporated in Chapter 55 of Title 10, United States Code, and implemented by the Secretary of Defense and the Secretary of Health and Human Services in Title 32, Code of Federal Regulations, Part 199 (32 CFR 199). Specific regulation provisions pertinent to this case are set forth below.

**32 CFR 199.4(a)(1)(i) SCOPE OF BENEFITS.** Subject to all applicable definitions, conditions, limitations, or exclusions specified in this part, the CHAMPUS Basic Program will pay for medically necessary services and supplies required in the diagnosis and treatment of illness or injury, including maternity care and well-baby care. Benefits include specified medical services and supplies provided to eligible beneficiaries from authorized civilian sources such as hospitals, other authorized institutional providers, physicians, other authorized individual professional providers, and professional ambulance service, prescription drugs, authorized medical supplies, and rental or purchase of durable medical equipment.

7

**32 CFR 199.2 DEFINES MEDICALLY OR PSYCHOLOGICALLY NECESSARY** . The frequency, extent, and types of medical services or supplies which represent appropriate medical care and that are generally accepted by qualified professionals to be reasonable and adequate for the diagnosis and treatment of illness, injury, pregnancy, and mental disorders or that are reasonable and adequate for well-baby care.

**32 CFR 199.2 DEFINES APPROPRIATE MEDICAL CARE** . (i) Services performed in connection with the diagnosis or treatment of disease or injury, pregnancy, mental disorder, or well-baby care which are in keeping with the generally accepted norms for medical practice in the United States; (ii) The authorized individual professional provider rendering the medical care is qualified to perform such medical services by reason of his or her training and education and is licensed or certified by the state where the service is rendered or appropriate national organization or otherwise meets CHAMPUS standards; and (iii) The services are furnished economically. For purposes of this part, "economically" means that the services are furnished in the least expensive level of care or medical environment adequate to provide the required medical care regardless of whether or not that level of care is covered by CHAMPUS.

**32 CFR 199.4(a)(5) RIGHT TO INFORMATION.** As a condition precedent to the provision of benefits hereunder, OCHAMPUS or its CHAMPUS fiscal intermediaries shall be entitled to receive information from a physician or hospital or other person, institution, or organization (including a local, state, or U.S. Government agency) providing services or supplies to the beneficiary for which claims or requests for approval for benefits are submitted. Such information and records may relate to the attendance, testing, monitoring, or examination or diagnosis of, or treatment rendered, or services and supplies furnished to a beneficiary, and shall be necessary for the accurate and efficient administration of CHAMPUS benefits. Before a determination will be made on a request for pre-authorization or claim of benefits, a beneficiary or sponsor must provide particular additional information relevant to the requested determination, when necessary. The recipient of such information shall in every case hold such records confidential except when:

(i) Disclosure of such information is authorized specifically by the beneficiary;

(ii) Disclosure is necessary to permit authorized governmental officials to investigate and prosecute criminal actions, or

(iii) Disclosure is authorized or required specifically under the terms of the Privacy Act or Freedom of Information Act (refer to Sec. 199.1(m) of this part).

For the purposes of determining the applicability of and implementing the provisions of Secs. 199.8, 199.11, and 199.12, or any provision of similar purpose of any other medical benefits coverage or entitlement, OCHAMPUS or CHAMPUS fiscal intermediaries may release, without consent or notice to any beneficiary or sponsor, to any person, organization, government agency, provider, or other entity any information with respect to any beneficiary when such release constitutes a routine use published in the Federal Register in accordance with DoD 5400.11-R (Privacy Act(5 U.S.C. 552a)). Before a person's claim of benefits will be adjudicated, the person must furnish to CHAMPUS information that reasonably may be expected to be in his or her possession and that is necessary to

make the benefit determination.  Failure to provide the requested information may result in denial of the claim.

**32 CFR 199.4(g)(63) NON-COVERED CONDITION, UNAUTHORIZED PROVIDER.** All services and supplies (including inpatient institutional costs) related to a non-covered condition or treatment, or provided by an unauthorized provider are specifically excluded from the Basic Program.

**32 CFR 199.10(a)(3) BURDEN OF PROOF.**  The burden of proof is on the appealing party to establish affirmatively by substantial evidence the appealing party's entitlement under law and this part to the authorization of CHAMPUS benefits, approval of authorized CHAMPUS provider status, or removal of sanctions imposed under Sec. 199.9 of this part.  If a presumption exists under the provisions of this part or information constitutes prima facie evidence under the provisions of this part, the appealing party must produce evidence reasonably sufficient to rebut the presumption of prima facie evidence as part of the appealing party's burden of proof.  CHAMPUS shall not pay any part of the cost or fee, including attorney fees, associated with producing or submitting evidence in support of an appeal.

**32 CFR 199.4(a)(13) IMPLEMENTING INSTRUCTIONS.**  The Director, OCHAMPUS, shall issue policies, procedures, instructions, guidelines, standards and/or criteria to implement this section.

**32CFR199.4(g)(74)** The fact that a physician may prescribe, order, recommend, or approve a service or supply does not, of itself, make it medically necessary or make the charge an allowable expense, even though it is not listed specifically as an exclusion.

Discussion:

Procedure code 22869, insertion of interlaminar/interspinous process stabilization/distraction device, without open decompression or fusion, including image guidance when performed, lumbar; single level denied as a non-covered service.  This procedure falls into the X-Stop category in that these devices are considered investigational for the stand-alone treatment of spinal stenosis and is excluded per statute or policy.

The diagnosis on this claim was spinal stenosis, lumbar region with neurogenic claudication.

In your reconsideration request, you sent a copy of the TRICARE Explanation of Benefits for date of service 11/09/2017 & 08/10/2017, a copy of a bill for date of service 08/10/2017 and a letter.  In the letter, you note the naval medical center in San Diego could no longer assist you so you were referred to civilian pain specialist.  You believe you should be the exception to the rule for payment on this procedure since you served your country for over twenty years.  You also note since you had the procedure done, you are able to walk short distances without depending on an electric wheelchair. You are asking TRICARE to reconsider payment on procedure code 22869.

For date of service 08/10/2017, a reconsideration was already done and the decision was upheld in October 2017.

9

Exhibit 5 Page   9

Procedure code C1821 denied as a non-covered service on this claim.  However, Medicare applied the amount as a contractual obligation leaving no patient liability on this procedure.

Decision:

After reexamining all available information, we concluded that the original decision was correct.

Benefits must remain denied for this claim.  Procedure code 22869, the insertion of interlaminar/interspinous process stabilization/distraction device, without open decompression or fusion, including image guidance when performed, lumbar; single level is considered investigational for the stand-alone treatment of spinal stenosis and is excluded per statute or policy.

Your amount remaining in dispute $73,521.00 (billed amount), $11,701.71 (allowed amount), less $0.00 (cost share), less $0.00 (deductible), less $9,323.31 (other health insurance if applicable) is $2,378.40.

However, there are other claims/services involved that bring the total amount in dispute to $ 4,971.15.

Appeal Rights:

In accordance with 32 CFR 199.10, if your amount in dispute is equal to or greater than $50.00, an appropriate appealing party (i.e., the TRICARE beneficiary, the non-network participating provider of care {a network provider is not an appropriate appealing party and cannot appeal}, or a provider of care who has been denied approval under TRICARE), or the appointed representative of an appropriate appealing party, has the right to request a formal review.  To avoid the possibility of a conflict of interest, an officer or employee of the United States, such as an employee or member of a Uniformed Service, including an employee or staff member of a Uniformed Service legal office, an MTF Provider or a Health Benefits Advisor, is not eligible to serve as a representative.  An exception usually is made when an employee or Member of a Uniformed Service is representing an immediate family member.  The request must be in writing, be signed, and must be postmarked or received by the Appeals and Hearings Division, Defense Health Agency (DHA), within sixty (60) calendar days from the date of this reconsideration determination.  The request must also include a copy of this reconsideration determination.  For the purpose of TRICARE, a postmark is a cancellation mark issued by the United States Postal Service.  If the postmark on the envelope is not legible, then the date of receipt is deemed to be the date of filing.  Send your request for a formal review to:

> Appeals and Hearings Division
> Defense Health Agency (DHA)
> 16401 East Centretech Parkway
> Aurora, CO  80011-9066

Additional documentation in support of the appeal may be submitted.  However, because a request for formal review must be postmarked or received within sixty (60) calendar days from the date of this reconsideration determination, a request for a Formal Review should not be delayed pending the acquisition of any additional documentation.  If additional documentation is to be submitted at a later date, the letter requesting the formal review should include a statement that additional documentation

10

will be submitted and the expected date of submission.  Upon receiving the request for formal review, all claims related to the entire course of treatment will be reviewed.  DHA's Appeals and Hearings Division will complete its formal review and notify the appealing party of its determination as soon as possible.

We will continue to extend every effort to provide you with all TRICARE benefits for which you are eligible.

If you have any questions or need assistance, visit us online at www.TRICARE4u.com or call toll free 1-866-773-0404 (TDD 1-866-773-0405).  You can also follow us on Facebook and Twitter at WPS4U.

Sincerely,

Dawn Schwartz
WPS-TRICARE Appeals Department

CC:  SCRIPPS MERCY SURGERY PAVILION

11

# EXHIBIT "3"

April 9, 2018

Ronald E. Maddern

██████████████

Appeals and Hearings Division
Defense Health Agency (DHA)
16401 East Centretech Parkway
Aurora, CO  80011-9066

I appoint my wife (Deborah A. Maddern) to be my representative in the appeal process.  She has been my spouse for nearly 45 years and she knows about every condition in my body.

I request a formal review of all of the evidence that I am submitting to the Appeals and Hearings Division.  If you require further information for this appeal, please notify me ████████ or Dr. Verdolin, M.D. at (619) 625-1144 Ph or (619) 872-0964 Fax.

Enclosed is Tricare Denial Letter with explanation papers, Original Appeal letter and documentation, Doctor Verdolin's letter and supporting documentation, and information of procedures I have had in the past.

I trust that this would be enough information to grant my appeal.

Thank You

*Ronald E. Maddern*
Ronald E. Maddern
Staff Sargent/Retired U.S. Army

██████████████

2018 APR 12 PM 2:25

Exhibit 6 Page   1

# EXHIBIT "4"

**BEFORE THE DIRECTOR**
**DEFENSE HEALTH AGENCY**
**UNITED STATES DEPARTMENT OF DEFENSE**

| | |
|---|---|
| Appeal of | ) Defense Health Agency |
| | ) |
| | ) |
| | ) **FORMAL REVIEW DECISION** |
| | ) |
| Beneficiary: Ronald Maddern, | ) |
| A TRICARE for Life Beneficiary | ) Formal Review No. AH180423 |

## I. Decision Summary

The above-named beneficiary ("the Beneficiary") appealed the denial of TRICARE® cost-sharing of a Vertiflex Superion Interlaminar/Interspinous Process Stabilization Device (or Superion Interspinous Spacer®) and related services provided to treat lumbar spinal stenosis on August 8 and November 9, 2017 ("the Disputed Care"). The non-network, participating providers of care are Michael Verdolin, MD; Anesthesia Service Medical Group; and Scripps Mercy Surgical Pavilion. For the reasons herein, I uphold the previous denial of TRICARE cost-sharing.

This formal review decision is specific to the above-captioned appeal and will not be relied on, used, or cited as precedent by the Department of Defense or its contractors in the administration of TRICARE.

## II. Introduction

The Defense Health Agency (DHA)[1] appeal and hearing process is authorized by Title 32, Code of Federal Regulations (C.F.R.), Part 199. The appealing party has the burden to establish, by substantial evidence, an entitlement under law and 32 C.F.R. Part 199 to the authorization of TRICARE benefits, and must produce reasonably sufficient or prima facie evidence to rebut a presumption in favor of TMA. 32 C.F.R. § 199.10(a)(3).

In issuing this decision, the following have been reviewed and considered: 1) the applicable sections of Title 10 United States Code (U.S.C.) Chapter 55 (the Statute); 2) 32 C.F.R. Part 199 (the Regulation); 3) policy manuals, instructions, procedures, and other guidelines

---

[1] The Defense Health Agency (DHA), formerly the TRICARE Management Activity (TMA), and previously known as the Office of the Civilian Health and Medical Program of the Uniformed Services (OCHAMPUS), no longer uses the acronyms, "TMA," "OCHAMPUS," and "CHAMPUS." However, most regulatory and policy instruments still contain the OCHAMPUS and CHAMPUS acronyms. For the purposes of this matter, when authorities and other documentation are quoted, any reference to "OCHAMPUS" or "TMA" is synonymous with "DHA" and any reference to "CHAMPUS" is synonymous with "TRICARE."

Exhibit 16 Page   1

issued by the Assistant Secretary of Defense for Health Affairs, the DHA Director, or their designees, in effect when the matter in dispute arose; 4) the record on appeal; 5) the Beneficiary's formal review request, 6) additional documentation submitted by the appealing party and device manufacturer; and a Medical Benefit Determination (MBD) prepared by the DHA Medical Benefits and Reimbursement Division (MB&RD), which was concurred on by the Director, DHA.

### III. Issue under Appeal

**ISSUE A:** Whether the Disputed Care has been proven safe, effective, and comparable to standard treatment for the Beneficiary's condition.

**ISSUE B:** Whether any of the services provided were not related to the Superion Interspinous Spacer®.

### IV. Factual Background

This case concerns a then-69-year-old TRICARE for Life beneficiary and retired uniformed service member. The Beneficiary was diagnosed as suffering from lumbar spinal stenosis, for which the Disputed Care was performed, after unsuccessful medication, radiofrequency ablation, interlaminar epidural steroid injections, and medial branch block regimens.

After Medicare payment, the Providers submitted claims under TRICARE, as the secondary payer, to the TRICARE Dual Eligible Fiscal Intermediary Contractor, Wisconsin Physicians Service (WPS). WPS denied cost-sharing in initial determination and reconsideration decisions as the Disputed Care was excluded unproven care.

The Beneficiary filed a formal review request with the DHA Appeals, Hearings, and Claims Collection Division (DHA Appeals). The Beneficiary contends the care was medically necessary and appropriate and not unproven. I advised the Beneficiary of what TRICARE considered as reliable evidence to show that care is not unproven and requested submission of reliable evidence. Additional evidence was submitted. Also as part of my review, the new evidence was submitted to the DHA Medical Benefits and Reimbursement Division (MB&RD), with the exception of one article submitted most recently.

### V. Findings of Fact and Conclusions of Law

The TRICARE Program is a federal statutory entitlement program for active duty uniformed services members, retirees, and their dependents, which authorizes the Secretary of Defense to provide a uniform program of medical benefits. 10 U.S.C. §§ 1071 and 1073(b). The TRICARE Program is administered and implemented through 32 C.F.R. Part 199. 10 U.S.C. § 1073(a).

The Beneficiary appealed the contractor's denial, requesting a formal review, which was accepted by DHA Appeals. The Beneficiary has standing to appeal, and his appeal was timely filed, as the reconsideration decision was issued on March 12, 2018, and as the formal review request was received April 12, 2018. The issue raised in this appeal is whether the Disputed Care in the treatment of lumbar stenosis satisfies TRICARE coverage criteria as a proven procedure, which is a question of fact, and an appealable issue. 32 C.F.R. §§199.2(b) and 199.10. The amount in dispute is $4,971.15, after payment by Medicare. The amount in dispute exceeds the regulatory minimum for formal review. 32 C.F.R. §§ 199.2(b) and 199.10(a)(7).

**ISSUE A:** Whether the Disputed Care has been proven safe, effective, and comparable to standard treatment for the Beneficiary's condition.

TRICARE can only cost-share medically necessary supplies and services. 10 U.S.C. § 1079(a)(13) and 32 C.F.R. § 199.4(a). TRICARE regulations and program policies restrict benefits to those supplies, devices, treatments, or procedures for which the safety and efficacy have been proven to be comparable or superior to conventional therapies. 32 C.F.R. § 199.4(g)(15) and TPM, Chapter 1, Section 2.1. Any drug, device, medical treatment, or procedure for which the safety and efficacy have not been established is unproven and is excluded from coverage. 32 C.F.R. § 199.4(g)(15) and TPM, Chapter 1, Section 2.1.

As provided in 32 C.F.R. § 199.4(g)(15), a drug, device, medical treatment, or procedure is unproven:

1. If the drug or device cannot be lawfully marketed without the approval or clearance of the Food and Drug Administration (FDA) and approval or clearance for marketing has not been given at the time the drug or device is furnished to the patient.

2. If a medical device with an Investigational Device Exemption (IDE) approved by the FDA is categorized by the FDA as experimental/investigational (FDA Category A).

3. Unless <u>reliable evidence shows that any medical treatment or procedure has been the subject of</u> **well-controlled studies** of clinically meaningful endpoints, which have determined its maximum tolerated dose, its toxicity, its safety, and its efficacy as compared with standard means of treatment or diagnosis. (Emphasis added.)

4. If the reliable evidence shows that the consensus among experts regarding the medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, or its effectiveness as compared with the standard means of treatment or diagnosis.

For the purposes of TRICARE, reliable evidence includes:

1) Well controlled studies of clinically meaningful endpoints, published in refereed medical literature,

2)  Published formal technology assessments,

3)  The published reports of national professional medical associations,

4)  Published national medical policy organization positions, or

5)  The published reports of national expert opinion organizations.

32 C.F.R. § 199.2(b).  The hierarchy of reliable evidence of proven medical effectiveness, established by 1) through 5) above, is the order of the relative weight to be given to any particular source.  With respect to clinical studies, only those reports and articles containing scientifically valid data and published in the refereed medical and scientific literature shall be considered as meeting the requirements of reliable evidence.  Specifically not included in the meaning of reliable evidence are reports, articles, or statements by providers or groups of providers containing only abstracts, anecdotal evidence, or personal professional opinions.  Also not included in the meaning of reliable evidence is the fact that a provider or a number of providers have elected to adopt a medical treatment or procedure as their personal treatment or procedure of choice or standard of practice. *Id.*  The term, clinically meaningful endpoints, means objectively measurable outcomes of clinical interventions or other medical procedures, expressed in terms of survival, severity of illness or condition, extent of adverse side effects, diagnostic capability, or other effect on bodily functions directly associated with such results. *Id.*  For drugs, devices, medical treatments, and procedures that TRICARE has determined have moved from the status of unproven to the status of proven, the effective date (or the date on which the particular drug, device, medical treatment, or procedure may be cost-shared) is the date published reliable evidence shows proven medical effectiveness; e.g., the effective date may be established as the date of publication of a well-controlled study of clinically meaningful endpoints published in refereed medical literature, or the publication date of a formal technology assessment. TPM, Chapter 1, Section 2.1, Paragraph 9.0.  As provided at 32 C.F.R. § 199.4(g)(74), the fact that a physician may prescribe, order, recommend, or approve a service or supply does not, of itself, make it medically necessary or make the charge an allowable expense, even though it is not specifically listed as an exclusion.  An appealing party has the burden of proof to demonstrate care is eligible for cost-sharing. 32 C.F.R. § 199.10(a)(3).

Essentially, an appealing party, to demonstrate care is proven, must point to well-controlled studies (e.g., randomized controlled trials that compare the care under review to the standard means of treatment or diagnosis).  In this case, the standard care to be compared is surgical laminectomy; the manufacturer's own submitted medical literature concede this point by characterizing laminectomy as the "gold standard for the condition under review. P. D. Nunley, et. al., *Superion Interspinous Spacer Treatment of Moderate Spinal Stenosis: Four Year Results*, 104 World Neurosurgery 279 – 283, at 279 (2017).

While United States Food and Drug Administration ("FDA") is a necessary precondition to cost-sharing a medical device, this approval alone is not sufficient to conclude the device is proven. TRICARE Policy Manual ("TPM"), Chapter 8, Section 5.1, Paragraph 2.2.  Likewise, the policies of Medicare and private insurers alone are not sufficient to conclude the device is

proven and the private insurer policies are not reliable evidence as defined above. TPM, Chapter 1, Section 2.1, Paragraph 7.0.

Matters concerning relatively new medical procedures and treatment regimens are referred to the DHA Medical Benefits and Reimbursement Division (MB&RD). MB&RD has the responsibility for ensuring that all medical benefits considered for cost-sharing under TRICARE are supported by scientific peer reviewed literature and within the constraints of the law and regulation. These responsibilities include promulgating policy interpretations and maintaining continuous regulatory and policy updates based on congressional mandate and the current standards of medical care. TPM, Chapter 1, Section 1.1, Paragraph 2.0. X-STOP and other interspinous spacer devices are excluded from coverage. TPM, Chapter 4, Section 6.1, Paragraph 5.9 and 5.13.

In its May 2018 clinical research review, Hayes found that while there is evidence to suggest that the interlaminar/interspinous stabilization device the Beneficiary received may be an effective and safe treatment for selected patients with moderate lumbar spinal stenosis (LSS), the available published data are limited to multiple reports of a single non-inferiority randomized controlled trial and 2 small uncontrolled prospective studies. Hayes concluded all of these studies were limited by methodological weaknesses, potential bias, and lack of long-term follow-ups. The evidence, in Hayes' opinion, reveals that the device has not been studied enough to establish its safety, effectiveness and long-term durability for the treatment of LSS.

On October 18, 2018, MB&RD issued an MBD concluding the excluded care was still unproven.

Five well-controlled studies with clinically meaningful endpoints were identified for this MBD. Poetscher, et. al., reviewed available data on IPD RCTs (interspinous process devices randomized, controlled trials) and found no evidence of superiority in outcomes when compared to decompression surgery, as well as concerning reoperation rates. Moojen, et. al., failed to find a difference in outcomes between Coflex and decompression, except that Coflex had higher reoperation rates. Lonne et. al., reported X-Stop to have results similar to MID, but halted their study due to higher than expected reoperation rates. Three articles reported on the non-inferiority trial between X-Stop and Superion; the results suggest the two IPDs have similar effectiveness, but that both also carry a high reoperation rate. This study also presented evidence of fractures and other adverse events resulting from IPD-implantation for which the long-term ramifications are not yet known. A multi-center, international RCT by Meyer, et. al., demonstrated non-inferiority between an IPD and decompression, while once again confirming high reoperation rates. Across the board, the high reoperation rates were primarily due to lack of effectiveness of the original surgery.

Hayes' assessments of all three FDA-approved IPDs state there is insufficient evidence to establish the safety, effectiveness, and long-term durability of the individual devices. ECRI provided a "somewhat favorable" recommendation but noted the need for additional longer-term, prospective controlled trials. The NASS

also finds insufficient evidence to support IPDs. NPS and NICE provided recommendations for IPDs in select cases. Given concerns in the medical literature about reoperation rates, lack of evidence on the long-term safety of these procedures, Hayes' continued poor ratings, minimal support by ECRI, lack of support from NASS, and limited recommendations from NPS or NICE, MB&RD recommends the Director, Defense Health Agency (DHA), find there is insufficient evidence to recommend the use of IPDs for the treatment of neurogenic claudication and/or LSS.

MB&RD went further into discussing the existing reliable and other information in its MBD. A copy of the MBD is being provided to the potential appealing parties, with a courtesy copy being provided to the manufacturer. The DHA Director concurred with MB&RD's recommendation.

Based on review of the record, and TRICARE's statutory and regulatory authorities, the Disputed Care remains unproven in the treatment of the Beneficiary's condition within the meaning of TRICARE regulation and policy. Therefore, the Disputed Care is not a TRICARE covered benefit and TRICARE cost-sharing remains denied.

**ISSUE B:**  Whether any of the services provided were not related to the Superion Interspinous Spacer®.

TRICARE covers services or supplies when there is no logical or causal relationship between the unproven drug, device or medical treatment or procedure and the treatment at issue or where such a logical or causal relationship cannot be established with a sufficient degree of certainty. This coverage is authorized in the following circumstances:

(A)  Treatment that is not related to the unproven drug, device or medical treatment or procedure; e.g., medically necessary in the absence of the unproven treatment.

(B)  Treatment which is necessary follow-up to the unproven drug, device or medical treatment or procedure but which might have been necessary in the absence of the unproven treatment.

32 C.F.R. § 199.4(g)(15)(iii). Additionally, services and supplies (including inpatient institutional costs) related to a non-covered condition or treatment, including any necessary follow-on care or the treatment of complications, are excluded from coverage. 32 C.F.R. § 199.4(g)(63). From my review of the record, I find no indication or contention any of the Disputed Care was not related to the Superion Interspinous Spacer®.

## VI. Decision

For the reasons herein, I have determined TRICARE cost-sharing cannot be approved for the Disputed Care, because it is unproven in the treatment of The Beneficiary's condition.

### VII. Appeal Rights

Where there is an amount in dispute of $300.00 or more (after subtraction of the Beneficiary's cost-share), an appropriate appealing party (i.e., the TRICARE beneficiary or a participating non-network provider of care), or the appointed representative of an appropriate appealing party,[2] has the right to request a hearing. 32 C.F.R. § 199.10(c)(5). *To be timely, the request for hearing must be in writing, signed, and must be postmarked or received by the Appeals and Hearings Division, Defense Health Agency, 16401 East Centretech Parkway, Aurora, Colorado 80011-9066, within 60 calendar days from the date of this decision.* 32 C.F.R. § 199.10(d). For the purposes of TRICARE, a postmark is a cancellation mark issued by the United States Postal Service. If the postmark on the envelope containing the hearing request is not legible, or if the method by which the appeal request is transmitted is other than by way of the United States Postal Service, then the date of receipt is deemed to be the date of filing. 32 C.F.R. § 199.10(d), TOM, Chapter 12, Section 3, Paragraph 1.4.1. Additional documentation in support of the appeal may be submitted. However, because a request for hearing must be postmarked or received within 60 calendar days of the date of the formal review decision, a request for hearing should not be delayed pending the acquisition of any additional documentation. 32 C.F.R. § 199.10(c)(5)(iii). If additional documentation is to be submitted at a later date, the letter requesting the hearing must include a statement that additional documentation will be submitted and the expected date of submission. Upon receiving the appeal request, all related TRICARE claims for the entire course of treatment will be reviewed. 32 C.F.R. § 199.10(d)(2).

Decided this _7th_ Day of _December_, 2018,

*William N. Voharas*

William N. Voharas
Attorney
Appeals, Hearing, and Claims Collection Division
Office of General Counsel
Defense Health Agency
16401 East Centretech Parkway
Aurora, Colorado 80011-9066

---

[2] To avoid the possibility of a conflict of interest, an officer or employee of the United States, such as an employee or member of a Uniformed Service, including an employee or staff member of a Uniformed Service legal office, a military treatment facility provider, or a Health Benefits Advisor, is not eligible to serve as a representative. An exception usually is made when an employee or Member of a Uniformed Service is representing an immediate family member.

# EXHIBIT "5"

**Greer, Leslie B CIV DHA CLAIMS (USA)**

| | |
|---|---|
| **From:** | Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil> |
| **Sent:** | Friday, January 31, 2020 8:47 AM |
| **To:** | Greer, Leslie B CIV DHA CLAIMS (USA) |
| **Subject:** | Task No. 19-01 |

Ms. Greer:

I have completed the decision in the Maddern case. I wanted to confirm the procedure for issuing the recommended decision and returning the file to DHA. If Mary Wright is the appropriate person to walk me through this, could you please send me her phone number?

Thank you,

Nichole Noel
Administrative Judge
Defense Office of Hearings and Appeals
Fax: 703.696.1831

Privilege File149

# EXHIBIT "6"

| From: | Noel, Nichole Ms. DoD OGC |
| To: | Deborah Maddern |
| Cc: | James Pistorino; Greer, Leslie B CIV DHA CLAIMS (USA) |
| Subject: | RE: [Non-DoD Source] Tricare4Life Dispute for Implant |
| Date: | Friday, September 6, 2019 11:28:28 AM |

Mrs. Maddern:

Unfortunately, I am unable to offer any assistance with the Scripps Mercy billing issue. The collection issue between you and the hospital does not fall under my jurisdiction. Also, because I am not your lawyer, it would be inappropriate for me to offer any advice on how you should proceed. I plan to issue a decision in this case before the end of November, at the latest, given my current case load.

I am sorry that I could not be of more assistance to you.

Sincerely,

Nichole Noel
Administrative Judge
Defense Office of Hearings and Appeals
Fax: 703.696.1831

-----Original Message-----
From: Deborah Maddern <1█████████████████>
Sent: Friday, September 6, 2019 11:59 AM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Subject: [Non-DoD Source] Tricare4Life Dispute for Implant

Your Honor, this is in reference to the hearing on August 22, 2019 in San Diego.  We need some assistance with the letter we received in the mail right after our hearing.  We have been getting this bill for $4756.80 from the Scripps Mercy Surgery Center where Ronald went for his implant surgery, since early in 2018.  We were told by DHA that if we started paying on it, we might not get reimbursed.  So we decided to wait and kept on telling the Surgery Center not to send it to the collection agency. The Surgery Center kept on saying that Tricare4Life kept on denying it. We had started proceedings to get a hearing in Feb 2018, we did not realize it would take so long to get a hearing and we had no help at the time. We learned about having a lawyer from Parrish Law Office in April of 2019.  We called James Pistorino and he said to tell the collection agency this is a disputed insurance claim.  He told us this area was not his expertise, and that is why we are reaching out to you for some assistance.  Somehow he did not mention this at the hearing.  The copy of a couple of the bills should be in our file.

Your Honor, please acknowledge this and let us know what your decision is.

Thankyou

Ronald and Deborah Maddern

# EXHIBIT "7"

| | |
|---|---|
| **From:** | Greer, Leslie B CIV DHA CLAIMS (USA) |
| **To:** | "Noel, Nichole Ms. DoD OGC" |
| **Subject:** | RE: Notice of Hearing DHA Task No. 19-01 (UNCLASSIFIED) |
| **Date:** | Wednesday, August 7, 2019 2:26:00 PM |
| **Importance:** | Low |

CLASSIFICATION: UNCLASSIFIED

Confirming receipt. Thanks.

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC [mailto:noeln@osdgc.osd.mil]
Sent: Wednesday, August 7, 2019 2:26 PM
To: James Pistorino <james@dparrishlaw.com>; 'debbie@dparrishlaw.com' <debbie@dparrishlaw.com>; Greer, Leslie B CIV DHA CLAIMS (USA) <leslie.b.greer.civ@mail.mil>
Subject: Notice of Hearing DHA Task No. 19-01

All:

Please see the attached Notice of Hearing, containing the date, time, and location of the hearing. The notice also includes additional information pertinent to logistics and the submission of evidence. The DOHA Hearing Office will also issue this notice as required by office procedures. The purpose of this notice is to give the parties as much time as possible to comply with the evidentiary deadlines set forth in the notice.

Do not hesitate to contact me if you have any questions.

Nichole Noel
Administrative Judge
Defense Office of Hearings and Appeals
Fax: 703.696.1831

CLASSIFICATION: UNCLASSIFIED

# EXHIBIT "8"

**Dorgan, Glen (USACAS)**

| | |
|---|---|
| **From:** | James Pistorino <james@dparrishlaw.com> |
| **Sent:** | Friday, December 17, 2021 4:48 PM |
| **To:** | Dorgan, Glen (USACAS) |
| **Subject:** | [EXTERNAL] RE: Maddern APA Case |

Glenn,

Thank you for your note.

I believe that we already met and conferred on Monday.
I said that the materials were discoverable and that I wanted them.
You said that you disagreed.

I said that I would start drafting my papers and that if you sent me something to change the facts before I got on file, great.
If not, then you have to do what you have to do.
I am working on my papers now and expect them to be filed next week or at the latest before the Court's deadline.

I decline the offer to produce things "informally."
Frankly, I do not know anything your people could say or produce that would avoid the need for discovery.
The whole reason that ex parte communications are prohibited is to avoid the exact situation we are in right now.

The basis for my demand is that it is impossible for the series of events to have happened here without there being ex parte communications.
We know that Judge Noel engages in ex parte communications because she did so with me.
Further, the final decision itself is in bad faith and was apparently motivated by something other than the impartial and fair consideration of Mr. Maddern's claim.
That is why the decision only addresses one of two claims, is a joke substantively, and also issued when it did (to try and prevent a writ of mandamus from being issued against the Secretary).

When all of the phone records have been produced and these people testify under oath, then the Court will be in position to evaluate the evidence.
Nothing "informal" will change Plaintiff's position and Plaintiff will not agree to delay of any kind.

Totally separately, I hope you enjoy the holidays.

Regards,
James

---

**From:** Dorgan, Glen (USACAS) <Glen.Dorgan@usdoj.gov>
**Sent:** Friday, December 17, 2021 9:12 AM
**To:** James Pistorino <james@dparrishlaw.com>
**Subject:** Maddern APA Case

Mr. Pistorino,

Based on our conversations aimed at meeting and conferring regarding your demand for discovery, it's my understanding that the basis for your demand is your impression that Ms. Greer must have engaged in improper ex parte communications for her to be able to (1) represent, in her June 23, 2020 email (attached), that "Judge Noel issued her recommended decision within the 60 day window allowed by the Regulation;" and (2) represent, in her May 19, 2021 email (attached), that "A copy of the Agency's final decision shall be sent via USPS First Class mail today."

In an effort to meet and confer further regarding your discovery demand, I'm prepared to propose the following:

1. We will informally produce to you the emails to and from Ms. Greer that provide context for the statements summarized above;
2. In exchange you agree that our production does not in and of itself constitute a waiver of any applicable privilege, including the attorney-client privilege, the attorney work product doctrine, or the deliberative process privilege;
3. Additionally, in exchange, you agree to meet and confer with us further regarding your demand for discovery; and
4. You also agree to meet and confer with us regarding the scope of the administrative record, and specifically whether some or all of the emails we produce should be included in the administrative record.

I'm available today to discuss this proposal at your convenience.  Thank you,

**GLEN F. DORGAN**
**Assistant United States Attorney**
**Southern District of California**
**880 Front Street, Suite 6293**
**San Diego, CA  92101**

**Cell Phone:  (619) 384-2789**
**Fax:  (619) 546-7751**
glen.dorgan@usdoj.gov

# EXHIBIT "9"

**Greer, Leslie B CIV DHA CLAIMS (USA)**

| | |
|---|---|
| **From:** | Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil> |
| **Sent:** | Tuesday, February 4, 2020 12:10 PM |
| **To:** | Greer, Leslie B CIV DHA CLAIMS (USA) |
| **Subject:** | RE: Recommended Decision Task No. 19-01 (UNCLASSIFIED) |

Thank you. I just didn't want anything to get lost in the ether.

-----Original Message-----
From: Greer, Leslie B CIV DHA CLAIMS (USA) <leslie.b.greer.civ@mail.mil>
Sent: Tuesday, February 4, 2020 12:56 PM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Subject: RE: Recommended Decision Task No. 19-01 (UNCLASSIFIED)
Importance: Low

CLASSIFICATION: UNCLASSIFIED

Yes ma'am-- the weather took a turn for the worse in Colorado, and Ms. Wright was out for a few days. I will confirm she received everything.

Many thanks,

Leslie Greer

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC [mailto:noeln@osdgc.osd.mil]
Sent: Tuesday, February 4, 2020 8:39 AM
To: Greer, Leslie B CIV DHA CLAIMS (USA) <leslie.b.greer.civ@mail.mil>
Subject: Recommended Decision Task No. 19-01

Hi Leslie:

I called Mary on Friday and again yesterday, but have not received a response.. I also emailed a copy of the recommended decision to her. Is it possible for you to check in with Mary to make sure she received the electronic copy of the decision? The completed file was mailed back to DHA yesterday.

Thank you,

Nichole Noel
Administrative Judge
Defense Office of Hearings and Appeals
Fax: 703.696.1831

CAUTION: Information contained in this message may be protected by the attorney/client, attorney work product, deliberative process or other privileges.  Do not disseminate further without approval from the Office of the DOD General Counsel.  Please be advised that if you are not the intended recipient, you are prohibited from any further viewing of this e-mail and/or any attachment(s) or from making any use of this e-mail or attachment(s). If you believe

1

you have received this e-mail in error, please notify the sender immediately and permanently delete the e-mail, any attachment(s), and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachment(s).  Additionally, the Privacy Act applies to any personal information contained herein.

FOR OFFICIAL USE ONLY


CLASSIFICATION: UNCLASSIFIED

Privilege File151

# EXHIBIT "10"

| | |
|---|---|
| **From:** | Noel, Nichole Ms. DoD OGC |
| **To:** | Greer, Leslie B CIV DHA CONT LAW (USA) |
| **Subject:** | RE: Appeal of Ronald Maddern (UNCLASSIFIED//FOUO CLOSE HOLD) |
| **Date:** | Tuesday, May 18, 2021 1:13:22 PM |

Ms. Greer:

Thank you for your response. I will answer Mr. Pistorino's  email shortly.

Judge Noel

-----Original Message-----
From: Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>
Sent: Tuesday, May 18, 2021 2:44 PM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Subject: RE: Appeal of Ronald Maddern (UNCLASSIFIED//FOUO CLOSE HOLD)

CLASSIFICATION: UNCLASSIFIED//FOR OFFICIAL USE ONLY CLOSE HOLD

Judge Noel:

Hello and thank you for your message.

I was able to find out that the process stalled in our Falls Church HQ; we are expediting the process for the Director's signature, and hope this shall finally end this week, prior to Mr. Pistorino's deadline.

On a side note, it is clear to me counsel did not read the TRICARE regulation, and has accused me of ex parte communication, or at least knowing the outcome and deliberately keeping it from him. Our internal process was designed to keep me, as the hearing attorney, walled off from knowing the hearing officer's recommended decision for just such accusations. I have not responded to counsel's similarly-themed email.

My understanding was: (1) you sent Mary Wright the recommended decision in February 2020; (2) she forwarded it to another attorney outside of my office to draft the Director's concurrence within days of receiving it; (3) that draft was transmitted to Falls Church March 2020; and (4) COVID forced everyone home mid-March 2020, and action on this was missed in the initial turmoil of that office-home transition.

My attempts to get a status last June (2020) went unanswered until now that there is a "squeaky wheel" and threat of further legal proceedings.

My understanding is that my Headquarters will send the Agency's decision to counsel post haste.

I apologize for this still haunting you. I too want closure on this!

In the meantime, feel free to reach out if there is anything else relating to this case I can run down.

Many thanks,

Leslie Greer

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC [mailto:noeln@osdgc.osd.mil]
Sent: Tuesday, May 18, 2021 12:31 PM
To: Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>
Subject: FW: Appeal of Ronald Maddern (UNCLASSIFIED)

Ms. Greer:

I hope you are well and have gotten through the past year in good health. I received the following email from James Pistorino, counsel for Beneficiary Ronald Maddern (Task No. 19-01). Are you able to provide an update on the status of this case?

Thank you,

Nichole Noel
Administrative Judge
Defense Office of Hearings and Appeals
Fax: 703.696.1831

CAUTION: Information contained in this message may be protected by the  attorney/client, attorney work product, deliberative process or other privileges.  Do not disseminate further without approval from the Office of the DOD General Counsel.  Please be advised that if you are not the intended recipient, you are prohibited from any further viewing of this e-mail and/or  any attachment(s) or from making any use of this e-mail or attachment(s). If you believe you have received this e-mail in error, please notify the sender immediately and permanently delete the e-mail, any attachment(s), and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachment(s).  Additionally, the Privacy Act applies to any personal information contained herein.

FOR OFFICIAL USE ONLY

-----Original Message-----
From: James Pistorino <james@dparrishlaw.com>
Sent: Tuesday, May 11, 2021 2:33 PM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>
Cc: Debra Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] RE: Appeal of Ronald Maddern (UNCLASSIFIED)

Dear Judge Noel,

I am writing to follow up on this case.

As you know, on August 22, 2019, a hearing was held in this case.
Post-hearing briefing was completed by September 2019.
As of this date, some 19 months later, no decision has issued and the Maddern's continue to be dunned for charges for which they are not responsible.
If a decision has issued, but for some reason has not been communicated to either myself or the Madderns, please let me know when that occurred and provide a copy.

As I understand it, sometime around January 2020, a recommendation was forwarded to the Secretary and, apparently, Ms. Greer.
Please let me know if a copy of the recommendation was sent to Ms. Greer, and, if so, provide a copy to the Madderns.

Regards,
James Pistorino

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Sent: Tuesday, June 23, 2020 11:42 AM

To: Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>; James Pistorino
<james@dparrishlaw.com>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern (UNCLASSIFIED)

Ms. Greer:

Thank you for this update as well as providing this explanation of the post-hearing process.

Judge Noel

-----Original Message-----
From: Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>
Sent: Tuesday, June 23, 2020 2:40 PM
To: James Pistorino <james@dparrishlaw.com>; Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Thank you for your messages. And apologies for any misunderstanding or miscommunication. I have little visibility
on cases once the record closes, but am happy to continue to request status updates from my superiors.

Judge Noel issued her recommended decision within the 60 day window allowed by the Regulation. That
recommendation was received by the Agency, whose designee is, to my understanding, still working on it.

32 Code of Federal Regulations Part 199.10 outlines the Agency appeals process, and explains that the hearing
officer makes a recommendation to the Agency, and the Agency takes that recommendation under advisement
before issuing the final decision on the benefit-at-issue.

"At the conclusion of the hearing and after the record has been closed, the matter shall be taken under consideration
by the hearing officer. Within the time frames previously set forth in this Section, the hearing officer shall submit to
the Director, OCHAMPUS, or a designee, a written recommended decision containing a statement of findings and a
statement of reasons based on the evidence adduced at the hearing and otherwise included in the hearing record." 32
CFR Part 199.10(d)(12).

"The recommended decision shall be reviewed by the Director, OCHAMPUS, or a designee, who shall adopt or
reject the recommended decision or refer the recommended decision for review by the Assistant Secretary of
Defense (Health Affairs). The Director, OCHAMPUS, or designee, normally will take action with regard to the
recommended decision within 90 days of receipt of the recommended decision or receipt of the revised
recommended decision following a remand order to the Hearing Officer." 32 CFR Part 199.10(e)(1).

"If the Director, OCHAMPUS, or a designee, concurs in the recommended decision, no further agency action is
required and the recommended decision, as adopted by the Director, OCHAMPUS, is the final agency decision in
the appeal. In the case of rejection, the Director, OCHAMPUS, or a designee, shall state the reason for disagreement
with the recommended decision and the underlying facts supporting such disagreement. In these circumstances, the
Director, OCHAMPUS, or a designee, may have a final decision prepared based on the record, or may remand the
matter to the Hearing Officer for appropriate action. In the latter instance, the Hearing Officer shall take appropriate
action and submit a new recommended decision within 60 days of receipt of the remand order. The decision by the
Director, OCHAMPUS, or a designee, concerning a case arising under the procedures of this section, shall be the
final agency decision and the final decision shall be sent by certified mail to the appealing party or parties. A final
agency decision under paragraph (e)(1) of this section will not be relied on, used, or cited as precedent by the
Department of Defense in the administration of CHAMPUS." 32 C.F.R. Part 199.10(e)(1)(i).

As mentioned under previous email, I have yet to receive an update as to the status of the Agency's final decision. I
shall notify everyone on this email chain once I do receive a response.

Leslie Greer

-----Original Message-----
From: James Pistorino [mailto:james@dparrishlaw.com]
Sent: Tuesday, June 23, 2020 12:11 PM
To: Noel, Nichole L CIV (US) <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CONT LAW (USA)
<leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] RE: Appeal of Ronald Maddern (UNCLASSIFIED)

Dear Judge Noel,

I am not familiar with a process where a neutral adjudicating entity takes evidence from the parties, presumably
gauges the evidence/credibility, and then communicates its decision/recommendation to only one of the parties.  To
say the least, that idea seems problematic.

Please let me know when the decision/recommendation issued.

Regards,
James Pistorino

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Sent: Tuesday, June 23, 2020 8:57 AM
To: James Pistorino <james@dparrishlaw.com>; Greer, Leslie B CIV DHA CONT LAW (USA)
<leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern (UNCLASSIFIED)

Mr. Pistorino:

I issued a recommendation to TMA earlier this year; however, I am not the release authority. I believe that authority
lies with TMA.

Judge Noel

-----Original Message-----
From: James Pistorino <james@dparrishlaw.com>
Sent: Monday, June 22, 2020 4:39 PM
To: Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>; Noel, Nichole Ms. DoD OGC
<noeln@osdgc.osd.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] RE: Appeal of Ronald Maddern (UNCLASSIFIED)

It sounds like some sort of decision/recommendation has issued.
Please let us know when that occurred and provide a copy.

Regards,
James Pistorino

-----Original Message-----
From: Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>
Sent: Monday, June 22, 2020 1:30 PM
To: James Pistorino <james@dparrishlaw.com>; Noel, Nichole L CIV (US) <noeln@osdgc.osd.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Apologies for the late response.

The Agency's decision has not yet issued. I have endeavored to get a response from our Headquarters, who issues the final decision. I did not hear back by COB today. When I receive a status update, I shall email all involved.

Leslie Greer

-----Original Message-----
From: James Pistorino [mailto:james@dparrishlaw.com]
Sent: Monday, June 22, 2020 2:20 PM
To: Noel, Nichole L CIV (US) <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CONT LAW (USA) <leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] RE: Appeal of Ronald Maddern

Dear Judge Noel,

Please let me know If a decision/recommendation of any kind has been issued.
If a decision/recommendation has issued, please let us have a copy.

Regards,
James Pistorino

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Sent: Monday, June 22, 2020 10:57 AM
To: James Pistorino <james@dparrishlaw.com>; Greer, Leslie B CIV DHA CLAIMS (USA) <leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern

Ms. Greer:

Are you able to provide us an update as to status of the claim in the TMA organization?

Thank you,

Nichole Noel
Administrative Judge
Defense Office of Hearings and Appeals

-----Original Message-----
From: James Pistorino <james@dparrishlaw.com>
Sent: Thursday, June 18, 2020 12:37 PM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CLAIMS (USA) <leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] RE: Appeal of Ronald Maddern

Judge Noel,

Just following up here to make sure that this does not fall through the cracks.

Regards,
James Pistorino

-----Original Message-----
From: James Pistorino
Sent: Monday, January 13, 2020 10:19 AM
To: 'Noel, Nichole Ms. DoD OGC' <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CLAIMS (USA)
<leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern

Dear Judge Noel,

Great.  Thank you for your response.  We will keep an eye out for it.

Regards,
James Pistorino

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Sent: Monday, January 13, 2020 9:44 AM
To: James Pistorino <james@dparrishlaw.com>; Greer, Leslie B CIV DHA CLAIMS (USA)
<leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern

Mr. Pistorino:

I will issue this decision before by the end of the month.

Regards,

Nichole Noel

-----Original Message-----
From: James Pistorino <james@dparrishlaw.com>
Sent: Friday, January 10, 2020 7:25 PM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CLAIMS (USA)
<leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] RE: Appeal of Ronald Maddern

Dear Judge Noel,

I thought I would follow-up here and make sure that there was not a miscommunication.

I do not believe that we have received a decision in Mr. Maddern's case and I just wanted to make sure that it was
not misdirected.

Can you let me know?

Regards,
James Pistorino

-----Original Message-----
From: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>
Sent: Monday, September 16, 2019 12:32 PM
To: James Pistorino <james@dparrishlaw.com>; Greer, Leslie B CIV DHA CLAIMS (USA)
<leslie.b.greer.civ@mail.mil>

Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: RE: Appeal of Ronald Maddern

All:

I have received the Beneficiary's closing statement. The record in this case is closed.

Thank you,

Judge Noel

-----Original Message-----
From: James Pistorino <james@dparrishlaw.com>
Sent: Friday, September 13, 2019 5:15 PM
To: Noel, Nichole Ms. DoD OGC <noeln@osdgc.osd.mil>; Greer, Leslie B CIV DHA CLAIMS (USA) <leslie.b.greer.civ@mail.mil>
Cc: Debbie Parrish <debbie@dparrishlaw.com>
Subject: [Non-DoD Source] Appeal of Ronald Maddern

Dear Judge Noel,


Attached, please find Mr. Maddern's closing statement.

Please let me know if there are any questions or comments or if you have any difficulty retrieving it.



Regards,

James Pistorino


Parrish Law Office

(650) 400-0043


CLASSIFICATION: UNCLASSIFIED
CLASSIFICATION: UNCLASSIFIED

CLASSIFICATION: UNCLASSIFIED//FOR OFFICIAL USE ONLY CLOSE HOLD