RANDY S. GROSSMAN
United States Attorney
GLEN F. DORGAN (SBN 160502)
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7665
Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

RONALD MADDERN,

    Plaintiff,

v.

LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,

    Defendants.

Case No. 3:21-cv-01298-MMA-BLM

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO DISCOVERY ORDER**

# <u>TABLE OF CONTENTS</u>

I.      LEGAL STANDARD ...................................................................................... 1

II.     PLAINTIFF'S OBJECTIONS ARE UNTIMELY ...................................... 1

III.    PLAINTIFF'S OBJECTIONS ALSO FAIL ON THE MERITS .............. 2

  A. Factual Background ...................................................................................... 3

      1.  Overview of Plaintiff's Discovery Motion ........................................... 4

      2.  Summary of the Magistrate Judge's Order ........................................ 5

  B. Plaintiff's Objections Must Be Overruled ............................................... 6

      1.  The Due Process Objection Should Be Overruled ............................. 6

      2.  The Objection Regarding Alleged Improper *Ex Parte* Contacts
          Should Be Overruled ........................................................................... 7

      3.  The Objection Regarding the Alleged "Groundless" Basis for the
          Recommended Decision and Final Decision Should Be Overruled ......... 10

      4.  The Objection Regarding the Case Citations Deemed "Inapplicable"
          Should Be Overruled .......................................................................... 10

      5.  The Objection Premised on *Greene* Should Be Overruled ................ 11

      6.  The Objection Regarding the Scope of Discovery Should
          Be Overruled ....................................................................................... 12

IV.     CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

*Ali v. Pompeo*,
2018 WL 2058152 (E.D.N.Y. May 2, 2018) ................................................... 12

*Almaklani v. Trump*,
444 F. Supp. 3d 425 (E.D.N.Y. 2020) ..................................................... 5, 7

*Austin v. Brazelton*,
2016 WL 3952131 (S.D. Cal. July 22, 2016) ............................................... 6

*Bar MK Ranches v. Yuetter*,
994 F.2d 735 (10th Cir. 1993) ............................................................. 10

*Borden v. Sec'y of Healh and Human Servs.*,
836 F.2d 4 (1st Cir. 1987) ................................................................. 6

*Brown v. Sullivan*,
916 F.2d 492 (9th Cir. 1990) ............................................................. 10

*Center for Biological Diversity v. Federal Highway Admin.*,
290 F. Supp. 2d 1175 (S.D. Cal. 2003) .................................................... 2

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019) ..................................................................... 5

*Greene v. Babbit*,
943 F. Supp. 1278 (W.D. Wash. 1996) ................................................ 11, 12

*Greenhow v. Sec'y of HHS*,
863 F.2d 633 (9th Cir. 1988) .............................................................. 6

*Haines v. Liggett Group, Inc.*,
975 F.2d 81 (3d Cir. 1992) ................................................................. 2

*Ibrahim v. U.S.D.H.S.*,
912 F.3d 1147 (9th Cir. 2019) ........................................................... 10

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*,
58 F. Supp. 3d 1191 (D.N.M. 2014) ....................................................... 7

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*,
305 F.R.D. 256 (D.N.M. 2015) ........................................................... 12

*La Jolla Spa MD, Inc. v. Avidas Pharmaceuticals, LLC*,
3:17-cv-01124-MMA-WVG, 2019 WL 5088559 (S.D. Cal. October 10, 2019) ............ 1, 2

*Madison Servs., Inc. v. United States*,
92 Fed. Cl. 120 (2010) .................................................................. 12

*Mayor and City Council of Baltimore v. Trump*,
429 F. Supp. 3d 128 (D. Md. 2019) ........................................................ 5

*Moralez v. Perdue*,
2017 WL 2264855 (E.D. Cal. May 24, 2017) ...................................................... 5

*National Ass'n of Psychiatric Treatment Centers for Children v. Mendez*,
857 F. Supp. 85 (D.D.C. 1994) ................................................................................ 7

*Raz Inland Navigation Co., Inc. v. I.C.C.*,
625 F.2d 260 (9th Cir. 1980) .................................................................................... 5

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*,
499 F.3d 1008 (9th Cir. 2007) .................................................................................. 4

*Rodriguez v. U.S.*,
542 F.3d 704 (9th Cir. 2008) .................................................................................. 10

*Salgado-Candelario v. Ericsson Caribbean, Inc.*,
614 F. Supp. 2d 151 (D.P.R. 2008) .......................................................................... 6

*Simpspon v. Lear Astronics Corp.*,
77 F.3d 1170 (9th Cir. 1996) .................................................................................... 2

*Waterfall Homeowners Ass'n v. Viega, Inc.*,
283 F.R.D. 571 (D. Nev. 2012) ................................................................................ 2

*Weeks v. Samsung Heavy Indus. Co., Ltd.*,
126 F.3d 926 (7th Cir. 1997) .................................................................................... 2

**STATUTES**

5 U.S.C. § 551 .......................................................................................................... 5

5 U.S.C. § 553 .......................................................................................................... 9

5 U.S.C. § 554 .......................................................................................................... 7

5 U.S.C. § 556 .......................................................................................................... 9

5 U.S.C. § 557 ...................................................................................................... 5, 9

10 U.S.C. § 1071 ...................................................................................................... 7

28 U.S.C. § 636 ................................................................................................. 1, 2, 6

32 C.F.R. § 199.10 ................................................................................................ 3, 9

Fed. R. Civ. P. 5 ...................................................................................................... 1

Fed. R. Civ. P. 6 ...................................................................................................... 1

Fed. R. Civ. P. 72 ................................................................................................. 1, 2

Defendant Lloyd Austin, Secretary of the United States Department of Defense ("Defendant"), respectfully submits the following opposition to Plaintiff's objections to the Order [ECF #23] entered by Magistrate Judge Barbara L. Major denying Plaintiff's request to conduct discovery in this Administrative Procedures Act case. As explained below, the Court should overrule Plaintiff's objections as untimely. Alternatively, the Court should overrule the objections because Plaintiff has not demonstrated that the Order is clearly erroneous or contrary to law.

## I.   LEGAL STANDARD

A party may object to a non-dispositive pretrial order of a magistrate judge *within fourteen days* after service of the order. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). The magistrate judge's order will be upheld unless "it has been shown that the magistrate [judge]'s order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

## II.   PLAINTIFF'S OBJECTIONS ARE UNTIMELY

On January 28, 2022, Magistrate Judge Major filed, and the parties were served with,[1] an Order denying Plaintiff's request to conduct discovery in this action. *See* Order [ECF #23]. Plaintiff then had fourteen days to file any objections. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy"); *see also* 28 U.S.C. § 636(b)(1) (establishing an identical fourteen-day deadline for filing objections to a magistrate judge's order). Plaintiff's deadline for filing timely objections, therefore, was February 11, 2022.[2] Because Plaintiff's objections were filed on February 14, 2022, *see* Objections [ECF #25], his objections are untimely. *See La Jolla Spa*

---

[1] "Whenever a document is electronically filed . . ., the CM/ECF system will generate a 'Notice of Electronic Filing' (NEF) to . . . any registered user in the case" and "[t]he NEF will constitute service of the document for purposes of the Federal Rules of Civil . . . Procedure." So. Dist. Cal. Electronic Case Filing Admin. Policies and Procedures, § 2.d.2.

[2] In computing time, the Court must "(A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period [unless the last day is a Saturday, Sunday, or holiday]." Fed. R. Civ. P. 6(a)(1). Notably, unlike service completed by mail, service through the ECF system does *not* extend any associated deadlines. *See* Fed. R. Civ. P. 5(E) ("service [through the ECF system] is complete upon filing"); 6(d) (allowing additional time only for service under Rule 5(C), (D), or (F)).

1

*MD, Inc. v. Avidas Pharmaceuticals, LLC*, 3:17-cv-01124-MMA-WVG, 2019 WL 5088559, *3 (S.D. Cal. October 10, 2019) ("[B]ecause the objection was due Friday, September 13, 2019, and Defense Counsel filed her objection on Monday, September 16, 2019, Defense Counsel's objection is untimely").

Rule 72 was drafted to "assure" that "objections to magistrate's orders that are not timely made shall not be considered." Fed. R. Civ. P. Advisory Comm. Notes (1991 Amendment); *see* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.") Accordingly, by filing his objections late, Plaintiff "forfeited the availability of any relief under Rule 72(a)." *La Jolla Spa MD, Inc.*, 2019 WL 5088559 at *3; *see Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996). The Court, therefore, should decline to rule on the merits of Plaintiff's objections.

## III.   PLAINTIFF'S OBJECTIONS ALSO FAIL ON THE MERITS

Plaintiff bears the burden of showing that Magistrate Judge Major's Order was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard applies to the magistrate judge's factual determinations and discretionary decisions and will be overturned "only if the district court is left with the definite and firm conviction that a mistake has been made." *Center for Biological Diversity v. Federal Highway Admin.*, 290 F. Supp. 2d 1175, 1199 (S.D. Cal. 2003), quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

The "contrary to law" standard, on the other hand, applies to a magistrate judge's purely legal determinations. *See, e.g., Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 575 (D. Nev. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff has failed to meet his burden to demonstrate that any factual conclusions reached by Magistrate Judge Major were "clearly erroneous" or that any legal conclusions were "contrary to law." Plaintiff's objections, therefore, must be overruled.

///

### A.   **Factual Background**

Plaintiff is a retired U.S. Army service member and a beneficiary under TRICARE for Life ("TRICARE") and Medicare. In 2017, Plaintiff underwent two surgical procedures (one in August 2017 and a second in November 2017) to implant Vertiflex Superion devices into his vertebrae in an effort to treat his lumber spinal stenosis. Prior to undergoing surgery, neither Plaintiff nor his health care provider requested approval from TRICARE, and post-surgery he submitted claims for coverage of the August 2017 procedure.[3] After TRICARE denied the claim, Plaintiff ultimately requested an administrative hearing to be conducted pursuant to 32 C.F.R. § 199.10(d).

Pursuant to the governing regulations, a hearing was conducted on August 22, 2019, before hearing officer Nicole Noel.[4] Plaintiff appeared at the hearing with counsel, and the agency was represented through its advocate, attorney Leslie Greer. In January 2020, following post-hearing briefing, Ms. Noel issued her recommended decision to the Chief, TRICARE Health Plan (the final agency decision maker). In her recommended decision, Ms. Noel found that Plaintiff failed to meet his burden to rebut the presumption created by the agency's specific exclusion of the procedure at issue. Then, on May 18, 2021, the agency issued its final decision accepting the recommended decision and denying the appeal.

In this action, Plaintiff seeks relief under the Administrative Procedure Act ("APA") based on allegations that the agency's final decision (1) "addressed only . . . Mr. Maddern's claim for the August 10, 2017, treatment and did not address Mr. Maddern's claim for the November 9, 2017 treatment;" (2) "confused the X-STOP product (manufactured by

---

[3] Plaintiff has never formally presented his bill for the November 2017 procedure to TRICARE to seek coverage.

[4] Plaintiff often refers to Ms. Noel as an "Administrative Law Judge." This reference is incorrect, as Ms. Noel is employed by the Defense Office of Hearings and Appeals ("DOHA"), which provides hearing officers under 32 C.F.R. § 199.10(d)(6) pursuant to a memorandum of agreement between DOHA and DHA. In this capacity, Ms. Noel does not sit as an administrative judge, but as a hearing officer, and only conducts an evidentiary hearing and issues a recommended decision. *See* 32 C.F.R. § 199.10(d)(6), (11), and (12).

1  another company) with the Superion product at issue," and (3) "contended that the Superion
2  product was 'unproven.'"  *See* Complaint [ECF #1], ¶¶ 58-60.[5]

3          **1.      Overview of Plaintiff's Discovery Motion**

4          On December 29, 2021, Plaintiff filed a motion seeking leave to engage in discovery
5  in this APA case. Motion [ECF #9], 2:3-6. Recognizing the rule that a court's review of an
6  agency's decision under the APA is "ordinarily limited" to the administrative record, *see*
7  Motion [ECF #9], 9:2-4, Plaintiff sought discovery under an exception to the rule that
8  requires a "strong showing [of] agency bad faith." *Id.*, 9:5-15, citing *inter alia Ranchers*
9  *Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1008, 1117
10 (9th Cir. 2007). However, Plaintiff misstated the standard in his motion, arguing instead
11 that discovery should be permitted if there is "a reasonable basis to believe" that bad faith
12 has occurred. *Id.*, 9:24-27.

13         Next, Plaintiff attempted to establish bad faith in two respects. First, he argued that
14 Ms. Greer, Ms. Noel, and the final decision maker, Dr. Yale, all engaged in improper *ex*
15 *parte* communications. *Id.*, 13:9-15. Second, he repeated the core allegations of his
16 complaint concerning the merits of his APA claim:

17              Noel's recommendation, which failed to address any of the evidence put
18              on by Plaintiff, was concealed from Plaintiff for nearly two years until after
                the filing of this suit . . . [and] is founded on an alleged administrative
                "defect" and "loophole" and the idea that the X-STOP product and the
19              Superion product are the same devices. Dr. Yale's final decision suffers
                from the same defects but also adds the failure to address one of the two
20              claims in this case. If these decisions do not constitute "bad faith" . . .,
                Plaintiff's counsel does not know what would.
21

22 *Id.*, 12:13-22. On this basis, Plaintiff sought leave to propound written discovery and
23 conduct depositions of Ms. Greer, Ms. Noel, Dr. Yale, and "anyone else Ms. Greer/ALJ
24 Noel had communications with about this matter." *Id.*, 13:26-14:7.

25 ///

26

27 _____
   [5] Plaintiff filed his motion for discovery before the Court granted leave to amend his
28 complaint. Plaintiff has since filed a First Amended Complaint which repeats these core
   allegations.  *See* FAC [ECF #21], ¶¶ 58-60.

## 2. Summary of the Magistrate Judge's Order

In denying Plaintiff's request for discovery, Magistrate Judge Major first noted Plaintiff's "repeated[] uses of an improper standard when arguing for the opportunity to conduct discovery." Order [ECF #23], 6:11-16. "The correct standard," Magistrate Judge Major explained, "is whether Plaintiff has produced evidence demonstrating a 'strong showing' of bad faith or improper behavior." *Id.*, 6:17-20, citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573-2574 (2019). Magistrate Judge Major emphasized this well-settled standard requires "independent evidence of improper conduct," not "mere allegations of bad faith." *Id.*, 5:2-14, citing, *inter alia*, *Almaklani v. Trump*, 444 F. Supp. 3d 425, 431 (E.D.N.Y. 2020), *Mayor and City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 138 (D. Md. 2019), and *Moralez v. Perdue*, 2017 WL 2264855, *2 (E.D. Cal. May 24, 2017).

Second, Magistrate Judge Major examined the APA's definition of improper *ex parte* communications:

> [T]he APA states that an *ex parte* communication is improper if it is "relevant to the merits of the proceeding." 5 U.S.C. § 557(d)(1). An *ex parte* communication that requests a status report or addresses other procedural matters that do not affect the way a case is decided is not improper. *See* 5 U.S.C. § 551 (prohibition does "not include requests for status reports on any matter or proceeding covered by this subchapter"); *see also Raz Inland Navigation Co., Inc. v. I.C.C.*, 625 F.2d 260 (9th Cir. 1980) ("Congress recognized, however, that not all communications between agency decision-makers and interested parties would contravene the purposes of the proscription of *ex parte* communications. Excluded from the proscribed communications were those contacts that do not affect the way a given case is decided.").

Order [ECF #23], 6:24-7:5.

Based on this definition, a review of Plaintiff's allegations, *and* a review of the *ex parte* email contacts produced by Defendant in opposition to the motion, Magistrate Judge Major concluded that there is *no evidence* that Ms. Noel or any other agency personnel engaged in improper *ex parte* communications. *Id.*, 7:6-8:8. All that remained, therefore, was Plaintiff's "conclusory argument that because there were *ex parte* communications regarding the status of the case and other procedural matters, there must have been improper

*ex parte* communications relevant to the merits of the proceeding." *Id.*, 7:8-10. This, Magistrate Judge Major concluded, was "insufficient" to meet Plaintiff's burden. *Id.*, 7:10-8:1.

Next, Magistrate Judge Major rejected Plaintiff's contention that the alleged "inadequacy" of the recommended decision and final decision, as well as any associated delays in producing those decisions, somehow evidenced bad faith. Magistrate Judge Major properly characterized Plaintiff's allegations as a recitation of the core allegations of the complaint and noted that "all of the evidence he needs to make his arguments is contained in the Administrative Record." *Id.* 8:12-24.

Finally, Magistrate Judge Major concluded that, even had Plaintiff made a significant showing of bad faith, Plaintiff's proposed discovery was "extremely overbroad and unwarranted." *Id.*, 8:25-9:5.

## B.   Plaintiff's Objections Must Be Overruled.

Plaintiff presents six separate objections, none of which satisfy his burden in demonstrating that the Order was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

### 1.   The Due Process Objection Should Be Overruled.

First, Plaintiff argues that he is entitled to discovery to support his "Cause of Action VIII (violation of the Due Process clause of the United States Constitution)" because the claim "does not arise under the APA." Objections [ECF #25], 4:1-8. Plaintiff, however, is precluded from asserting this objection, because he never raised this argument in his briefing on the underlying discovery motion. "A party objecting to a report and recommendation is 'not entitled to a *de novo* review of an argument never raised' before the magistrate judge." *Salgado–Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 164 (D.P.R. 2008), quoting *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) ("*Borden*"); *see also Austin v. Brazelton*, 2016 WL 3952131, at *4 (S.D. Cal. July 22, 2016), citing *Greenhow v. Sec'y of HHS*, 863 F.2d 633, 638-39 (9th Cir. 1988) and *Borden*). The Court, therefore, should deny this objection on this basis alone.

Additionally, Plaintiff offers no legal support for his bold theory that discovery in an APA case is always permitted if a separate constitutional claim is pled. Indeed, such an argument is contrary to the prevailing law in APA cases. *See, e.g., Almaklani v. Trump*, 444 F. Supp. 3d 425, 434 (E.D.N.Y. 2020) ("[T]o allow broad ranging discovery . . . beyond the administrative record in every case where a plaintiff alleges a constitutional claim would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record"); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*, 58 F. Supp. 3d 1191, 1238-41 (D.N.M. 2014) ("[T]o hold otherwise . . . would be to incentivize every unsuccessful party to agency action to allege bad faith, retaliatory animus, and constitutional violations to trade the APA's restrictive procedures for the more evenhanded ones of the Federal Rules of Civil Procedure"). The Court, therefore, should overrule Plaintiff's new and novel due process objections.

## 2.      The Objection Regarding Alleged Improper *Ex Parte* Contacts Should Be Overruled.

Plaintiff's second objection focuses on allegations of improper *ex parte* contacts. Objections [ECF #25], 4:9-23. In presenting the objection, Plaintiff does not quarrel with the legal definition of an improper *ex parte* contact applied by Magistrate Judge Major. Nevertheless, Plaintiff repeats his contention that Ms. Greer and Ms. Noel engaged in improper *ex parte* contacts in violation of 5 U.S.C. § 554(d)(1)-(2).[6] Objections [ECF #25], 4:9-14.

Here, Defendant produced all emails evidencing *ex parte* communications between Ms. Greer and Ms. Noel. *See* Emails, Ex. "7" to Dorgan Decl. [ECF #14-1] (Ms. Greer's

---

[6] Section 554(d) prohibits a hearing officer from consulting with another individual regarding "a fact in issue," and it further prohibits agency counsel from "advis[ing] in the decision [or] recommended decision." Section 554 only applies in the case "of adjudication required by statute." *See* 5 U.S.C. § 554(a). Because the TRICARE statute, 10 U.S.C. §§ 1071 *et seq.*, "sets forth no requirement for formal adjudication," *National Ass'n of Psychiatric Treatment Centers for Children v. Mendez*, 857 F. Supp. 85, 95 (D.D.C. 1994), Section 554 is inapplicable. However, this distinction is not critical here, because, as set forth herein, Plaintiff cannot show any evidence that Ms. Greer participated in drafting either the recommended decision or the final decision.

August 7, 2019 email to Ms. Noel confirming receipt of a hearing notice); *id*., Ex. "5" (Ms. Noel's January 1, 2020 email to Ms. Greer confirming completion of the recommended decision and requesting contact information for "the appropriate person" for processing); *id*., Ex. "9" (emails between Ms. Greer and Ms. Noel on February 4, 2020, in which Ms. Noel requests confirmation that the appropriate agency contact received the recommended decision); *id.*, Ex. "10" (emails between Ms. Greer and Ms. Noel on May 18, 2021, in which Ms. Noel requests that Ms. Greer provide a status update to Plaintiff's counsel, *see* ECF p. 42, Ms. Greer responds that a final decision is forthcoming, *see* ECF p. 41, and Ms. Noel thanks her for her response, *see* ECF p. 41). Based on this record, Magistrate Judge Major noted, "the Court has reviewed the *ex parte* communications that have been provided to the Court and finds that they are not improper *ex parte* communications concerning the merits of the underlying decision." Order [ECF #23], 8:6-8.

In response to this finding, Plaintiff resorts to the same conclusory argument raised in his motion that Ms. Greer somehow must have been involved in drafting the recommended decision or the final decision. *See* Objections [ECF #25], 4:11-14 ("The . . . email traffic between Ms. Greer and ALJ [sic] Noel reveals, at least, Ms. Greer's 'participation' in Dr. Yale's decision"). For emphasis, Plaintiff highlights Ms. Greer's statement to Ms. Noel that "*we* are expediting the process for the Director's signature." *Id*., 4:13-14, quoting Ex. "10" to Dorgan Decl. [ECF #14-1], ECF p. 41. Plaintiff's reading of the email, however, ignores the context.

Ms. Greer was asked to provide a status update regarding the final decision. *See* Ex. "10" to Dorgan Decl. [ECF #14-1], ECF p. 42. Her response reveals that she had been uninvolved with the case for nearly a year prior to the request. *See id.*, ECF p. 41 ("My attempts to get a status last June (2020) went unanswered"). When Ms. Noel requested an update, Ms. Greer merely inquired internally regarding the status. *Id.* ("I was able to find out the process stalled in our Falls Church HQ"); *see also id*. ("COVID forced everyone home mid-March 2020, and action on this was missed in the initial turmoil of that office-

///

1    home transition"). And, Ms. Greer learned from her inquiry that "Headquarters will send

2    the Agency's decision to counsel post haste." *Id.*

3         Against this backdrop, Plaintiff italicizes the word "we" in Ms. Greer's statement—

4    "*we* are expediting the process for the Director's signature"—as if this single word

5    constitutes an admission that Ms. Greer played a substantive role in drafting the final

6    decision. This contention is absurd in context; clearly, based on the email, the final decision

7    was drafted at "Headquarters," and Ms. Greer's use of the word "we" was merely a

8    reference to the agency's effort to expedite its delivery to the parties. To argue, as Plaintiff

9    does, that Ms. Greer advised anyone in drafting the final decision in violation of Section

10   554 is to engage in nothing more than "speculation and supposition." *See* Order [ECF #23],

11   21-23. Magistrate Judge Major's rejection of Plaintiff's allegations of improper *ex parte*

12   contacts, therefore, was sound, and Plaintiff's objections must be overruled.[7]

13   ///

14   ///

15

16

17   ─────────────────
     [7] Plaintiff also theorizes, without explanation or analysis, that the emails reveal "a
     coordinated effort between Ms. Greer and ALJ [sic] Noel to continue to conceal the date a
     recommended decision issued and the fact of *ex parte* contacts from Plaintiff's counsel."
18   Objections [ECF #25], 3:8-11. Yet, the emails only support the opposite conclusion. The
     first email at issue, dated January 31, 2020, confirms that Ms. Noel had already completed
19   the recommended decision when she asked for the contact for the individual within the
     agency responsible for processing the decision. *See* Ex. "5" to Dorgan Decl. [ECF #14-1],
20   ECF p. 29. Later, in an email to both Ms. Noel and Plaintiff's counsel, Ms. Greer stated that
     she has "little visibility on cases once the record closes," and she cited the governing
21   regulation, 32 C.F.R. § 199.10, that directs the hearing officer to present the recommended
     decision *only* to the final decision maker. *See* Ex. "10" to Dorgan Decl. [ECF #14-1], ECF
22   p. 43. Finally, in an email to Ms. Noel, Ms. Greer explained that the agency's "internal
     process was designed to keep [her], as the hearing attorney, walled off from knowing the
23   hearing officer's recommended decision." *Id.*, ECF p. 41. Clearly, therefore, Ms. Greer
     played no role in the preparation of the recommended decision. Moreover, it was entirely
24   appropriate that the recommended decision was provided only to the agency, as the
     regulations directed. Plaintiff's allegation in his First Amended Complaint that the agency
25   was required to provide him a copy of the recommended decision, *see* FAC [ECF #21], ¶
     85, will ultimately fail, because the contention is premised on 5 U.S.C. § 557(c). Section
26   557 only applies "when a hearing is required to be conducted in accordance with section
     556," which in turn only applies to hearings "required by section 553 or 554." Section 553
27   concerns rule making and is inapplicable here. And, as explained above in footnote 6,
     Section 554 only applies in the case "of adjudication required by statute," and TRICARE's
28   governing statute does not require any formal adjudication.

3. **The Objection Regarding the Alleged "Groundless" Basis for the Recommended Decision and Final Decision Should Be Overruled**.

Plaintiff's third objection is based on allegations that Ms. Noel's recommended decision and the agency's final decision are "groundless" and "frivolous," thereby evidencing "bad faith." Objections [ECF #25], 4:26-5:21, 6:11-23. In an effort to support this contention, Plaintiff argues that the TRICARE policy manual required coverage for the procedure at issue, *id*., 4:26-5:5; that there is no agency exclusion of the procedure, *id*., 5:5-15; and that the agency confused the medical product at issue with a separate product called "the X-STOP," which is excluded from coverage, *id*., 5:16-17.

Defendant intends to rebut these contentions when this case is determined on the merits. But even assuming these allegations are true, all of the evidence necessary to resolve these claims is contained within the administrative record, and that record is "entitled to a presumption of administrative regularity." *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir 1993). Plaintiff cannot rebut this presumption by simply recharacterizing his allegations of "arbitrary and capricious" decision-making as "bad faith." If that were the case, *every* APA case would be subject to discovery. Accordingly, Magistrate Judge Major was correct in concluding that Plaintiff's reliance on the core allegations of his APA case does not warrant discovery, and the Court should overrule this objection.

4. **The Objection Regarding the Case Citations Deemed "Inapplicable" Should Be Overruled**.

Plaintiff's fourth objection takes issue with Magistrate Judge Major's conclusion that *Ibrahim v. U.S.D.H.S.*, 912 F.3d 1147 (9th Cir. 2019), *Brown v. Sullivan*, 916 F.2d 492 (9th Cir. 1990), and *Rodriguez v. U.S.*, 542 F.3d 704 (9th Cir. 2008) are "inapplicable." Objections [ECF #25], 5:24-6:6; *see* Order [ECF #23], 8:17-19. Yet, none of these cases address "bad faith" in the context of a request for discovery in an APA case; instead, the cases discuss "bad faith" only in the context of an attorney fee award under the Equal Access to Justice Act, 28 U.S.C. § 2412. *Ibrahim*, 912 F3d at 1165; *Brown*, 916 F.2d at 493, 495; *Rodriguez*, 542 F.3d at 709. Plaintiff's contention that these cases "articulate[]"

the Ninth Circuit's "standards" for resolving a discovery request in an APA case, therefore, is entirely misplaced. *See* Objections [ECF #25], 6:3-6.

Moreover, context is once again important in evaluating Plaintiff's argument. Magistrate Judge Major considered, then rejected, Plaintiff's request "that the undersigned judge make a determination of the merits of his case prior to the filing of any dispositive motion and/or to permit him to conduct discovery based upon the mere fact that he has made the allegations." Order [ECF #23], 14-19. It was in this context that Magistrate Judge Major dismissed the cases as "inapplicable," and concluded that "Plaintiff has not provided any law to support this request." *Id*. Given this context—and the distinguishable nature of the cases at issue—Magistrate Judge Major's conclusions are sound, and the Court should overrule this objection.

### 5.   The Objection Premised on *Greene* Should Be Overruled.

Plaintiff's fifth objection relies on *Greene v. Babbit*, 943 F. Supp. 1278 (W.D. Wash. 1996).  Objections [ECF #25], 6:24-7:21. In *Greene*, the court granted APA relief based on undisputed evidence that the Bureau of Indian Affairs attorney assigned as the agency's advocate in the underlying administrative proceedings "had an *ex parte* meeting with [the final decision maker] for the purpose of attempting to persuade the Assistant Secretary to reject the Administrative Law Judge's recommendation of [the Samish Indian Tribe's] federal recognition." *Id*. at 1282-83. The closed-door lobbying by the attorney was so "fundamentally unfair to the Samish" that the court held the agency attorney in contempt. *Id*. at 1288-89.

Notably, *Greene* does not address the right to discovery in the context of an APA case. Yet, Plaintiff cites *Greene* for the proposition that Magistrate Judge Major misapplied the standard in this case and should have permitted discovery based only on Plaintiff's allegations of bad faith. Objections [ECF #25], 7:19-21 ("Applying the Magistrate's reasoning, the misconduct in *Greene* would never have been discovered"). Indeed, Plaintiff admits that he does not have evidence of bad faith and is instead relying on mere allegations. ///

1  *Id.*, 7:18-19 ("Whether this case will represent a situation similar to *Greene* will be known

2  *after* discovery, not *before*") (emphasis in original).

3      Plaintiff's argument betrays a misunderstanding of the appropriate standard to be

4  applied in determining when discovery is warranted. "[A]llegations of bad faith must be

5  based on hard facts." *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 (2010)

6  (internal quotations omitted). Because a "strong showing" requires affirmative evidence, it

7  is an extremely difficult burden to meet. But, as courts have noted, "that is the point" in an

8  APA action:

9
10      [T]he APA contemplates that discovery should be a rarity, not the rule.
        "The Court is aware that such evidence is hard to develop, and it will not
11      be available in many cases in which bad faith exists. It could exist,
        however, and plaintiffs will come across it in some cases. It would likely
12      take either an improvidently considered public statement by [a
        decisionmaker], or a whistleblower from within [the agency] coming
13      forward and testifying . . . [about the] bad faith. Even absent such a
        showing, the Plaintiffs may still attack [the agency's decisionmaking], but
14      must do so within the procedural confines of the APA, which includes the
        administrative-record rule."

15  *Ali v. Pompeo*, 2018 WL 2058152, *6 n.5 (E.D.N.Y. May 2, 2018), quoting *Jarita Mesa*

16  *Livestock Grazing Ass'n v. U.S. Forest Service*, 305 F.R.D. 256, 294 n.16 (D.N.M. 2014).

17      In denying Plaintiff's motion for discovery, Magistrate Judge Major properly

18  distinguished *Greene* on the basis that Plaintiff has failed to produce any evidence of

19  improper *ex parte* communications, "incriminating conduct," or "improper intent." Order

20  [ECF #23], 7:19-28. The Court, therefore, should deny this objection.

21      **6.   The Objection Regarding the Scope of Discovery Should Be**

22  **Overruled**.

23      Plaintiff's sixth and final objection takes issue with Magistrate Judge Major's

24  concern that Plaintiff's proposed discovery is "overbroad and unwarranted." Objections

25  [ECF #25], 7:22-8:4; *see* Order [ECF #23], 8:25-9:5. In advance of the parties' briefing,

26  Magistrate Judge Major specifically requested that Plaintiff "identify the specific discovery

27  that will be conducted." Order [ECF #7], 2:7. Plaintiff then failed to comply with this

28  direction when he argued in his motion that he should be granted leave to serve written

discovery and conduct depositions of Ms. Greer, Ms. Noel, Dr. Yale, "and anyone else [who] had communications about this matter." Motion [ECF #9], 13:26-14:10. Plaintiff failed to identify the specific written requests he intended to propound, and he failed to articulate any focused scope for the numerous depositions he planned. By his own admission, he anticipated no limitations whatsoever on his claimed discovery rights. *Id.*, 14:8 ("Plaintiff intends to follow the evidence wherever it may lead").

For a discovery request based only on allegations and strained inferences derived from select emails taken out of proper context, Plaintiff's demand for unfettered discovery was clearly overbroad, and his objections provide no justification or explanation for this bold request. Magistrate Judge Major, therefore, properly exercised her discretion in rejecting Plaintiff's demands, and this Court should now overrule this objection.

## IV.  CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court overrule Plaintiff's objections in their entirety.

Date:  March 21, 2022

RANDY S. GROSSMAN
United States Attorney

By  /s/ *Glen F. Dorgan*
GLEN F. DORGAN
Attorneys for Defendant