RANDY S. GROSSMAN
United States Attorney
GLEN F. DORGAN (SBN 160502)
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7665
Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MADDERN,<br><br>                    Plaintiff,<br><br>v.<br><br>LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,<br><br>                    Defendants. | Case No. 3:21-cv-01298-MMA-BLM<br><br><br>**NOTICE OF CORRECTED ADMINISTRATIVE RECORD** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that:

1.      On January 4, 2022, Defendant LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense ("Defendant") lodged with the court the Certified Administrative Record in this matter electronically.  The Administrative Record is Bates Numbered 000001 through 001315.

2.      On January 4, 2022, Defendant filed a Notice of Lodgment of Administrative Record.  *See* Notice [ECF #13].

3.      As recently discovered, the Administrative Record inadvertently omitted relevant excerpts of the TRICARE Policy Manual ("TPM") in effect as of August 2017.

For the purpose of correcting the Administrative Record, the relevant excerpts of the TPM, Bates Numbered 001316 through 1331 are attached as Exhibit "A" hereto.

4.     The Administrative Record, as corrected, is indexed below, and an updated Certification of Administrative Record is served and filed herewith:

| Bates | Date | Brief Description |
|---|---|---|
| 0001 | 3/15/2019 | Certification of the Agency Exhibit File |
| 0002 | 3/15/2019 | Letter to Parrish Law Offices, sending Agency Exhibit File |
| 0003-0004 | 3/15/2019 | Forwarding Letter to Defense Office of Hearings and Appeals |
| 0005 | 4/2/2019[1] | Cover Page, Agency Exhibit File |
| 0006-0008 | 4/2/2019 | Agency Exhibit Index |
| 0009-0021 | 8/31/2017 - 12/2/2017 | Agency Exhibit 1, Plaintiff's TRICARE claims |
| 0022-0044 | 8/30/2017 – 2/08/2018 | Agency Exhibit 2, TRICARE Explanation of Benefits Forms |
| 0045 | 3/5/2018 | Agency Exhibit 3, Request for Reconsideration |
| 0046 | 3/12/2018 | Agency Exhibit 4, Notice of Overpayment |
| 0047-0057 | 3/12/2018 | Agency Exhibit 5, Reconsideration Determination |
| 0058 | 4/09/2018 | Agency Exhibit 6, Request for Formal Review with attachments |
| 0059-0069 | 3/12/2018 | Agency Exhibit 6, Attachment 1: Reconsideration Determination |
| 0070 | 3/02/2018 | Agency Exhibit 6, Attachment 2: Request for Reconsideration |
| 0071 | 2/16/2018 | Agency Exhibit 6, Attachment 3: Scripps Mercy Surgery Pavilion Invoice |
| 0072-0076 | 8/31/2017 – 12/5/2017 | Agency Exhibit 6, Attachment 4, Explanation of Benefits Forms |
| 0077 | 4/02/2018 | Agency Exhibit 6, Attachment 5, Statement of Medical Necessity, Michael Verdolin, MD |
| 0078-0130 | 3/01/18 – 3/26/2018 | Agency Exhibit 6, Attachment 6, Doctors' Visit Notes |
| 0131-0134 | 4/2018 | Agency Exhibit 6, Attachment 7, Medical History, as submitted by Plaintiff |
| 0135 | 4/17/2018 | Agency Exhibit 7, Acknowledgement of Request for Formal Review |
| 0136-0138 | 4/30/2018 | Agency Exhibit 8, Memorandum for Chief, Medical Benefits and Reimbursement Division |

---

[1] The Defendant is using the date the Agency File was approved and forwarded, based on the digital signature on 0005.

| 0139-0163 | 4/3/2011 | Agency Exhibit 9, Memorandum for Deputy Director, TRICARE Management Activity |
| 0164-0167 | 9/24/2017 | Agency Exhibit 9, Food and Drug Administration (FDA), Pre-Market Approval, Superion Interspinous Spacer |
| 0168-0229 | 9/24/2017 | Agency Exhibit 9, FDA Summary of Safety and Effectiveness Data |
| 0230-0256 | 1/25/2018 | Agency Exhibit 9, Hayes, coflex Interlaminar Stabilization Device |
| 0257-0288 | 5/17/2018 | Agency Exhibit 9, Hayes, Superion Interspinous Spacer System (Vertiflex Inc.) for Spinal Stenosis |
| 0289-0295 | 9/6/2018[2] | Agency Exhibit 9, Medical Policies, Interspinous and Interlaminar Stabilization/Distraction Devices (Spacers) |
| 0296-0303 | 9/3/2011 | Agency Exhibit 9, Walter Bini, et. al., *Minimally Invasive Treatment of Moderate Lumbar Spinal Stenosis with the Superion Interspinous Spaced,* The Open Orthopedics Journal, Vol. 5 at 361-367 (2011). |
| 0304-0311 | 2011 | Agency Exhibit 9, Shay Shabat, et.al., *Minimally invasive treatment of lumbar spinal stenosis with a novel interspinous spaces*, Clinical Interventions in Aging, Vol. 6 at 227-233 (2011). |
| 0312-0319 | 3/1/2015 | Agency Exhibit 9, Vikas V. Patel, MD, et. al., *Superion Interspinous Process Spacer for Intermittent Neurogenic Claudication Secondary to Moderate Lumbar Spinal Stenosis*, Spine, Vol. 40, No. 5 at 275-82 (2015) |
| 0320-0325 | 10/32015 | Agency Exhibit 9, Vikas V. Patel, MD, et. al., *Superion InterSpinous Spacer for treatment of moderate degenerative lumbar spinal stenosis: durable three-year results of a randomized controlled trial*, J. Pain Res., Vol. 8 at 657-62 (2015). |
| 0326-0331 | 8/2017 | Agency Exhibit 9, Pierce D. Nunley, et. al., *Superion Interspinous Spacer Treatment of Moderate Spinal Stenosis: 4-yaer Results*, World Neurosurgery, No. 104 at 279-283 (August 2017) |
| 0332-0341 | 8/2017 | Agency Exhibit 9, Pierce D. Nunley, et. al., *Five-year durability of stand-alone interspinous process decompression for lumbar spinal stenosis*, Clin Interv Aging, No. 12 at 1409-1417 (2017) |
| 0342-0349 | 8/21/2015 | Agency Exhibit 9, Carl Lauryssen, et. al., *Stand-alone interspinous spacer versus decompressive laminectomy for treatment of lumbar spinal stenosis*, Expert Rev Med Devices, Vol 6, No. 12 at 763-769 (2015) |

[2] For the Medical Policy Research, the date used is when the research was performed, as indicated at the bottom of 0289.

| 0350-361 | 7/9/2016 | Agency Exhibit 9, Scott L. Parker, M.D., et. al., *Cost-effectiveness of three treatment strategies for lumbar spinal stenosis: Conservative care, laminectomy, and the Superion interspinous spacer*, International Journal of Spine Surgery, Vol 9, No 28 (2016) |
| 0362-0365 | 7/2/2018 | Agency Exhibit 9, Pierce D. Nunley, et. al., *Interspinous Process Decompression Improves Quality of Life in Patients with Lumbar Spinal Stenosis*, Minimally Invasive Surgery, at 1-4 (2018) |
| 0366-0375 | 6/2006 | Agency Exhibit 9, Paul A. Anderson, M.D., et. al., *Treatment of neurogenic claudication by interspinous decompression: application of the X STOP device in patients with lumbar degenerative spondylolisthesis*, J. Neurosurg: Spine, Vol. 4, 463-471 (2006) |
| 0376-0379 | 2007 | Agency Exhibit 9, Paul Brussee, et. al., *Self-rated evaluation of outcome of the implantation of interspinous process distraction (X-Stop) for neurogenic claudication*, Eur Spine J., Vol 17, No. 2 at 200-203 (2007) |
| 0380-0387 | 7/2010 | Agency Exhibit 9, Mark G. Burnett, M.D. et. al., *Cost-effectiveness of current treatment strategies for lumbar spinal stenosis: nonsurgical care, laminectomy, and X-STOP*, J Nearosurg Spine, Vol. 13, No. 1 at 39-46 (2010) |
| 0388-0395 | 2016 | Agency Exhibit 9, Charles A. Hartjen, M.D., et. al., *Two-Year Evaluation of the X-STOP Interspinous Spacer in Different Primary Patient Populations With Neurogenic Intermittent Claudication Because of Lumbar Spinal Stenosis*, Clin Spine Surg, Vol 29, No. 7 at 305-311 (Aug, 2016) |
| 0396-0403 | 12/2006 | Agency Exhibit 9, Ken Y. Hsu, M.D. et. al., *Quality of life of lumbar stenosis-treated patients in whom the X STOP interspinous device was implanted*, J Neurosurg Spine, Vol 5, Is. 5 at 500-507 (Dec., 2006) |
| 0404-0409 | 7/2006 | Agency Exhibit 9, Dimitriy G. Kondrashow, M.D. et. al., *Interspinous Process Decompression with the X-STOP Device for Lumbar Spinal Stenosis: A 4-Year Follow-Up Study*, J. Spinal Disord Tech, Vol 19, No. 5 at 323-327 (July 2006) |
| 0410-0417 | 12/11/2007 | Agency Exhibit 9, Dimitriy G. Kondrashow, M.D. et. al., *X Stop versus Decompression for Neurogenic Claudication: Economic and Clinical Analysis*, The Internet Journal of Minimally Invasive Spinal Technology, Vol 1, No. 2 (Dec. 11, 2007) |
| 0418-0425 | 4/22/2009 | Agency Exhibit 9, Johannes Kuchta, et. al., *Two-year results of interspinous spacer (X-Stop) implantation in 175 patients with neurologic intermittent claudication due to lumbar spinal stenosis*, Eur Spine J., Vol 18, No. 6 at 823-829 (April 22, 2009) |

| 0426-0435 | 1/2015 | Agency Exhibit 9, Greger Lonne, M.D. et. al, *Minimally Invasive Decompression Versus X-Stop in Lumbar Spinal Stenosis*, SPINE, Vol 40, No 2. at 77-85 (Jan, 2015) |
|---|---|---|
| 0436-0445 | 2014 | Agency Exhibit 9, Fabrizio Puzzilli, M.D., et. al., *Interspinous spacer decompression (X-STOP) for lumbar spinal stenosis and degenerative disk disease: A multicenter study with a minimum 3-year follow-up*, Clin Neurol Neurosug 124 at 177-174 (2014) |
| 0446-0449 | 2007 | Agency Exhibit 9, Manal Siddiqui, FRCS, et. al., *One-Year Results of X-STOP Interspinous Implant for Treatment of Lumbar Spinal Stenosis*, SPINE, Vol 32, No. 12 (2007) |
| 0450-0461 | 3/2011 | Agency Exhibit 9, Grant Skidmore, M.D., et. al., *Cost-effectiveness of the X-STOP Interspinous Spacer for Lumbar Spinal Stenosis*, SPINE, Vol. 32, No. 12 at 1245-1248 (Mar. 2011) |
| 0462-0469 | 8/2013 | Agency Exhibit 9, Bjorn H. Stromqvist, M.D., Ph.D., et. al. *X-Stop Versus Decompressive Surgery for Lumbar Neurogenic Intermittent Claudication*, SPINE, Vol 38, No 17, at 1436-1442 (Aug. 2013) |
| 0470-0489 | 3/10/2016 | Agency Exhibit 9, Bellina L. Udeh, PhD, MPH, et.al., *The 2-Year Cost-Effectiveness of 3 options to Treat Lumbar Spinal Stenosis Patients*, HHS Public Access, Vol 15, Is. 2 at 107-116 (2016) |
| 0490-0499 | 2004 | Agency Exhibit 9, J.F. Zucherman, et. al., *A prospective randomized multi-center study for the treatment of lumbar spinal stenosis with the X-STOP interspinous implant: 1-year results*, Eur. Spine J., Vol. 13, Is. 1 at 22-31 (2004) |
| 0500-0507 | 2005 | Agency Exhibit 9, J.F. Zucherman, et. al., *A Multicenter, Prospective, Randomized Trial Evaluating the X STOP Interspinous Process Decompression System for the Treatment of Neurogenic Intermittent Claudication: Two-Year Follow-up Results*, SPINE, Vol 30, Is 12 at 1351-1358 (2005) |
| 0508-0519 | 5/2017 | Agency Exhibit 9, *Superion InterSpinous Spacer (Vertiflex, Inc.) for Treating Lumbar Simpal Stenosis*, ECRI Institute (May, 2017) |
| 0520-541 | 2/26/2014 | Agency Exhibit 9, *X-Stop Interspinous Process Decompression System (Medtronic Spine LLC) for Lumbar Spinal Stenosis*, Hayes Brief |
| 0542-0549 | 11/25/2010 | Agency Exhibit 9, *Interspinous distraction procedures for lumbar spinal stenosis causing neurogenic claudication*, National Institute for Health and Care Excellence |
| 0550-0597 | 4/2010 | Agency Exhibit 9, National Institute for Health and Clinical Experience, *Interventional Procedures Programme: Interventional procedure overview of interspinous distraction procedures for lumbar spinal stenosis causing neurogenic claudication* |

| 0598-0609 | 2009 | Agency Exhibit 9, Roger Chou, M.D., et. al., *Interventional Therapies, Surgery, and Interdisciplinary Rehabilitation for Low Back Pain: An Evidence-Based Clinical Practice Guideline from the American Pain Society*,  LBP Guidelines (2009) |
|---|---|---|
| 0610-0625 | 2009 | Agency Exhibit 9, Roger Chou, M.D. et. al., *Surgery for Low Back Pain: A review of the Evidence for an American Pain Society Clinical Practice Guide*, SPINE, Vol 34, No 10, at 1094-1109 (2009) |
| 0626-0645 | 12/5/2016 | Agency Exhibit 9, Richard Guyer, M.D., et. al., *ISASS Recommendations/Coverage Criteria for Decompression with Interlaminar Stabilization – Coverage Indications, Limitations, and/or Medical Necessity*, Int. J. Spine Surg, Vol 10, No 41 (2016) |
| 0646-0655 | 12/04/2014 | Agency Exhibit 9, *Interspinous Devise without Fusion, Defining Appropriate Coverage Positions*, North American Spine Society (2014) |
| 0656-0671 | 05/01/2014 | Agency Exhibit 9, Richard A. Deyo, MD, MPH, et. al., *Interspinous Spacers Compared to Decompression or Fusion for Lumbar Stenosis: Complications and Repeat Operations in Medicare Population*, SPINE, Vol. 38, No. 10 (May, 1, 2014) |
| 0672-0681 | 5/14/2018 | Agency Exhibit 9, Stephanie J. Tapp, PhD, et. al., *Understanding the value of minimally invasive procedures for the treatment of lumbar spinal stenosis: the case of interspinous spacer devices*, Spine J., Vol 18, No. 4 at 584-592 (May 14, 2018) |
| 0682-0693 | 9/1/2017 | Agency Exhibit 9, Medical Policy, Blue Cross, Blue Shield, Blue Care Network of Michigan, *Interspinous/Interlaminar Stabilization/Distractoin Devices (Spacers)* (Sept. 1, 2017) |
| 0694-0699 | 10/17/2017 | Agency Exhibit 9, *Local Coverage Determination (LCD): Interspinous Process Decompression (L34006)* |
| 0700-0703 | 5/11/2018 | Agency Exhibit 9, Emblem Health, *Interspinous Distraction Devices* |
| 0704-0707 | 1/10/2018 | Agency Exhibit 9, United Healthcare, *Insertion of Posterior Spinous Process Device* |
| 0708-0711 | 7/02/2018 | Agency Exhibit 10, Request for Information |
| 0712-0714 | 7/10/2018 | Agency Exhibit 11, Extension for Time for Document Submission |
| 0715-0766 | 8/14/2018 | Agency Exhibit 12, Response for Request for Information, Tim Madden, Director, Health Economics and Reimbursement, Vertiflex, Inc. |
| 0767-0772 | 8/12/2018 | Agency Exhibit 13, Response to Request for Information, Tim Madden, Director, Health Economics and Reimbursement, Vertiflex, Inc. |

| 0773-0790 | 7/31/2018 | Agency Exhibit 14, Executive Summary, Medical Benefit Determination for Interlaminar/Interspinous Process Devices for the Treatment of Neurogenic Claudication and/or Lumbar Spinal Stenosis |
| 0791-0828 | 8/28/2018 – 11/02/2018 | Agency Exhibit 15, Email Exchanges |
| 0829-0856 | 12/07/2018 | Agency Exhibit 16, Formal Review Decision |
| 0857-0858 | 2/05/2019 | Agency Exhibit 17, Plaintiff's Request for Hearing |
| 0859 | 2/13/2019 | Agency Exhibit 18, Interim Acknowledgment of Request for Hearing |
| 0860-0861 | 2/19/2019 | Agency Exhibit 19, Acknowledgment of Request for Hearing |
| 0862 | 3/27/2019 | Agency Exhibit 20, Pre-Hearing Motion, Defense Health Agency, *In Re: Care Provided to Ronald Maddern, a TRICARE For Life Beneficiary*, No. AH190164 |
| 0863-0866 | 4/2/2019 | Agency Exhibit 21, Agency Statement of Position, *In Re: Care Provided to Ronald Maddern, a TRICARE For Life Beneficiary*, No. AH190164 |
| 0867 | 4/03/2019 | Agency Exhibit 22, Parrish Law Office, Entry of Appearance |
| 0868-0909 | 7/9/2019 – 7/31/2019 | Prehearing emails until Notice of Hearing |
| 0910-0911 | 8/01/2019 | Notice of Hearing |
| 0912-0963 | 7/31/2019- 8/14/2019 | Prehearing emails until Plaintiff's Statement and Exhibits |
| 0964-0969 | 8/14/2019 | Plaintiff's Statement |
| 0970-0975 | 8/14/2019 | Plaintiff's Attached Evidentiary Material, *Curriculum Vitae*, Dr. Micheal Verdolin |
| 0976-1044 | 6/3/2015 | Plaintiff's Attached Evidentiary Material, Food and Drug Administration, Pre-market Approval PMA P140004 for Superion |
| 1045-1052 | 2015 | Plaintiff's Attached Evidentiary Material, *V. Patel, et al.,* "Superion Interspinous Process Spacer for Intermittent Neurogenic Claudication Secondary to Moderate Lumbar Stenosis", Spine, Is. 49(5), at 275-82 (2015) |
| 1053-1058 | 10/3/2015, | Plaintiff's Attached Evidentiary Material, *V. Patel, et al.,* "Superion Interspinous Process Spacer for Treatment of Moderate Degenerative Lumbar Spinal Stenosis: Durable Three-Year Results of a Randomized Controlled Trial", Journal of Pain Research, Is. 8 at 657- 62 (2015) |
| 1059-1063 | 2017 | Plaintiff's Attached Evidentiary Material, *P. Nunley, et al.,* "Superion Interspinous Spacer Treatment of Moderate Spinal Stenosis: 4-Year Results", World Neurosurgery, 104: 2017 279-83 |

| 1064-1072 | 2017 | Plaintiff's Attached Evidentiary Material, *P. Nunley, et al.,* "Five-year Durability of Stand-Alone Interspinous Process Decompression for Lumbar Spinal Stenosis", Clinical Intervention in Aging, September 2017: 12 1409-1417 |
| --- | --- | --- |
| 1073-1078 | 2018 | Plaintiff's Attached Evidentiary Material, *P. Nunley, et al.,* "Interspinous Process Decompression Is Associated with a Reduction in Opioid Analgesia in Patients with Lumbar Spinal Stenosis", Journal of Pain Research, 2018:11 2943-2948 |
| 1079-1089 | 8/12/2019 | Plaintiff's Attached Evidentiary Material, *J. Hartman, et al.,* "The Use of Vertiflex Interspinous Spacer Device in Patients With Lumbar Spinal Stenosis and Concurrent Medical Comorbiditites", Cureus, August 12, 2019 |
| 1090-1114 | 2019 | Plaintiff's Attached Evidentiary Material, *T Deer, et al.,* "The MIST guidelines: the lumbar stenosis consensus study group guidelines for minimally invasive spine treatment", Pain Pract. 2019, 181 250-274 |
| 1115-1116 | 8/16/2019 | Hearing Officer's Acknowledgment of Plaintiff's Statement and Exhibits |
| 1117-1272 | 8/22/2019 | Hearing Transcript |
| 1273-1274 | 8/30/2019 | Email submitting Agency Closing Statement |
| 1275-1278 | 8/30/2019 | Agency Closing Statement |
| 1279 | 9/4/2019 | Email sending Hearing Officer's opening statement[3] |
| 1280-1283 | 9/4/2019 | Hearing Officer's Opening Statement |
| 1284 | 9/4/2019 | Plaintiff's email requesting a copy of hearing transcript |
| 1285 | 9/6/2019 | Email sending copy of hearing transcript |
| 1286-1287 | 9/6/2019 | Email thread, Mrs. Deborah Maddem to Hearing Officer |
| 1288 | 9/13/2019 | Email submitting Plaintiff's Closing Statement with attachments |
| 1289-1297 | 9/13/2019 | Plaintiff's Closing Statement with Attachments |
| 1298-1306 | 1/31/2020 | Hearing Officer's Recommended Decision |
| 1307 | 5/18/2021 | Action Memorandum to the Acting Chief, TRICARE Health Plan |
| 1308 | 5/20/2021 | Forwarding letter of the Final Decision to Defense Office of Hearings and Appeals |
| 1309 | 5/20/2021 | Forwarding letter of the Final Decision to Wisconsin Physicians Service |
| 1310 | 5/20/2021 | Forwarding letter to Plaintiff |
| 1311-1314 | 5/20/2021 | Final Decision |
| 1315 | 5/20/2021 | Fax Cover Sheet to Parrish Law Firm, Plaintiff's Counsel |
| 1316-1317 | 6/30/2017 | TRICARE Policy Manual 6010.60-M, April 2015, Change 4 (June 30, 2017), Table of Contents |

---

[3] The Hearing Officer sends a copy of her opening statement to all parties after the hearing.

Notice of Corrected Administrative Record

| 1318-1320 | 06/30/2017 | TRICARE Policy Manual 6010.60-M, April 2015, Change 4 (June 30, 2017), Chapter 1, Section 2.1 |
| 1321-1324 | 06/30/2017 | TRICARE Policy Manual 6010.60-M, April 2015, Change 4 (June 30, 2017), Chapter 4, Section 6.1 |
| 1325-1327 | 06/30/2017 | TRICARE Policy Manual 6010.60-M, April 2015, Change 4 (June 30, 2017), Chapter 8, Section 5.1 |
| 1328-1331 | 01/25/2019 | TRICARE Policy Manual 6010.60-M, April 2015, Change 40 (January 25, 2019), Chapter 4, Section 6.1 |

Date:  May 7, 2022

RANDY S. GROSSMAN
United States Attorney

By  /s/ *Glen F. Dorgan*
GLEN F. DORGAN
Attorneys for Defendant

# EXHIBIT "A"



| Manuals | Change History | Manuals by Date | Search | FAQ |

MHS Home > TRICARE Manuals > TRICARE Policy Manual 6010.60-M, April 2015 > Table of Contents

Need larger text?

# Table of Contents

Collapse All    Expand All

📖 TRICARE Policy Manual 6010.60-M, April 2015, Change 4 (June 30, 2017)

📄 Master TOC

📄 Foreword

📄 Chapter 1 -- Administration

📄 Chapter 2 -- Evaluation And Management

📄 Chapter 3 -- Anesthesia

📄 Chapter 4 -- Surgery

📄 Chapter 5 -- Radiology

📄 Chapter 6 -- Pathology And Laboratory

📄 Chapter 7 -- Medicine

📄 Chapter 8 -- Other Services

📄 Chapter 9 -- Extended Care Health Option (ECHO)

📄 Chapter 10 -- Eligibility And Enrollment

📄 Chapter 11 -- Providers

📄 Chapter 12 -- TRICARE Overseas Program (TOP)

📄 Chapter 13 -- Provisional Coverage For Emerging Services And Supplies

001316

 Index



tricare.mil is the official website of the Defense Health Agency (DHA) a component of the Military Health System

TRICARE is a registered trademark of the Department of Defense (DoD), DHA. All rights reserved.

CPT only © 2006 American Medical Association (or such other date of publication of CPT). All Rights Reserved.

If you have a question regarding TRICARE benefits, please go to the TRICARE Contact Us page page.
If you need help with technical/operational issues, please go to the TRICARE Manuals Online Frequently Asked Questions page.

The appearance of hyperlinks to external websites does not constitute endorsement by the DHA of these websites or the information, products or services contained therein. For other than authorized government activities, the DHA does not exercise any editorial control over the information you may find at other locations. Such links are provided consistent with the stated purpose of this DoD website.

v4.8.7983.18738



Health.mil

DHA Strategic Plan | Privacy Policy | No FEAR Act | Fraud and Abuse | 508 Compliance | FOIA | DHAOIG
| Information Quality | Open Government | Plain Writing | USA.Gov | White House | OCS

**DHA Address:** 7700 Arlington Boulevard | Suite 5101 | Falls Church, VA | 22042-5101

Some documents are presented in Portable Document Format (PDF). A PDF reader is required for viewing. Download a PDF Reader or learn more about PDFs.

001317

**TRICARE Policy Manual 6010.60-M, April 1, 2015**
Administration

Chapter 1                                                    Section 2.1

# Unproven Drugs, Devices, Medical Treatments, And Procedures

Issue Date:  November 1, 1983
Authority:  32 CFR 199.2 and 32 CFR 199.4(g)(15)
Revision:

**1.0    POLICY**

By law, TRICARE can only cost-share medically necessary supplies and services. TRICARE regulations and program policies restrict benefits to those drugs, devices, treatments, or procedures for which the safety and efficacy have been proven to be comparable or superior to conventional therapies. Any drug, device, medical treatment, or procedure whose safety and efficacy has not been established is unproven and is excluded from coverage.

**2.0**    A drug, device, medical treatment, or procedure is unproven:

**2.1**    If the drug or device cannot be lawfully marketed without the approval or clearance of the U.S. Food and Drug Administration (FDA) and approval or clearance for marketing has not been given at the time the drug or device is furnished to the patient.

**2.2**    If a medical device with an Investigational Device Exemption (IDE) approved by the FDA is categorized by the FDA as experimental/investigational (FDA Category A).

**2.3**    Unless reliable evidence shows that any medical treatment or procedure has been the subject of well-controlled studies of clinically meaningful endpoints, which have determined its maximum tolerated dose, its toxicity, its safety, and its efficacy as compared with standard means of treatment or diagnosis.

**2.4**    If the reliable evidence shows that the consensus among experts regarding the medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, or its effectiveness as compared with the standard means of treatment or diagnosis.

**3.0**    This exclusion includes all services directly related to the unproven drug, device, medical treatment or procedure.

**4.0**    Cost-sharing may be allowed for services or supplies when there is no logical or causal relationship between the unproven drug, device, treatment, or procedure and the treatment at issue or where such a logical or causal relationship cannot be established with a sufficient degree of certainty. This cost-sharing is authorized in the following circumstances:

Case 3:21-cv-01298-MMA-BLM   Document 31   Filed 05/07/22   PageID.849   Page 14 of 26

**TRICARE Policy Manual 6010.60-M, April 1, 2015**
Chapter 1, Section 2.1
Unproven Drugs, Devices, Medical Treatments, And Procedures

**4.1**    Treatment that is not related to the unproven drug, device, treatment, or procedure; e.g., medically necessary treatment the beneficiary would have received in the absence of the unproven drug, device, treatment, or procedure.

**4.2**    Treatment which is a necessary follow-up to the unproven drug, device, treatment, or procedure but which might have been necessary in the absence of the unproven treatment.

**5.0**    In making a determination that a drug, device, medical treatment, or procedure has moved from the status of unproven to the position of nationally accepted medical practice, TRICARE uses the following hierarchy of reliable evidence (see 32 CFR 199.2):

**5.1**    Well controlled studies of clinically meaningful endpoints, published in refereed medical literature.

**5.2**    Published formal technology assessments.

**5.3**    The published reports of national professional medical associations.

**5.4**    Published national medical policy organization positions.

**5.5**    The published reports of national expert opinion organizations.

**6.0**    The hierarchy of reliable evidence of proven medical effectiveness, established by paragraph 5.1 through 5.5, is the order of the relative weight to be given to any particular source. With respect to clinical studies, only those reports and articles containing scientifically valid data and published in the refereed medical and scientific literature shall be considered as meeting the requirements of reliable evidence. Specifically not included in the meaning of reliable evidence are reports, articles, or statements by providers or groups of providers containing only abstracts, anecdotal evidence or personal professional opinions. Also not included in the meaning of reliable evidence is the fact that a provider or a number of providers have elected to adopt a drug, device, medical treatment, or procedure as their personal treatment or procedure of choice or standard of practice.

**7.0**    TRICARE policy and benefit structure is never based solely on that of other Government medical programs, including Medicare, because each operates under its own statutes and regulations. Furthermore, while TRICARE may examine the policies of private third party payers, TRICARE coverage may only be based on governing statutes and regulations.

**8.0**    The contractor(s) shall routinely review the hierarchy of reliable evidence, as defined in 32 CFR 199.2, and provide a report to the Defense Health Agency (DHA) when the contractor identifies drugs, devices, medical treatments, or procedures that they believe have moved from unproven to proven. DHA will apply the standards and procedures in TRICARE regulation and policy and if determined by DHA to have moved to proven, will notify all contractors that the drug, device, medical treatment, or procedure is proven and a part of the TRICARE benefit.

**9.0**    For drugs, devices, medical treatments, and procedures that TRICARE has determined have moved from the status of unproven to the status of proven in accordance with the procedure established in paragraph 5.0, the effective date (or the date on which the particular drug, device, medical treatment, or procedure may be cost-shared) is the date published reliable evidence (as described in 32 CFR 199.2) shows proven medical effectiveness. For example, the effective date may be

**TRICARE Policy Manual 6010.60-M, April 1, 2015**
Chapter 1, Section 2.1
Unproven Drugs, Devices, Medical Treatments, And Procedures

established as the date of publication of a well-controlled study of clinically meaningful endpoints published in refereed medical literature, or the publication date of a formal technology assessment.

**Note:**     See Section 3.1 for policy on Rare Diseases.

**Note:**     See Chapter 7, Section 24.1 for policy on cancer clinical trials.

**Note:**     See Chapter 8, Section 5.1 for policy on medical devices, including coverage of off-label uses of medical devices, Humanitarian Use Devices and a FDA-approved IDE categorized by the FDA as non-experimental/investigational (FDA Category B).

**Note:**     See Chapter 8, Section 9.1 for policy on off-label use of drugs.

- END -

Chapter 4                                                        Section 6.1

# Musculoskeletal System

Issue Date: August 26, 1985
Authority:  32 CFR 199.4(c)(2) and (c)(3)
Copyright:  CPT only © 2006 American Medical Association (or such other date of publication of CPT).
            All Rights Reserved.
Revision:   C-4, June 30, 2017

## 1.0     CPT PROCEDURE CODES

20005 - 20551, 20555 - 22328, 22510 - 22515, 22532 - 22856, 22858, 22861, 22864 - 27138, 27146 - 27178, 27181 - 29861, 29870 - 29913, 29999

## 2.0     HCPCS CODES

S2118, S2325

## 3.0     DESCRIPTION

The musculoskeletal system pertains to or comprises the skeleton and the muscles.

## 4.0     POLICY

**4.1**     Services and supplies required in the diagnosis and treatment of illness or injury involving the musculoskeletal system are covered. U.S. Food and Drug Administration (FDA) approved surgically implanted devices are also covered.

**4.2**     Effective August 25, 1997, Autologous Chondrocyte Implantation (ACI) surgery for the repair of clinically significant, symptomatic, cartilaginous defects of the femoral condyle (medial, lateral or trochlear) caused by acute or repetitive trauma is a covered procedure. The autologous cultured chondrocytes must be approved by the FDA.

**4.3**     Single or multilevel anterior cervical microdiskectomy with allogeneic or autogeneic iliac crest grafting and anterior plating is covered for the treatment of cervical spondylosis.

**4.4**     Percutaneous vertebroplasty (Current Procedural Terminology (CPT) procedure codes 22510-22512) and balloon kyphoplasty (CPT procedure codes 22513-22515) are covered for the treatment of painful osteolytic lesions and osteoporotic compression fractures refractory to conservative medical treatment.

**4.5**     Total Ankle Replacement (TAR) (CPT procedure codes 27702 and 27703) surgery is covered if the device is FDA approved and the use is for an FDA approved indication. However, a medical necessity review is required in case of marked varus or valgus deformity.

**4.6**     Core decompression of the femoral head (hip) for early (precollapse stage I or II) avascular necrosis may be considered for cost-sharing (Healthcare Common Procedure Coding System (HCPCS) code S2325).

**4.7**     Single-level, cervical Total Disc Replacement (cTDR) (CPT procedure code 22856) and two-level cTDR (CPT procedure code 22858) using an FDA approved cervical artificial intervertebral disc for the treatment of cervical DDD, intractable radiculopathy, and/or myelopathy is covered if the disc is used in accordance with its FDA labeled indications.

**4.8**     High Energy Extracorporeal Shock Wave Therapy (HE ESWT) for the treatment of plantar fasciitis is covered when all of the following conditions are met:

- Patients have chronic plantar fasciitis of at least six months duration;

- Patients have undergone and failed six months of appropriate conservative therapy; and

- HE ESWT is defined as Energy Flux Density (EFD) greater than 0.12 millijoules per square millimeter (mJ/mm2).

**4.9**     Meniscal allograft transplant of the knee is covered.

**4.10**   Hip resurfacing (CPT procedure codes 27125 and 27130, and HCPCS S2118) with an FDA approved device is proven for the treatment of Degenerative Joint Disease (DJD) of the hip in patients who are less than 65 years old and who meet all of the following criteria:

- Have chronic, persistent pain and/or disability;

- Are otherwise healthy and active;

- Have normal proximal femoral bone geometry and bone quality; and

- Would otherwise receive a conventional Total Hip Replacement (THR), but are likely to outlive a conventional THR implant system's expected life.

**4.11**   Minimally Invasive Surgery (CPT procedure code 27279) for treatment of sacroiliac joint pain is proven.

**5.0**     **EXCLUSIONS**

**5.1**     Meniscal transplant (CPT procedure code 29868) for meniscal injury is unproven.

**5.2**     Ligament replacement with absorbable copolymer carbon fiber scaffold is unproven.

**5.3**     Prolotherapy, joint sclerotherapy and ligamentous injections with sclerosing agents (HCPCS procedure code M0076) are unproven.

**TRICARE Policy Manual 6010.60-M, April 1, 2015**
Chapter 4, Section 6.1
Musculoskeletal System

**5.4**    Trigger point injection (CPT procedure codes 20552 and 20553) for migraine headaches.

**5.5**    Total disc arthroplasty (artificial disc), anterior approach, including discectomy with end plate preparation (includes osteophytectomy for nerve root or spinal cord decompression and microdissection), three or more levels (CPT procedure code 0375T) is unproven.

**5.6**    Removal of total disc arthroplasty (artificial disc), anterior approach, cervical, each additional interspace (CPT procedure code 0095T) is unproven. Also, see Section 1.1.

**5.7**    Lumbar total disc arthroplasty (lumbar artificial intervertebral disc revision including replacement, lumbar total disc replacement) for degenerative disc disease is unproven (CPT procedure codes 22857, 22862, 0163T, 0164T, and 0165T).

**5.8**    Low Energy (LE) or radial ESWT for the treatment of plantar fasciitis is unproven. Any form of ESWT for the treatment of lateral epicondylitis is unproven.

**5.9**    XSTOP Interspinous Process Decompression System (CPT procedure codes 0171T and 0172T, HCPCS code C1821) for the treatment of neurogenic intermittent claudication secondary to lumbar spinal stenosis is unproven.

**5.10**    Femoroacetabular Impingement (FAI) open surgery, surgical dislocation (CPT procedure codes 27140 and 27179), for the treatment of hip impingement syndrome or labral tear is unproven.

**5.11**    Hip arthroscopy with debridement of articular cartilage (CPT procedure code 29862) for the treatment of FAI is unproven.

**5.12**    Hip arthroscopy with femoroplasty (CPT procedure code 29914) treatment of FAI; cam lesion is unproven.

**5.13**    Hip arthroscopy with acetabuloplasty (CPT procedure code 29915) treatment of FAI; pincer lesion is unproven.

**5.14**    Hip arthroscopy with labral repair (CPT procedure code 29916) for treatment of FAI syndrome is unproven.

**5.15**    Osteochondral allograft of the humeral head with meniscal transplant and glenoid microfracture in the treatment of shoulder pain and instability is unproven.

**5.16**    Thermal Intradiscal Procedures (TIPs) (CPT procedure codes 22526, 22527, 62287, and Healthcare Common Procedure Coding System (HCPCS) code S2348) are unproven. TIPs are also known as: Intradiscal Electrothermal Annuloplasty (IEA), Intradiscal Electrothermal Therapy (IDET), Intradiscal Thermal Annuloplasty (IDTA), Percutaneous Intradiscal Radiofrequency Thermocoagulation (PIRFT), Coblation Percutaneous Disc Decompression, Nucleoplasty (also known as Percutaneous Radiofrequency (RF) Thermomodulation or Percutaneous Plasma Diskectomy), Radiofrequency Annuloplasty (RA), Intradiscal Biacuplasty (IDB), Percutaneous (or Plasma) Disc Decompression (PDD), Targeted Disc Decompression (TDD), Cervical Intradiscal RF Lesioning.

**5.17**    Spinal manipulation under anesthesia (CPT procedure codes 00640 and 22505) for the treatment of back pain is unproven.

**5.18**    Minimally Invasive Lumbar Decompression (mild®) for the treatment of Degenerative Disc Disease (DDD) and/or spinal stenosis is unproven.

**5.19**    ACI surgery for the repair of patellar cartilage lesions is unproven.

**5.20**    Athletic pubalgia surgery is unproven.

**6.0**    **EFFECTIVE DATES**

**6.1**    February 6, 2006, for percutaneous vertebroplasty and balloon kyphoplasty.

**6.2**    May 1, 2008, for TAR.

**6.3**    May 1, 2008, for core decompression of the femoral head.

**6.4**    December 24, 2012, for single-level, cTDR using an FDA approved cervical artificial intervertebral disc.

**6.5**    December 2, 2013, for HE ESWT for plantar fasciitis.

**6.6**    May 21, 2014, for hip resurfacing for treatment of DJD of the hip.

**6.7**    May 1, 2015, for meniscal allograft transplant of the knee.

**6.8**    July 27, 2015, for two-level cTDR using an FDA approved cervical artificial intervertebral disc.

**6.9**    August 23, 2016, Minimally Invasive Surgery (CPT procedure code 27279) for the treatment of sacroiliac joint pain is proven.

- END -

Chapter 8                                                         Section 5.1

# Medical Devices

Issue Date:  December 18, 1992
Authority:  32 CFR 199.2(b), 32 CFR 199.4(a), (b), (c), and (g)(15)
Revision:

## 1.0    DESCRIPTION

**1.1**       Section 201(h) of the Food, Drug and Cosmetic Act defines medical devices as an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including a component part, or accessory which is:

**1.1.1**       Recognized in the official National Formulary, or the United States Pharmacopoeia, or any supplement to them;

**1.1.2**       Intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals; or

**1.1.3**       Intended to affect the structure of any function of the body of man or other animals, and which does not achieve any of its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its primary intended purposes.

**1.2**       Devices which meet this definition are regulated by the U.S. Food and Drug Administration (FDA) and are subject to premarketing and postmarketing regulatory controls. (For further information see the FDA's web site: http://www.fda.gov.)

## 2.0    POLICY

**2.1**       Medical devices may be covered when medically necessary, appropriate, the standard of care, and not otherwise excluded.

**2.2**       Medical devices must be FDA approved or of a type not requiring pre-market approval by the FDA. Not all of these (either FDA approved or those not requiring pre-market approval) are covered. Not all FDA approved devices are covered. Coverage of a medical device is subject to all other requirements of the law, rules, and policy governing TRICARE. If the device is used for a noncovered or excluded indication, benefits may not be allowed. For example, tinnitus masker is an FDA approved device; however, TRICARE considers this device unproven and, therefore, not a benefit.

**2.3**       Effective July 27, 2012, coverage may be considered for off-label uses of devices.

**TRICARE Policy Manual 6010.60-M, April 1, 2015**
Chapter 8, Section 5.1
Medical Devices

**2.3.1** Off-label uses of devices must meet the definition of Off-Label Use of a Drug or Device as described in 32 CFR 199.2:

> Off-Label Use of a Drug or Device. A use other than an intended use for which the prescription drug, biologic or device is legally marketed under the Federal Food, Drug, and Cosmetic Act or the Public Health Services Act. This includes any use that is not included in the approved labeling for an approved drug, licensed biologic, approved device or combination product; any use that is not included in the cleared statement of intended use for a device that has been determined by the Food and Drug Administration (FDA) to be substantially equivalent to a legally marketed predicate device and cleared for marketing; and any use of a device for which a manufacturer or distributor would be required to seek pre-market review by the FDA in order to legally include that use in the device's labeling.

**2.3.2** Approval for reimbursement of off-label uses of devices shall be provided by the contractor. The contractor shall provide approval for the reimbursement of off-label uses when the off-label use is medically necessary and demonstrations from medical literature, national organizations, or technology assessment bodies show that the off-label use of the device is safe, effective and in accordance with nationally accepted standards of practice in the medical community. If the device is FDA approved and the off-label use is medically necessary, supported by medical literature identified by the contractor, which indicates the device is nationally accepted as standard practice, and is not otherwise excluded, the contractor shall approve the cost-sharing for the off-label medical device.

**2.4** A humanitarian use device approved for marketing through a Humanitarian Device Exemption application may be covered. Coverage of any such device is subject to all other requirements of the law, rules, and policy governing TRICARE.

**2.5** TRICARE will consider for coverage a device with an FDA approved Investigational Device Exemption (IDE) categorized by the FDA as non-experimental/investigational (FDA Category B) for beneficiaries participating in FDA approved clinical trials. Coverage of any such Category B device is dependent on its meeting all other requirements of the law, rules, and policy governing TRICARE and upon the beneficiary involved meeting FDA approved IDE study protocols.

**2.6** Devices with a FDA approved IDE categorized by the FDA as non-experimental/investigational (FDA Category B), which was the subject of an FDA approved clinical trial(s), may be considered for coverage once it receives FDA approval for commercial marketing. Coverage is dependent on the device meeting the FDA requirements/conditions of approval and all other requirements governing TRICARE.

**3.0** **EXCLUSION**

Experimental/Investigational (Category A) IDEs.

**4.0** **EFFECTIVE DATES**

**4.1** Device used for an FDA approved application. Effective date is the date of the FDA approval.

**4.2**     Category B IDEs. Effective date is the date the device is classified as a Category B device by the FDA.

**4.3**     Off-label uses of medical devices. Effective date is July 27, 2012.

- END -

# Chapter 4

Section 6.1

## Musculoskeletal System

Issue Date:  August 26, 1985
Authority:  32 CFR 199.4(c)(2) and (c)(3)
Copyright:  CPT only © 2006 American Medical Association (or such other date of publication of CPT). All Rights Reserved.
Revision:  C-40, January 25, 2019

### 1.0  CPT PROCEDURE CODES

20005 - 20551, 20555 - 22328, 22510 - 22515, 22532 - 22856, 22858, 22859, 22861, 22864 - 27138, 27140, 27146 - 27179, 27181 - 29862, 29870 - 29916, 29999

### 2.0  HCPCS CODES

S2112, S2118, S2325

### 3.0  DESCRIPTION

The musculoskeletal system pertains to or comprises the skeleton and the muscles.

### 4.0  POLICY

**4.1**  Services and supplies required in the diagnosis and treatment of illness or injury involving the musculoskeletal system are covered. U.S. Food and Drug Administration (FDA) approved surgically implanted devices are also covered.

**4.2**  Autologous cultured chondrocytes on porcine collagen membrane (i.e. Matrix-Induced Autologous Chondrocyte Implantation [MACI]) to treat cartilage defects of the knee is proven.

**4.3**  Single or multilevel anterior cervical microdiskectomy with allogeneic or autogeneic iliac crest grafting and anterior plating is covered for the treatment of cervical spondylosis.

**4.4**  Percutaneous vertebroplasty (Current Procedural Terminology (CPT) procedure codes 22510-22512) and balloon kyphoplasty (CPT procedure codes 22513-22515) are covered for the treatment of painful osteolytic lesions and osteoporotic compression fractures refractory to conservative medical treatment.

**4.5**  Total Ankle Replacement (TAR) (CPT procedure codes 27702 and 27703) surgery is covered if the device is FDA approved and the use is for an FDA approved indication. However, a medical necessity review is required in case of marked varus or valgus deformity.

**4.6**  Core decompression of the femoral head (hip) for early (precollapse stage I or II) avascular necrosis may be considered for cost-sharing (Healthcare Common Procedure Coding System (HCPCS) code S2325).

**4.7**  Single-level, cervical Total Disc Replacement (TDR) (CPT procedure code 22856) and two-level, cervical TDR (CPT procedure code 22858) using an FDA approved cervical artificial intervertebral disc for the treatment of cervical

Degenerative Disc Disease (DDD), intractable radiculopathy, and/or myelopathy is covered if the disc is used in accordance with its FDA labeled indications.

**4.8** High Energy Extracorporeal Shock Wave Therapy (HE ESWT) for the treatment of plantar fasciitis is covered when all of the following conditions are met:

- Patients have chronic plantar fasciitis of at least six months duration;

- Patients have undergone and failed six months of appropriate conservative therapy; and

- HE ESWT is defined as Energy Flux Density (EFD) greater than 0.12 millijoules per square millimeter (mJ/mm2).

**4.9** Meniscal allograft transplant of the knee is covered.

**4.10** Hip resurfacing (CPT procedure codes 27125 and 27130, and HCPCS S2118) with an FDA approved device is proven for the treatment of Degenerative Joint Disease (DJD) of the hip in patients who are less than 65 years old and who meet all of the following criteria:

- Have chronic, persistent pain and/or disability;

- Are otherwise healthy and active;

- Have normal proximal femoral bone geometry and bone quality; and

- Would otherwise receive a conventional Total Hip Replacement (THR), but are likely to outlive a conventional THR implant system's expected life.

**4.11** Minimally Invasive Surgery (CPT procedure code 27279) for treatment of sacroiliac joint pain is proven.

**4.12** Autologous Chondrocyte Implantation (ACI), with Carticel, for the repair of patellar cartilage lesions is proven.

**4.13** Single-level, lumbar TDR (CPT procedure code 22857) using an FDA approved lumbar artificial intervertebral disc for the treatment of single-level, lumbar DDD in patients who have failed conservative treatment is covered if the disc is used in accordance with its FDA labeled indications.

**4.14** Open, arthroscopic, and combined hip surgery (CPT 27140, 27179, 29862, 29914-16) for the treatment of Femoroacetabular Impingement (FAI) is proven and covered when all of the following criteria are met:

- Moderate to severe and persistent activity limiting hip pain that is worsened by flexion activities.

- Physical examination is consistent with the diagnosis of FAI with at least one positive test required:

  - Positive impingement sign (pain when bringing the knee up towards the chest and then rotating it inward towards the opposite shoulder); or

  - Flexion Abduction External Rotation (FABER) provocation test (the test is positive if it elicits similar pain as complained by the patient or range of motion of the hip is significantly decreased compared to the contra lateral hip); or

  - Posterior inferior impingement test (the test is positive if it elicits similar pain as complained by the patient).

- Failure to improve with greater than three months of conservative treatment (e.g., physical therapy, activity modification, non-steroidal anti-inflammatory medications, intra-articular injection, etc.); and

001329

- Radiographic evidence of FAI; and

- Absence of advanced arthritis.

## 5.0 EXCLUSIONS

**5.1** Ligament replacement with absorbable copolymer carbon fiber scaffold is unproven.

**5.2** Prolotherapy, joint sclerotherapy and ligamentous injections with sclerosing agents (HCPCS procedure code M0076) are unproven.

**5.3** Trigger point injection (CPT procedure codes 20552 and 20553) for migraine headaches.

**5.4** Cervical TDR, three or more levels (CPT procedure code 0375T), is unproven.

**5.5** Removal of cervical TDR, three or more levels (CPT procedure code 0095T), is unproven. Also, see Section 1.1.

**5.6** Lumbar TDR, two or more levels (CPT procedure codes 0163T and 0165T) is unproven.

**5.7** Removal of lumbar TDR, each additional level (CPT procedure code 0164T), is unproven.

**5.8** Low Energy (LE) or radial ESWT for the treatment of plantar fasciitis is unproven. Any form of ESWT for the treatment of lateral epicondylitis is unproven.

**5.9** Interlaminar/interspinous process devices (CPT procedure codes 22867-22870, and HCPCS code C1821, including, but not limited to, interspinous distraction devices and interspinous stabilizers, for the treatment of neurogenic and/or secondary to lumbar spinal stenosis are unproven.

**5.10** Osteochondral allograft of the humeral head with meniscal transplant and glenoid microfracture in the treatment of shoulder pain and instability is unproven.

**5.11** Thermal Intradiscal Procedures (TIPs) (CPT procedure codes 22526, 22527, 62287, and Healthcare Common Procedure Coding System (HCPCS) code S2348) are unproven. TIPs are also known as: Intradiscal Electrothermal Annuloplasty (IEA), Intradiscal Electrothermal Therapy (IDET), Intradiscal Thermal Annuloplasty (IDTA), Percutaneous Intradiscal Radiofrequency Thermocoagulation (PIRFT), Coblation Percutaneous Disc Decompression, Nucleoplasty (also known as Percutaneous Radiofrequency (RF) Thermomodulation or Percutaneous Plasma Diskectomy), Radiofrequency Annuloplasty (RA), Intradiscal Biacuplasty (IDB), Percutaneous (or Plasma) Disc Decompression (PDD), Targeted Disc Decompression (TDD), Cervical Intradiscal RF Lesioning.

**5.12** Spinal manipulation under anesthesia (CPT procedure codes 00640 and 22505) for the treatment of back pain is unproven.

**5.13** Minimally Invasive Lumbar Decompression (mild®) for the treatment of DDD and/or spinal stenosis is unproven.

**5.14** Athletic pubalgia surgery is unproven.

## 6.0 EFFECTIVE DATES

**6.1** February 6, 2006, for percutaneous vertebroplasty and balloon kyphoplasty.

**6.2** May 1, 2008, for TAR.

**6.3** May 1, 2008, for core decompression of the femoral head.

**6.4**  December 24, 2012, for single-level, cervical TDR using an FDA approved cervical artificial intervertebral disc.

**6.5**  December 2, 2013, for HE ESWT for plantar fasciitis.

**6.6**  May 21, 2014, for hip resurfacing for treatment of DJD of the hip.

**6.7**  May 1, 2015, for meniscal allograft transplant of the knee.

**6.8**  July 27, 2015, for two-level cervical TDR using an FDA approved cervical artificial intervertebral disc.

**6.9**  August 23, 2016, Minimally Invasive Surgery (CPT procedure code 27279) for the treatment of sacroiliac joint pain is proven.

**6.10**  May 7, 2016, for ACI surgery, with Carticel, for the repair of patellar cartilage lesions.

**6.11**  December 13, 2016, for autologous cultured chondrocytes on porcine collagen membrane.

**6.12**  November 16, 2017, for single-level, lumbar TDR using an FDA approved lumbar artificial intervertebral disc.

**6.13**  May 4, 2017, for open, arthroscopic and combined hip surgery for treatment of FAI.

- END -