RANDY S. GROSSMAN
United States Attorney
GLEN F. DORGAN (SBN 160502)
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7665
Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MADDERN,<br><br>             Plaintiff,<br><br>v.<br><br>LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,<br><br>             Defendants. | Case No. 3:21-cv-01298-MMA-BLM<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:  June 27, 2022<br>TIME:  2:30 p.m.<br>DEPT:  3-C<br>JUDGE:  Hon. Michael M. Anello |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................. 1

II.   MATERIAL FACTS ........................................................................ 1

  A. Plaintiff's Initial Claim and DHA's Formal Review ........................... 1

  B. Overview of the Hearing Process Under 32 C.F.R. § 199.10(d) ............. 3

  C. Plaintiff's Evidentiary Hearing and the Final Decision ..................... 4

  D. Procedural History ........................................................................ 6

III.  STANDARD OF REVIEW ............................................................... 6

IV.   ARGUMENT ................................................................................. 8

  A. Defendant Is Entitled to Summary Judgment on Counts II and III ........ 8

    1. Only Proven Procedures Are Covered ........................................... 8

    2. DHA Considers the Superion Device to be Unproven ..................... 10

    3. Plaintiff Failed to Meet His Burden of Proof at the Hearing ........... 11

    4. The Agency Did Not Confuse Superion with X-Stop ..................... 14

  B. Defendant Is Entitled to Summary Judgment on Count I ................... 16

  C. Defendant Is Entitled to Summary Judgment on Counts V, VI, and VII ..... 17

    1. Counts V, VI, and VII Implicate Hearings "Required by Statute" ..... 17

    2. Plaintiff's Hearing Was Not "Required By Statute" ....................... 18

    3. Alternatively, Count VI Is Unsupported by the Evidence ............... 19

    4. Similarly, Count VII Is Unsupported by the Evidence ................... 20

  D. Defendant Is Entitled to Summary Judgment on Counts IV and VIII ..... 20

V.    CONCLUSION .............................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Aircraft Owners & Pilots Asso. v. Federal Aviation Administration*,
600 F.2d 965 (D.C. Cir. 1979)................................................................17

*Al Otro Lado, Inc. v. McAleenan*,
394 F. Supp. 3d 1168 (S.D. Cal. 2019)...........................................16, 21

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2011)...............................................................7

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*,
273 F.3d 1229 (9th Cir. 2001)..................................................................8

*ASSE Int'l v. Kerry*,
803 F.3d 1059 (9th Cir. 2015)................................................................17

*Auer v. Robbins*,
519 U.S. 542 (1997)..................................................................................9

*2-Bar Ranch Ltd. P'ship v. United States Forest Serv.*,
996 F.3d 984 (9th Cir. 2021)..................................................................18

*Benhoff v. United States DOJ*,
No. 16CV1095-GPC(JLB), 2017 WL 840879 (S.D. Cal. March 3, 2017)...................7

*Cal. Wilderness Coalition v. United States DOE*,
631 F.3d 1072 (9th Cir. 2011)..................................................................7

*Camp v. Pitts*,
411 U.S. 138 (1973)................................................................................17

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971)...........................................................................7, 17

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004)..................................................................7

*Flathead Irrigation Dist. v. Zinke*,
725 Fed. Appx. 507 (9th Cir. 2018).......................................................16

*Friends of Clearwater v. Dombeck*,
222 F.3d 552 (9th Cir. 2000)....................................................................8

*Friends of the Kalmiopsis v. United States Forest Serv.*,
1999 WL 893631 (9th Cir. October 15, 1999) (unpublished) ...................16

*Graham v. Fed Emergency Mgmt. Agency*,
149 F.3d 997 (9th Cir. 1998)...........................................................16, 17

*Hells Canyon Alliance v. United States Forest Serv.*,
227 F.3d 1170 (9th Cir. 2000)................................................................6

*Independent Acceptance Co. v. California*,
204 F.3d 1247 (9th Cir. 2000)...............................................................7

*International Asso. Of Machinists & Aerospace Workers v. National Mediation Bd.*,
425 F.2d 527 (D.C. Cir 1970).............................................................16

*Kleppe v. Sierra Club*,
427 U.S. 390 (1976)................................................................................7

*Lubow v. U.S. Dep't of State*,
923 F. Supp. 2d 28 (D.D.C. 2013).........................................................7

*National Ass'n of Psychiatric Treatment Ctrs. For Children v. Mendez*,
857 F. Supp. 85 (D.D.C. 1994)...........................................................18

*Ninilchik Traditional Council v. United States*,
227 F.3d 1186 (9th Cir 2000) ............................................................21

*Norton v. S. Utah Alliance*,
542 U.S. 55 (2004)...............................................................................16

*Mont. Snowmobile Ass'n v. Wildes*,
26 Fed. Appx. 762 (9th Cir. 2002).......................................................16

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) .................................................................7

*Palomar Med. Ctr. v. Sebelius*,
693 F.3d 151 (9th Cir. 2012) ...........................................................9, 14

*Raz Inland Navigation Co. v. I.C.C.*,
625 F.2d 258 (9th Cir. 1980) ..............................................................19

*Reed v Morton*,
480 F.2d 634 (9th Cir. 1973) .........................................................18, 19

*Repaka v. Beers*,
993 F. Supp. 2d 1214 (S.D. Cal. 2014)..................................................7

*River Runners for Wilderness v. Martin*,
593 F.3d 1064 (9th Cir. 2010)..........................................................8, 14

*San Luis Unit Food Producers v. United States*,
709 F.3d 798 (9th Cir. 2013) ..............................................................16

*Shinseki v. Sanders*,
556 U.S. 396 (2009)................................................................................7

*South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
723 F. Supp. 2d 1247 (E.D. Cal. 2010) ..................................................7

iii

*Telecommunications Research & Action Center v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) ........................................................................... 16

*Thomas Jefferson Univ. v. Shalala,*
512 U.S. 504 (1994) ......................................................................................... 9

*Repaka v. Beers,*
993 F. Supp. 2d 1214 (S.D. Cal. 2014) ........................................................... 7

*Webster v. Doe,*
486 U.S. 592 (1988) ......................................................................................... 21

*Western Radio Services Co., Inc. v. Espy,*
79 F.3d 896 (9ath Cir. 1996), *cert. denied,* 519 U.S. 822 (1996) .......... 6, 14

**STATUTES**

5 U.S.C. § 553 ............................................................................................ 17, 18

5 U.S.C. § 554 ........................................................................................ 17, 18, 19

5 U.S.C. § 556 ............................................................................................ 17, 18

5 U.S.C. § 557 ................................................................................... 17, 18, 20

5 U.S.C. § 706 .................................................... 7, 8, 14, 16, 17, 18, 20

10 U.S.C. §§ 1071-1110b ................................................................................. 18

10 U.S.C. § 1079 ................................................................................................. 4

32 C.F.R. § 199.2 ............................................................................................. 12

32 C.F.R. § 199.4 ...................................................... 1, 4, 5, 8, 11, 12, 13

32 C.F.R. § 199.10 ................................................... 3, 4, 10, 15, 18, 20

42 C.F.R. §§ 1395 *et seq.* ................................................................................ 8

**<u>Rules</u>**

Fed. R. Civ. P. 56 .............................................................................................. 7

# I.  INTRODUCTION

Plaintiff Ronald Maddern ("Plaintiff) is a retired U.S. Army service member and beneficiary under TRICARE for Life ("TRICARE") and Medicare. In 2017, Plaintiff underwent surgeries to implant an interspinous spacer device called the Vertiflex Superion ("Superion" or the "Superion device") into his vertebrae to treat his lumbar spinal stenosis. After the Defense Health Agency ("DHA") denied coverage for his surgeries, Plaintiff filed suit under the Administrative Procedures Act ("APA").

DHA denied coverage because governing regulations prohibit cost-sharing for unproven procedures, and the Superion device has not been proven to be safe and effective. At his administrative appeal hearing, Plaintiff had the burden of proving that the Superion device "has been the subject of well-controlled studies" which have established its "safety and efficacy" as compared with a surgical laminectomy, the "standard means of treatment" for spinal stenosis. 32 C.F.R. § 199.4(g)(15)(i)(C)-(D). Because the administrative record demonstrates that Plaintiff failed to meet this burden, Defendant is entitled to summary judgment on Plaintiff's claims that the agency's denial of coverage was arbitrary and capricious or in excess of statutory authority.

Defendant is also entitled to summary judgment on Plaintiff's remaining claims (which include, for example, allegations that the agency unlawfully delayed taking action, engaged in improper *ex parte* contacts, and mismanaged the recommended decision) because the claims are either moot, premised on statutes inapplicable to this case, or unsupported by the evidence in the record.

# II.  MATERIAL FACTS

## A.    Plaintiff's Initial Claim and DHA's Formal Review

Plaintiff underwent two procedures, one on August 7, 2017, and a second on November 9, 2017, to treat lumbar spinal stenosis. Separate Statement of Undisputed Facts ("SSUF") ¶¶ 1-2. The standard treatment for lumbar spinal stenosis is a laminectomy. SSUF ¶ 3; *see, e.g.,* AR 1059 ("Decompressive laminectomy is considered the gold standard surgical treatment when conservative options are exhausted"). As an alternative to this

procedure, however, Plaintiff's surgeries involved the insertion of the Superion device, which is an interspinous spacer that fits between the vertebrae with the goal of reducing compression. SSUF ¶¶ 1-3. Neither Plaintiff nor his medical provider requested prior approval from TRICARE or Medicare for these procedures. Post-surgery, Plaintiff submitted a claim to Medicare and TRICARE for reimbursement of the cost of the August 2017 procedure. SSUF ¶ 4. While Plaintiff's claim submission included documents regarding the November 2017 procedure, Plaintiff had yet to receive a bill for his second surgery when he filed his claim. SSUF ¶ 5. For the August 2017 procedure, Medicare paid $9,232.00. *Id*. TRICARE then denied the remaining reimbursement of $2,378. SSUF ¶ 10.

On March 5, 2018, Plaintiff appealed TRICARE's denial to the Wisconsin Physicians Service ("WPS"), the claims processor for TRICARE and Medicare. SSUF ¶ 11. Once again, Plaintiff did not submit a bill for the November 2017 procedure. SSUF ¶ 12. On March 12, 2018, WPS denied Plaintiff's appeal on the basis that the August 2017 procedure was excluded from coverage pursuant to the TRICARE Policy Manual (occasionally referred to herein as the "TPM"), which excluded all interspinous spacer devices associated with CPT code 0171T and HCPCS code C1821.[1] SSUF ¶¶ 6-8,13; *see* TPM Chpt 4, § 6.1, ¶ 5.9 (AR 1323). While Plaintiff identified his surgery in his claim by referencing CPT code 22869 and HCPCS code C1821, SSUF ¶ 6, CPT code 22869 replaced former CPT code 0171T in December 2016. SSUF ¶ 7. The TPM was then updated in 2019 to expressly exclude interspinous spacer devices associated with CPT code 22869. SSUF ¶9; *see* TPM, Chpt 4 § 6.1, ¶ 5.9 (incorporating Change 40, January 25, 2019 changes) (AR 1330)).[2]

---

[1]  Healthcare Common Procedure Coding System (HCPCS) and Current Procedural Terminology (CPT) codes refer to medical billing codes for particular procedures, services, and items. The codes do not establish an endorsement or opinion on the safety and efficacy of the product. *See* AR 1300.

[2] With the exception of this reference to the TPM in effect as of January 2019, all other references to the TPM are to TPM 6010.60-M, April 1, 2015 (incorporating June 30, 2017 changes), which was in effect in August 2017. *See* AR 1300. The TPM is available at https://manuals.health.mil/pages/DisplayManual.aspx?SeriesId=TP15&TP15=4#TP150 (last visited April 1, 2022), and relevant excerpts are included in the administrative record at AR 1316-1331. *See* Notice [ECF #31].

On April 9, 2018, Plaintiff requested formal review under 32 C.F.R § 199.10(c) from DHA's Office of General Counsel Appeals, Hearings, and Claims Collection Division, ("Hearings and Appeals"). SSUF ¶ 14. On December 7, 2018, Hearings and Appeals denied the claim after concluding that the Superion device was "unproven in the treatment" of Plaintiff's condition. SSUF ¶ 18. Hearings and Appeals then advised Plaintiff that he had a right to request a hearing pursuant to 32 C.F.R. § 199.10(d). *Id.*

### B.    Overview of the Hearing Process Under 32 C.F.R. § 199.10(d)

If a claim denial is upheld after reconsideration and a formal review by Hearings and Appeals, a beneficiary may seek a hearing before an independent Hearing Officer pursuant to 32 C.F.R. § 199.10(c).[3] The hearing is "a nonadversary, administrative proceeding" in which facts relevant to the appeal "are presented and evaluated in relation to applicable law, regulation, policies, and guidelines in effect at the time the care in dispute was provided." *Id.* § 199.10(c)(2); *see id.* § 199.10(d)(6) ("A hearing officer may not establish or amend policy, procedures, instructions or guidelines").

The scope of the hearing is defined and limited by the "amount in dispute," which is "the amount of money [TRICARE] would pay if the services . . . were determined to be authorized . . . ." *Id*. § 199.10(a)(7). At the hearing, DHA must first present the basis for the underlying TRICARE determination to the Hearing Officer. *Id.* § 199.10(d)(11)(vi). Then the beneficiary has the burden to "establish affirmatively by substantial evidence [his] entitlement under law . . . to the authorization of [TRICARE] benefits." *Id*. § 199.10(a)(3). Additionally, "[i]f a presumption exists under the provisions of [32 C.F.R Part 199], the appealing party must produce evidence reasonably sufficient to rebut the presumption." *See id*. § 199.10(a)(3).

At the conclusion of the hearing, the Hearing Officer provides a non-binding recommended decision to the Director, TRICARE, or the Director's designee ("the

---

[3] The Department of Defense Office of Hearings and Appeals provides Administrative Judges as Hearing Officers to DHA under a Memorandum of Agreement. *See* https://doha.ogc.osd.mil/DHA-TRICARE-CHAMPUS (last visited March 14, 2022).

Director"). *Id.* § 199.10(d)(12). The Director then either adopts, rejects, or refers the decision to the Assistant Secretary of Defense for Health Affairs. *Id.* § 199.10(e)(1). The Director "normally will take action with regard to the recommended decision within 90 days," but no formal deadline for the decision is prescribed. *Id.* If the Director concurs and adopts the recommended decision, then it constitutes the final agency action. *Id.* § 199.10(e)(1)(i).

## C.    Plaintiff's Evidentiary Hearing and the Final Decision

After Plaintiff requested a hearing, SSUF ¶ 19, Administrative Judge Nicole Noel ("AJ Noel") was assigned as the Hearing Officer. SSUF ¶ 20. The hearing was then scheduled for Thursday, August 22, 2019, in San Diego. *Id.*

In advance of the hearing, DHA presented its "Statement of Position" regarding the basis for the denial of Plaintiff's claim, which incorporated by reference the decision issued previously by Hearings and Appeals. SSUF ¶ 21. In its overview of the governing regulations, DHA explained that TRICARE "can only cost-share medically necessary supplies and services." *See* AR 831 (citing 10 U.S.C. § 1079(a)(13) and 32 C.F.R. § 199.4(a)(1)(i)). A medical device is not "medically necessary" if its safety and efficacy are "unproved." 32 C.F.R. § 199.4(g)(15). Moreover, a medical device is presumed to be unproven "[u]nless reliable evidence shows that [the device] has been the subject of well-controlled studies of clinically meaningful endpoints, which have determined . . . its safety, and its efficacy as compared with standard means of treatment." *Id.* § 199.4(g)(15)(i)(C).

DHA then reviewed the history of its evaluation of the safety and efficacy of interspinous spacer devices. Notably, neither FDA approval of a medical device nor the coverage policies of Medicare are "sufficient to conclude [a] device is proven." SSUF ¶ 8; *see* AR 832-833 (citing TMP Chpt. 1, § 2.1, ¶ 7.0 and Chpt. 8, § 5.1, ¶ 2.2 (AR 1318, 1325). Instead, when a new medical device is introduced, DHA's Medical Benefits and Reimbursement Division ("MB&RD") is responsible for evaluating whether the device is "supported by scientific peer reviewed literature," as required by the governing regulations. SSUF ¶ 15. On five separate occasions between 2007 and 2017, MB&RD evaluated the available medical literature regarding interspinous spacer devices and found "a lack of well-

controlled studies with a surgical comparator as a factor precluding coverage." SSUF ¶ 16. Accordingly, at the time Plaintiff received his care, the TRICARE Policy Manual expressly excluded interspinous spacer devices from coverage. SSUF ¶ 8; *see* AR 833; TPM, Chpt 4, § 6.1, ¶ 5.9 (AR 1323).

MB&RD evaluated interspinous spacer devices again in 2018 in response to Plaintiff's claim, and it issued a Medical Benefit Determination ("MBD") finding no new evidence warranting a change in position. SSUF ¶ 17. Citing the MBD, DHA advised in its Statement of Position that the Superion device "remains unproven in the treatment of [Plaintiff's] condition within the meaning of TRICARE regulation and policy." *See* AR 834.

Based on DHA's Statement of Position, Plaintiff faced the difficult burden of presenting evidence at the hearing to overcome the presumption that his claim was uncovered. Pursuant to 32 C.F.R. § 199.4(g)(15)(i)(C), that burden obligated Plaintiff to present "reliable evidence" demonstrating that the Superion device "has been the subject of well-controlled studies of clinically meaningful endpoints, which have determined . . . its safety and its efficacy as compared with the standard means of treatment," a surgical laminectomy. Plaintiff, however, failed to produce any such evidence at the hearing. Instead, Plaintiff presented (1) proof of FDA premarket approval of Superion; (2) proof of Medicare coverage; (3) anecdotal testimony regarding the success of his surgery; and (4) some select medical articles, all of which failed to compare the safety and efficacy of the Superion device to a laminectomy. SSUF ¶¶ 22-23; *See* AR 1305.

On January 21, 2020, AJ Noel issued her recommended decision to the Director's designee, Dr. Kenneth Yale, the Chief, TRICARE Health Plan. SSUF ¶ 24. In her recommended decision, AJ Noel acknowledged that Plaintiff underwent two procedures, but she concluded that the only "amount in dispute" was the charge associated with the August 2017 procedure. AR 1298, 1303. Turning to the evidence submitted by Plaintiff, AJ Noel noted (1) "FDA and Medicare approval of [the Superion device] is not binding on TRICARE;" (2) while the surgery "undoubtedly restored [Plaintiff's] quality of life and independence," this outcome did "not qualify the procedure for coverage under the

1   TRICARE program;" and (3) the medical articles submitted by Plaintiff were inadequate

2   because they did not "directly compar[e] the efficacy of the [Superion device] to that of

3   laminectomy." AR 1304-05. Accordingly, AJ Noel concluded that the Superion device "has

4   not been shown to be safe and effective." AR 1306.

5         On May 18, 2021, Dr. Yale issued DHA's final decision, denying the appeal. SSUF

6   ¶ 25. The final decision adopted and incorporated the findings of AJ Noel's recommended

7   decision. *See* AR 1311-14.

8         **D.    Procedural History**

9         Plaintiff filed his complaint on July 19, 2021, and he amended his complaint on

10  January 24, 2022. *See* Complaint [ECF #1], FAC [ECF #21]. In December 2021, Plaintiff

11  requested leave to conduct discovery, but his request was denied by Magistrate Judge

12  Barbara L. Major. Order [ECF #23]. On April 22, 2022, this Court then overruled Plaintiff's

13  objections to Magistrate Judge Major's discovery order. Order [ECF #29]. Accordingly,

14  this matter is now suitable for resolution based solely on the administrative record.

15        **III.  STANDARD OF REVIEW**

16        Under the APA, a final agency action will only be set aside if it is "arbitrary,

17  capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

18  706(2)(A); *Hells Canyon Alliance v. United States Forest Serv.*, 227 F.3d 1170, 1176-77

19  (9th Cir. 2000). The Ninth Circuit holds:

20        Review under the arbitrary and capricious standard is narrow and the
         reviewing court may not substitute its judgment for that of the agency. We
21       must determine whether the agency's decision was made after considering
         the relevant factors and whether the agency made a clear error of judgment.
22       We may reverse the agency's decision as arbitrary or capricious only if the
         agency relied on factors Congress did not intend it to consider, entirely
23       failed to consider an important aspect of the problem, offered an
         explanation that ran counter to the evidence before the agency, or offered
24       one that is so implausible that it could not be ascribed to a difference in
         view or the product of agency expertise.
25

26  *Western Radio Services Co., Inc. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996), *cert. denied*,

27  519 U.S. 822 (1996) (internal citations omitted). The standard is highly deferential, and the

28  agency is entitled to a presumption that its action is valid if a reasonable basis exists for its

6

decision. *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976); *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000). Moreover, all judicial review of a final agency action is subject to the rule of prejudicial error. 5 U.S.C. § 706; *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220 (9th Cir. 2004). For prejudicial error under the APA, the Ninth Circuit applies the definition of harmless error, wherein the agency error had no bearing on the procedure used or the substantive decision reached. *Cal. Wilderness Coalition v. United States DOE*, 631 F.3d 1072, 1090 (9th Cir. 2011). The party attacking a final agency action has the burden to show that an agency's error is harmful. *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Summary judgment is appropriate when the pleadings and evidence show "there is no genuine dispute as to any material fact and [the] movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, the standard in Rule 56 does not apply due to the Courts' limited role in reviewing administrative records under the APA. *See South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 723 F. Supp. 2d 1247, 1256 (E.D. Cal. 2010). Rather, the Court determines as a matter of law whether "the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). In other words, the "district judge sits as an appellate tribunal." *Benhoff v. United States DOJ*, No. 16CV1095-GPC(JLB), 2017 WL 840879, *4 (S.D. Cal. Mar. 3, 2017) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2011)). The parties' summary judgment motions serve "as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review," *Lubow v. U.S. Dep't of State*, 923 F. Supp. 2d 28, 34 (D.D.C. 2013).

The dispositive question therefore becomes whether the agency's "decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S 402, 416 (1971). Thus, the scope of judicial review is narrow, "and a court is not to substitute its judgment for that of the agency[.]" *Repaka v. Beers*, 993 F. Supp. 2d 1214, 1218 (S.D. Cal. 2014) (quoting

*Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 556 (9th Cir. 2000)). In other words, a court only "determines whether the agency's decision is 'founded on a rational connection between the facts found and the choices made[.]" *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (quoting *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1243 (9th Cir. 2001)).

## IV.   ARGUMENT

### A.   Defendant Is Entitled to Summary Judgment on Counts II and III.

Plaintiff asserts in Counts II and III of his FAC that DHA's denial of benefits was arbitrary and capricious, an abuse of discretion, and not in accordance with law in violation of 5 U.S.C. §§ 706(2)(A) and (2)(C). FAC 8:10-9:9, 9:24-10:8. Defendant is entitled to summary judgment on these Counts because (1) agency regulations restrict coverage only to those procedures that are proven to be safe and effective; (2) agency policies exclude interspinous spacer devices like Superion from coverage; and (3) Plaintiff failed to present reliable evidence demonstrating that the Superion device is safe and effective when compared to the standard means of treatment, the laminectomy.

### 1.   Only Proven Procedures Are Covered.

"By law, [TRICARE] can only cost-share medically necessary supplies and services," and any "medical treatment or procedure, the safety and efficacy of which have not been established, . . . is unproved and cannot be cost-shared." 32 C.F.R. § 199.4(g)(15). A medical procedure "is unproven . . . [u]nless reliable evidence shows that any medical treatment or procedure has been the subject of well-controlled studies of clinically meaningful endpoints, which have determined its . . . safety, and its efficacy as compared with standard means of treatment or diagnosis." *Id*. § 199.4(g)(15)(i)(C).

In his FAC, Plaintiff does not challenge this regulation restricting coverage to procedures proven to be safe and effective as compared with the standard means of treatment. Instead, he argues that FDA approval of a device is sufficient to meet this requirement, and he focuses on general statements in the TRICARE Policy Manual that state, "Services and supplies required in the diagnosis and treatment of illness or injury

involving the musculoskeletal system are covered" and "[FDA] approved surgically implanted devices are also covered." *See* FAC ¶ 1 (citing TPM Chpt 4, § 6.1, ¶ 4.1 (AR 1321)); *see also* FAC ¶¶ 29, 30. Yet, this passage cannot be read in isolation from the rest of the TPM. In particular, Section 5.1 of Chapter 8 of the TPM applies specifically to medical devices and states:

> Not all FDA approved devices are covered.  Coverage of a medical device is subject to all other requirements of the law, rules, and policy governing TRICARE.  If the device is used for a noncovered or excluded indication, benefits may not be allowed.

SSUF ¶ 8. The TPM also expressly states that when a device is considered unproven under TRICARE regulations and policy, FDA approval is merely a condition precedent to determining whether cost-sharing should be allowed. *Id.* For example, the predecessor to Superion, the X-Stop device, also enjoyed FDA premarket approval, but the product was later removed from the market for safety reasons and is now expressly excluded from coverage. AR 1277, 1330. Plaintiff conveniently ignores this fact when he suggests that FDA approval is controlling.

Plaintiff also suggests that Medicare policy creates a basis for coverage. *See* FAC ¶ 34. Yet, controlling DHA policy expressly states that Medicare coverage is insufficient to establish the safety and efficacy of a procedure for purposes of TRICARE coverage. SSUF ¶ 8. While Medicare coverage may be considered, it is not dispositive, and Medicare is a separate government program with separate regulations. *See* 42 C.F.R. § 1395, *et seq.*

Judicial review gives substantial deference to an agency's interpretation of its own regulations. *Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1160 (9th Cir. 2012) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). An agency's "interpretation is controlling unless it is 'plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Auer v. Robbins*, 519 U.S. 542, 461 (1997)). A reviewing court defers to an agency's interpretation unless the "plain language" of the regulation or the regulatory intent at the time of promulgation suggests an alternative reading. *Id.* (citing *Thomas Jefferson*, 512 U.S. at 512). Here, DHA has interpreted its regulations and policies in a manner that

recognizes (1) a device must be proven to be safe and effective to be covered; (2) FDA approval is a condition-precedent to cost-sharing but is not dispositive; and (3) Medicare coverage is not dispositive. Indeed, to conclude otherwise would be to effectively re-write TRICARE policy and regulations, which is disallowed under 32 C.F.R. § 199.10(a). The Court, therefore, should afford deference to the agency's interpretation and reject Plaintiff's arguments that FDA and Medicare approval create a *per se* finding that the Superion device is covered by TRICARE.

## 2. DHA Considers the Superion Device to be Unproven.

TRICARE will not pay for a medical service if an exclusion or limitation applies. 32 C.F.R. § 199.4(a)(2); *see also* FAC ¶ 10. TRICARE regulations exclude cost-sharing of "[a]ny drug, device, or medical treatment or procedure" where the "safety and efficacy" of the device, treatment or procedure "have not been established." 32 C.F.R. § 199.10(g)(15); *see* SSUF ¶ 8; *see also* AR 1303.

While the TRICARE policy manual in effect at the time of Plaintiff's surgeries did not expressly reference Superion as an excluded device, the manual excluded *all* interspinous spacer devices associated with CPT procedure code 0171T and HCPCS code C1821. SSUF ¶ 8. On December 31, 2016, CPT code 0171T expired and was replaced with CPT code 22869. SSUF ¶ 7. The TPM applicable at the time of the procedure did not update the change in codes. SSUF ¶ 9. Nevertheless, because Plaintiff used the new CPT code (22869) when he submitted his claim to TRICARE, the claim fell within the express exclusion applicable to the old CPT code (0171T). *See* AR 1305. Indeed, Plaintiff also used HCPCS code C1821 when submitting his claim to TRICARE; this alone demonstrates that the procedure was expressly not covered under the TPM. *Id.*; *see* SSUF ¶ 8.

Regardless, when Plaintiff appealed, DHA expressly requested that MB&RD evaluate once again whether Superion "is proven and coverable."[4] SSUF ¶ 17; *see* AR 136-

---

[4] In addition to requesting a review from MB&RD, DHA OGC contacted the manufacturer requesting additional information about Superion, which the Agency considered, but did not find compelling. AR 1304.

137. The reason for the request was because of the expiration of the original CPT code and Superion's FDA approval. *Id*. After completing a thorough evaluation, MB&RD concluded that there remains "insufficient evidence to recommend the use of [interspinous spacer devices] for the treatment of [lumbar spinal stenosis]." AR 788; *see* SSUF ¶ 18.

Both AJ Noel and the Director independently concluded that the absence of an express reference to Superion or the new CPT code (22869) in the provisions of the TPM excluding interspinous spacer devices did not create a "substantive" coverage issue:

> [Plaintiff] is correct that the TPM did not specifically address the status of [the Superion device] or the CPT code 22869. However, this defect is administrative, not substantive and did not create a loophole for the coverage of the Superion device or represent a change in the long-standing DHA position classifying the use of [interspinous spacer devices] as unproven care.

AR 1305, 1314. Instead, they concluded that "[t]he TPM in effect" in 2017 "made it sufficiently clear that procedures performed under the codes related to the insertion of interspinous devices were considered unproven care and would not be covered." *Id*.

Given the foregoing, Plaintiff faced a substantial burden at the underlying administrative hearing to present "reliable evidence" demonstrating that the safety and efficacy of the Superion device was favorably compared with laminectomies. 32 C.F.R. § 199.4(g)(15)(i)(C). Plaintiff failed to meet this burden.

### 3.    Plaintiff Failed to Meet His Burden of Proof at the Hearing.

TRICARE policy allows claimants to demonstrate the safety and effectiveness of excluded or unproven devices and procedures. *See* AR 1318. However, because (1) the TRICARE policy manual expressly excluded interspinous spacer devices associated with CPT code 0171T and HCPCS code C1821; (2) MB&RD determined that the Superion device was "the same class of devices" as those expressly excluded by the TPM; and (3) MB&RD "recommended for the sixth time since 2007, and for the same reasons, that the [Superion device] should not be covered, because it is unproven and presented concerns about safety and durability," AJ Noel found that a presumption existed that Plaintiff was "not entitled to cost-sharing for that device and procedure." AR 1304.

Because a presumption against coverage existed, Plaintiff's burden of proof at the hearing required that he present "evidence reasonably sufficient to rebut the presumption," including "reliable evidence" that the Superion device "has been the subject of well-controlled studies of clinically meaningful endpoints, which have determined [the device's] safety, and its efficacy as compared with standard means of treatment." 32 C.F.R. §§ 199.4(g)(15)(C)-(D), 199.10(a)(3); *see* AR 1035, 1312-13.

The governing regulations expressly define the term "reliable evidence":

(1)    As used in § 199.4(g)(15), the term reliable evidence means only:

(i) Well controlled studies of clinically meaningful endpoints, published in refereed medical literature.

(ii) Published formal technology assessments.

(iii) The published reports of national professional medical associations.

(iv) Published national medical policy organization positions; and

(v) The published reports of national expert opinion organizations.

(2)    The hierarchy of reliable evidence of proven medical effectiveness, established by (1) through (5) of this paragraph, is the order of the relative weight to be given to any particular source. With respect to clinical studies, only those reports and articles containing scientifically valid data and published in the refereed medical and scientific literature shall be considered as meeting the requirements of reliable evidence. Specifically not included in the meaning of reliable evidence are reports, articles, or statements by providers or groups of providers containing only abstracts, anecdotal evidence or personal professional opinions. Also not included in the meaning of reliable evidence is the fact that a provider or a number of providers have elected to adopt a drug, device, or medical treatment or procedure as their personal treatment or procedure of choice or standard of practice.

32 C.F.R. § 199.2. Additionally, reliable evidence must show a "consensus among experts" that the device or procedure is safe and effective "**as compared with the standard means of treatment of diagnosis[.]**" 32 C.F.R. 199.4(g)(15)(D) (emphasis added).[5]

---

[5] During his closing remarks at the administrative hearing, Plaintiff's counsel argued, incorrectly, that "there is no regulatory requirement to 'compare the care under review to the standard means of treatment or diagnosis.'" AR 1292.

Ultimately, Plaintiff could not overcome this presumption for two principal reasons. First, as previously stated, FDA pre-market and Medicare approval is not dispositive for safety and effectiveness. SSUF ¶ 8. Second, none of Plaintiff's pre-hearing submissions or his post-hearing submissions documented any comparison of the safety and efficacy of Superion when compared to a laminectomy. SSUF ¶ 23. Indeed, five of the eight pre-hearing submissions by Plaintiff were duplicates of studies the agency had submitted pre-hearing, and all relevant articles were considered by MB&RD and found to be insufficient to establish Superion as a proven device. *See* AR 1303; *see also* AR 774 ("The evidence submitted with the appeal did not alter the recommendation of this MBD").

Plaintiff's remaining evidence was largely anecdotal, constituting his own testimony, testimony of Mrs. Maddern, and the testimony of Dr. Michael Verdolin, the treating provider. As the agency found, Plaintiff's and Mrs. Maddern's testimony only demonstrated that Superion yielded positive results and increased mobility for him personally. AR 1299, 1305, 1314. This anecdotal testimony did not provide the reliable evidence demonstrating a "consensus among experts" that Superion is safe and effective as compared with a laminectomy. 32 C.F.R. 199.4(g)(15)(D); TPM, Chpt 1, Sect. 2.1, ¶¶ 2.3. & 2.4 (AR 1318).

Dr. Verdolin's testimony was critical of some of the articles the agency produced, but he admitted that a laminectomy is the standard means of treatment. AR 1196, 1199 ("So that's a laminectomy. But until we had other options to fill the void, that is all that was available and therefore, it's called the gold standard, because it was the only standard we had."). The remainder of Dr. Verdolin's testimony focused on Plaintiff's candidacy for a laminectomy versus implanting the Superion, but the testimony shed no light on whether there was a "consensus among experts" that Superion was as safe and effective. *See, generally,* AR 1199-1267.

For its part, the agency considered all of the medical studies and testimony. It also constrained itself to its own regulations, policy, and statutory authority, finding:

> There have not been any studies directly comparing the efficacy of the [Superion device] to that of laminectomy, only studies comparing the efficacy of the [Superion] to the X-STOP [interspinous spacer device]. The

> articles in the record establish that [Superion] is not inferior to the now-discontinued XSTOP device as a treatment for LSS. This finding of non-inferiority is not sufficient to reclassify the [Superion] device from unproven to proven care.

AR 1305; *see also* 1314.

The agency's final decision does not run counter to any statute or evidence before the agency, nor is it in anyway implausible. *See Western Radio Services*, 79 F.3d at 900.[6] Here, the Agency is afforded substantial discretion to interpret its own regulations and policy, and Plaintiff has not overcome his heavy burden to show that the Agency erred. *Palomar Med. Ctr.*, 693 F.3d at 1160. The final decision was rationally based on the "facts found and the choices made[.]" *See River Runners for Wilderness*, 593 F.3d at 1070. Therefore, this Court should grant summary judgment in favor of Defendant.

### 4.    The Agency Did Not Confuse Superion with X-Stop.

Plaintiff alleges that the Hearing Officer (AJ Noel) and the Director (Dr. Yale) "confused" the X-Stop product with Superion. FAC ¶ 59. This assertion is simply not true. AJ Noel expressly compared Superion with X-Stop:

> The previous version of the device [the X-Stop] accomplished the implantation through open surgery performed under general anesthesia. The Vertiflex Superion is different from its predecessor in that the device can be implanted laparoscopically by an interventional pain specialist, as is the case here. The Vertiflex Superion is also different from its predecessor in that it is anchored to the spinal column by tines, largely eliminating issues with the device migrating from its point of implantation over time. (Ex. 1; Ex. 2; Ex. 9).

AR 1299. The exhibits referenced by AJ Noel are contained within Agency Exhibit 9 submitted at the hearing. AR 139-707; *see* AR 1281. Exhibit 9 includes a Pre-market Approval and Summary of Safety and Effectiveness Data on the Superion device, as well as forty-three articles about interspinous spacer devices and treatments for spinal stenosis.

---

[6] To secure relief under 5 U.S.C. 706(2)(C), a plaintiff must demonstrate that the agency has acted "in excess of statutory jurisdiction." It is incumbent on Plaintiff, therefore, to expressly identify the statute that he contends was violated in this case. Plaintiff has failed to do so here, *see* FAC ¶¶ 73-75, and his failure alone demonstrates that Count III lacks merit.

1  AR 168-707. These articles expressly considered both the X-Stop and Superion, which AJ

2  Noel relied upon to make her factual findings.

3  　　　　AJ Noel further demonstrated her understanding of the difference by recognizing that

4  there have only been studies comparing Superion to X-Stop instead of the required studies

5  comparing Superion to a laminectomy. AR 1305. Moreover, during the hearing, AJ Noel

6  expressly asked Plaintiff's expert, Dr. Verdolin, about "the distinguishing factors" between

7  the X-Stop and Superion:

8  　　　　We talked about X-STOP. And so now, one of the distinguishing factors
　　　　between X-STOP and the Superion device -- is it proper to think of it as a
9  　　　　kind of 2.0? I know it's different companies, different manufacturers. Or
　　　　the devices and approaches are so different that they should not be
10 　　　　considered kind of --the Superion should not be considered as kind of like
　　　　a progression from the X-STOP, if my question is making sense?

11

12 AR 1251-1250; *see also* AR 1248-1250. She then engaged in an extensive exchange with

13 Dr. Verdolin about Superion, further demonstrating she understood the difference between

14 the two products. AR 1250-1260. Indeed, even Plaintiff's expert recognized and

15 complimented AJ Noel's grasp of the issues before her. AR 1256 ("So, your nuanced

16 question speaks to actually a very good grasp of this entire situation.").

17 　　　　Dr. Yale also demonstrated that he understood the difference. He expressly found

18 that the Superion device "is not inferior" to the discontinued X-Stop device. AR 1314.

19 However, neither he nor AJ Noel found that fact to be sufficient to reclassify Superion as

20 proven care. *Id*; AR 1305.

21 　　　　The Administrative Record establishes that the agency understood the difference

22 between the Superion device and X-Stop throughout the entire proceeding. Plaintiff,

23 therefore, has failed to demonstrate that the Agency's decision is arbitrary and capricious,

24 or contrary to law.[7]

25

26 　　　　[7] Plaintiff alleges that DHA's decision did not address the November 9, 2017, procedure.
FAC ¶ 58. The reason is that Plaintiff failed to allege an amount in controversy at the
27 administrative level when he did not submit a bill for the November 9, 2017, procedure. *See*
32 C.F.R. § 199.10(7). Regardless, the facts and arguments in this case apply to both
28 procedures, and the Agency will treat any order from this court as applying to both.

**B.    Defendant Is Entitled to Summary Judgment on Count I**.

Count I seeks relief under 5 U.S.C. § 706(1), which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." Here, it appears Plaintiff takes issue with (1) the timing of AJ Noel's recommended decision, and (2) the timing of the final decision. *See* FAC ¶¶ 43-45, 51-52.[8] However, because the record demonstrates that both the recommended decision and the Final Decision were issued before Plaintiff initiated this case, the Court lacks jurisdiction to provide any relief to Plaintiff.

Specifically, when relief is sought under Section 706(1), a reviewing court may only "compel the agency to act" and "has no power to specify what the action must be." *Norton v. S. Utah Alliance*, 542 U.S. 55, 65 (2004); *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1194 (S.D. Cal. 2019). Furthermore, federal courts consider judicial review of an agency's failure to act as an interlocutory claim and not a determination on the merits of a case. *See Mont. Snowmobile Ass'n v. Wildes*, 26 Fed. Appx. 762, 763 (9th Cir. 2002); *Friends of the Kalmiopsis v. United States Forest Serv.*, 1999 WL 893631 (9th Cir. October 15, 1999) (unpublished) (declining jurisdiction under 5 U.S.C. § 706(1)); *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984); *International Asso. of Machinists & Aerospace Workers v. National Mediation Bd.*, 425 F.2d 527, 535 (D.C. Cir. 1970). To establish jurisdiction under § 706(1), therefore, a plaintiff must assert that an agency has failed to take a required and discrete action. *See Flathead Irrigation Dist. v. Zinke*, 725 Fed. Appx. 507, 510 (9th Cir. 2018); *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 803-804 (9th Cir. 2013).

When AJ Noel issued her recommended decision and Dr. Yale issued his final decision, any interlocutory jurisdiction under § 706(1) was dissolved. SSUF ¶¶ 24-25; *see Norton*, 542 U.S. at 65. Furthermore, once the recommended decision and the final decision were issued, any injury caused by the delay was mooted, which implicates Plaintiff's standing to raise a claim under § 706(1). *See Graham v. Fed. Emergency Mgmt. Agency*,

---

[8] In support of Count I, Plaintiff does not expressly identify what action has been withheld or delayed. *See* FAC ¶¶ 63-65.

149 F.3d 997, 1001 (9th Cir. 1998) (applying doctrine of standing in APA appeals). Plaintiff must maintain a personal interest at all stages of review. *Id*. The Court, therefore, should grant summary judgment in favor of Defendant and against Plaintiff on Count I.

**C.    Defendant Is Entitled to Summary Judgment on Counts V, VI, and VII**.

Counts V, VI, and VII assert violations of 5 U.S.C. §§ 554(d)(1)-(2), 557(c), and 706(2)(E). Each of these provisions are applicable only in the case of an administrative hearing "required by statute," and, as such, are inapplicable in this case.

**1.    Counts V, VI, and VII Implicate Hearings "Required by Statute."**

Section 554 states, in its introductory paragraph, "This section applies . . . in every case of adjudication required by statute . . . ." *Id*. § 554(a). In Section 557, the same limitation becomes evident through reference to other, related provisions. Specifically, Section 557 "applies . . . when a hearing is required to be conducted in accordance with section 556." *Id*. § 557(a). Section 556's introductory section states that it applies only "to hearings required by section 553 or 554." *Id*. § 556(a). Section 553 concerns agency rule-making authority and is inapplicable here. And, while Section 554 concerns adjudications, it is expressly limited to a "case of adjudication required by statute." *Id*. § 554(a). Finally, Section 706(2)(E), by its express terms, affords relief when an agency decision is found to be "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute." *See Citizens to Pres. Overton Park, Inc.,* 401 U.S. at 414; *see also Camp v. Pitts*, 411 U.S. 138, 141-42 (1973); *Aircraft Owners & Pilots Asso. v. Federal Aviation Administration*, 600 F.2d 965, 969 (D.C. Cir. 1979) (invoking substantial evidence review under APA only under 5 U.S.C. §§ 556, 557).[9]

///

---

[9] The Ninth Circuit has held that "as a practical matter, the arbitrary and capricious standard incorporates the substantial evidence test[.]" *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1072 (9th Cir. 2015). Accordingly, as an alternative basis for summary judgment, Count V may be resolved in Defendant's favor on the same grounds set forth above regarding Counts II and III.

### 2.    Plaintiff's Hearing Was Not "Required by Statute."

The administrative hearing regarding Plaintiff's claim was not "required by statute." Indeed, the governing statute for TRICARE, 10 U.S.C. §§ 1071 - 1110b, contains no requirement for any adjudicatory hearings. *National Ass'n of Psychiatric Treatment Ctrs. for Children v. Mendez*, 857 F. Supp. 85, 94 (D.D.C. 1994) (held 10 U.S.C. §§ 1071 *et seq.* "sets forth no requirement for formal adjudication").[10]

Congress recognizes three types of final agency actions: (1) those that arise during the promulgation of regulations under 5 U.S.C. § 553; (2) adjudications where Congress mandated a formal administrative hearing by statute, and (3) all other adjudications not mandated by statute. For final agency actions where a hearing is required by statute, Congress created the formal adjudicative procedures of 5 U.S.C. §§ 554, 556, and 557. *See e.g., 2-Bar Ranch Ltd. P'ship v. United States Forest Serv.*, 996 F.3d 984, 994 (9th Cir. 2021). Moreover, to further demonstrate this distinction, Congress also established a unique scope of review for statutorily mandated formal adjudications: the "substantial evidence" standard of 5 U.S.C. § 706(2)(E) rather than the arbitrary and capricious standard. *Compare* 5 U.S.C. § 706(2)(E) *with* § 706(2)(A).

Accordingly, where, as here, the adjudication process is created by regulations, rather than statutes, sections 554(d), 557(c), and 706(2)(E) do not apply. *See, e.g., Reed v. Morton*, 480 F.2d 634, 643 (9th Cir. 1973) (holding that section 554(d) did not apply because there was no statutory or constitutional requirement the agency decision be preceded by a formal hearing). The Court, therefore, should grant summary judgment in favor of Defendant as to Counts V, VI, and VII.

///

---

[10] The TRICARE regulations governing adjudications were established in response to *Edison v. Department of Defense*, Case No. C76-364A (N.D. Ga. August 30, 1976) (unpublished), which held that adjudications involving CHAMPUS, the predecessor to TRICARE, must meet minimal due process requirements, but "the exact form of the hearing should be left to agency discretion, except that the claimant should at least be provided with adequate notice and be allowed representation by counsel and be granted the opportunity to present evidence and cross-examine witnesses." For TRICARE, the regulatory scheme under 32 C.F.R. § 199.10 establishes an adjudicatory process in line with this holding.

### 3.   Alternatively, Count VI Is Unsupported by the Evidence.

Count VI, alleging *ex parte* communications prohibited by 5 U.S.C. § 554(d)(1)&(2), *see* FAC ¶ 83, fails for lack of evidence. SSUF ¶ 26. As has been previously determined by Magistrate Judge Major on Plaintiff's discovery motion, *ex parte* communications are only improper if they are "relevant to the merits of the proceeding." Order [ECF #23], 6:24-26 (quoting 5 U.S.C. § 557(d)(1)). "An *ex parte* communication that requests a status report or addresses other procedural matters that do not affect the way a case is decided is not improper." *Id.*, 26-7:5 (citing 5 U.S.C. § 551 and *Raz Inland Navigation Co., Inc. v. I.C.C.*, 625 F.2d 258, 260 (9th Cir. 1980)). Applying this law, Magistrate Judge Major concluded that "Plaintiff has not identified any improper *ex parte* communication" and "merely asserts the conclusory argument that because there were *ex parte* communications regarding the status of the case and other procedural matters, there must have been improper *ex parte* communications relevant to the merits of the proceeding." *Id.*, 7:6-10. This Court later overruled Plaintiff's objections to Magistrate Judge Major's findings. Order [ECF #29], 7:14-8:12.

Given the foregoing, Plaintiff is unable to produce any evidence in support of his allegations of improper *ex parte* communications. *See* FAC ¶¶ 45-50, 51-56, 63-66. Indeed, the matters addressed by Magistrate Judge Major were and remain outside the administrative record. *Compare* Emails, Exs. 5-10 [ECF #14-1] (highlighting post-hearing procedural communications) *with* Notice of Lodgment of Administrative Record [ECF #13] (demonstrating that those communications are not included in the record).[11] Defendant, therefore, is entitled to summary judgment on Count VI.

///

///

///

///

---

[11] These emails are not included in the Administrative Record because they have no bearing on the substantive issues involved in reaching the final decision.

### 4.    Similarly, Count VII Is Unsupported by the Evidence.

Under Count VII, Plaintiff alleges Defendant violated 5 U.S.C. § 557(c) by failing to "provide[] a copy of the recommended decision [and] a reasonable opportunity to submit exceptions to the recommended decision." FAC ¶ 85. [12] Because section 557(c) is limited to hearings "required by statute" and is inapplicable here, Plaintiff's allegation must be resolved based only on the governing TRICARE regulations. Those regulations expressly do not require that Plaintiff be provided a copy of the recommended decision and an opportunity to submit exceptions:

> At the conclusion of the hearing and after the record has been closed, the matter shall be taken under consideration by the hearing officer. Within the time frames previously set forth in this Section, the hearing officer shall submit to the Director, [TRICARE], or a designee, a written recommended decision containing a statement of findings and a statement of reasons based on the evidence adduced at the hearing and otherwise included in the hearing record.

32 C.F.R. § 199.10(d)(12). Consistent with this regulation, AJ Noel transmitted the recommended decision only to the Director, and that decision was later produced to Plaintiff as part of the Administrative Record. SSUF ¶ 24; *see* AR 1298-1306. Defendant, therefore, is entitled to summary judgment on Count VII.

### D.    Defendant Is Entitled to Summary Judgment on Counts IV and VIII.

In Count IV, Plaintiff alleges that Defendant violated 5 U.S.C. § 706(2)(D) because the final decision was "done without observance of the procedure required by law (*e.g.*, issuing a recommendation complying with the regulations, not providing a neutral trier of fact, and (on information and belief) engaging in *ex parte* communications)." FAC ¶ 78. Similarly, Count VIII asserts that Defendant violated Plaintiff's due process rights by engaging in *ex parte* communications. *Id.* ¶¶ 88-89. As such, Counts IV and VIII merely re-

---

[12]  Plaintiff also alleges that "neither the recommended decision nor final decision complies with the requirements to include all findings and conclusions." FAC ¶ 85. Though unclear from the pleading, this allegation is likely a reference to Plaintiff's contention that DHA's decision did not address the November 9, 2017, procedure. FAC ¶ 58. But, as explained above, Plaintiff failed to allege an amount in controversy at the administrative level when he did not submit a bill for the November 9, 2017, procedure. *See* 32 C.F.R. § 199.10(7). The only procedure at issue in the underlying administrative proceedings, therefore, was the August 10, 2017 procedure.

assert the same allegations at issue in Plaintiff's other causes of action. Because these allegations are duplicative of claims for which Defendant is entitled to summary judgment, these separate Counts must similarly fail.

Moreover, the assertion of a constitutional challenge does not affect the standard of review applicable to Plaintiff's APA claims. "While a right to judicial review of agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless specifically excluded." *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000) (citing *Webster v. Doe*, 486 U.S. 592, 607 (1988) (Scalia, J., dissenting)); *see also Al Otro Lado, Inc.*, 327 F. Supp. 3d at 1316. Therefore, the review is limited to the administrative record and DHA's governing regulations.

Because the Administrative Record is devoid of any evidence that Defendant violated internal regulations governing the recommended decision or otherwise engaged in improper *ex parte* communications, the Court should grant summary judgment in favor of Defendant and against Plaintiff on Counts IV and VIII.

## V.  CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant summary judgment in favor of Defendant on all counts of Plaintiff's FAC.

Date: May 7, 2022

RANDY S. GROSSMAN
United States Attorney

By  */s/ Glen F. Dorgan*
GLEN F. DORGAN
Attorneys for Defendant