RANDY S. GROSSMAN
United States Attorney
GLEN F. DORGAN (SBN 160502)
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7665
Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RONALD MADDERN,

Plaintiff,

v.

LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,

Defendants.

Case No. 3:21-cv-01298-MMA-BLM

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

DATE: June 27, 2022
TIME: 2:30 p.m.
DEPT: 3-C
JUDGE: Hon. Michael M. Anello

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................ 1

II. ARGUMENT ........................................................ 2

A. Because DHA's Coverage Denial Was Based on Relevant Factors and the Agency's Sound Judgment, Counts II, III, and V Must be Resolved in DHA's Favor ........................................................ 2

1. Plaintiff Fails to Overcome the Substantial Deference Granted to DHA in its Reasonable Interpretation of its Own Regulations ........................ 3

2. Superion Is And Remains Unproven ........................................ 5

B. Because TRICARE Coverage Hearings Are Not "Required by Statute," Count VII Must Be Resolved in DHA's Favor ........................................ 7

1. The TRICARE Statute Does Not Require Adjudicatory Hearings ................ 8

2. Plaintiff's Reliance on *Clardy v. Levi* is Misplaced ........................ 9

III. CONCLUSION ........................................................ 13

# TABLE OF AUTHORITIES

## CASES

*2-Bar Ranch Limited Partnership v. United States Forest Service*, 996 F.3d 984 (9th Cir. 2021) .......... 10, 11

*Ardestani v. I.N.S.*, 502 U.S. 129 (1991) .......... 10

*ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) .......... 2

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) .......... 1

*Clardy v. Levi*, 545 F.2d 1241 (9th Cir. 1976) .......... 9, 10, 12

*Collard v. U.S. Dept. of Interior*, 154 F.3d 933 (9th Cir. 1998) .......... 10

*Flathead Irrigation Dist. v. Zinke*, 725 Fed. Appx. 507 (9th Cir. 2018) .......... 1

*Girard v. Klopfenstein*, 930 F.d 738 (9th Cir. 1991) .......... 10

*Hells Canyon Alliance v. United States Forest Serv.*, 227 F.d 1170 (9th Cir. 2000) .......... 2

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .......... 9, 10, 11

*National Ass'n of Psychiatric Treatment Ctrs. for Children v. Mendez*, 857 F. Supp. 85 (D.D.C. 1994) .......... 1, 8, 9, 11, 12

*Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151 (9th Cir. 2012) .......... 3

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) .......... 3

*Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950) .......... 10, 11

**STATUTES / REGULATIONS**

5 U.S.C. § 553 .......... 8
5 U.S.C. § 554 .......... 1, 8, 11
5 U.S.C. § 556 .......... 8
5 U.S.C. § 557 .......... 1, 2, 8, 11, 12
5 U.S.C. § 702 .......... 12
5 U.S.C. § 706 .......... 1, 2
10 U.S.C. § 1071 – 1110b .......... 1, 8
32 C.F.R. § 199.2 .......... 6
32 C.F.R. § 199.4 .......... 1, 2, 6
32 C.F.R. § 199.10 .......... 2, 8, 11, 12

## I. INTRODUCTION

In his Motion for Summary Judgment [ECF #33-1] ("Plaintiff's MSJ"), Plaintiff Ronald Maddern ("Plaintiff) abandons Counts I, IV, VI, and VIII of his First Amended Complaint ("FAC").[1] All that remains are Counts II, III, and V (asserting violations of 5 U.S.C. §§ 706(2)(A), (2)(C), and (2)(D)) and Count VII (asserting a violation of 5 U.S.C. § 557(c)). These remaining claims present only two issues for this Court to resolve:

1. Whether the decision by the Defense Health Agency ("DHA") to deny coverage for Plaintiff's surgeries "was based on a consideration of relevant factors and whether there has been a clear error of judgment," *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S 402, 416 (1971); and

2. Whether the underlying administrative hearing was "required by statute" within the meaning of 5 U.S.C. § 557(c).

As explained below, the first issue must be resolved in DHA's favor, because governing regulations prohibit cost-sharing for unproven medical devices like Superion, and Plaintiff failed to meet his burden of proof at the administrative hearing to establish that Superion "has been the subject of well-controlled studies" which have established its "safety and efficacy" as compared with a surgical laminectomy, the "standard means of treatment" for spinal stenosis. 32 C.F.R. § 199.4(g)(15)(i)(C)-(D).

Additionally, the second issue must be resolved in DHA's favor, because the governing statute for TRICARE, 10 U.S.C. §§ 1071 - 1110b, contains no requirement for any adjudicatory hearings. *National Ass'n of Psychiatric Treatment Ctrs. for Children v. Mendez*, 857 F. Supp. 85, 94 (D.D.C. 1994).

[1] Count I sought relief under 5 U.S.C. § 706(1), which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," but Plaintiff has not identified any specific agency action that that he seeks to compel and, as such, this Court lacks jurisdiction over this claim. FAC ¶¶ 43-45, 51-52; *see Flathead Irrigation Dist. v. Zinke*, 725 Fed. Appx. 507, 510 (9th Cir. 2018). Count IV (asserting a violation of 5 U.S.C. § 706(2)(D)), Count VI (asserting a violation of 5 U.S.C. § 554(d)), and Count VIII (asserting a violation of Plaintiff's constitutional due process rights) were all based on allegations of improper *ex parte* contacts, and Plaintiff admits he has no evidence to support these claims. *See* FAC ¶¶ 78, 83, 88-89; Plaintiff's MSJ, 16:1-3.

## II. ARGUMENT

### A. Because DHA's Coverage Denial Was Based on Relevant Factors and the Agency's Sound Judgment, Counts II, III and V Must be Resolved in DHA's Favor.

Pursuant to DHA's regulations and policies, (1) a device must be proven to be safe and effective as compared with the "standard means of treatment" to be covered; (2) FDA approval is a condition precedent to cost-sharing but is not dispositive; and (3) Medicare coverage is not dispositive. 32 C.F.R. § 199.4(g)(15)(i)(C); Defendant's SSUF [ECF #32-2] ¶ 8. Consistent with these standards, the TRICARE policy manual identifies medical treatments that are excluded from coverage as neither safe nor effective. At the time Plaintiff submitted his claim, those exclusions included all interspinous spacer devices associated with CPT code 0171T and HCPCS code C1821. Defendant's SSUF ¶ 8.

In response to Plaintiff's claim, DHA considered the express exclusion for interspinous spacer devices, but nevertheless requested that MB&RD evaluate once again whether Superion "is proven and coverable." Defendant's SSUF ¶ 17. MB&RD then completed a thorough evaluation and concluded that there remains "insufficient evidence to recommend the use of [interspinous spacer devices] for the treatment of [lumbar spinal stenosis]." AR 788.

Plaintiff now faces a substantial burden in this case. He must show that DHA's decision was arbitrary, capricious, or an abuse of discretion.[2] 5 U.S.C. § 706(2)(A); *Hells Canyon Alliance v. United States Forest Serv.*, 227 F.3d 1170, 1176-77 (9th Cir. 2000). To do so, he must identify reliable evidence in the record to overcome the presumption that Superion is neither safe nor effective. 32 C.F.R. § 199.10(a)(3); AR 1035, 1304, 1312-13.

---

[2] Under Count III, Plaintiff has still yet to identify what statute DHA has acted in excess of its statutory jurisdiction, authority, or limitations or short of a statutory right. Additionally, Count V may be resolved in DHA's favor because the substantial evidence standard under 5 U.S.C. § 706(2)(E) is only applicable to cases subject to 5 U.S.C. § 557, and, as explained below in Section II.B., Section 557 does not apply in this case. Defendant recognizes as a practical matter, however, that the Ninth Circuit does not differentiate between substantial evidence and the arbitrary and capricious standard. *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1072 (9th Cir. 2015). Accordingly, as explained herein, Count V should be resolved in DHA's favor based on the evidence establishing that DHA's coverage denial was based on relevant factors and the application of sound agency judgment.

The presumption arises based on three findings, each of which are sufficient on their own to create the presumption: (1) the TRICARE policy manual ("TPM") expressly excluded interspinous spacer devices associated with CPT code 0171T and HCPCS code C1821; (2) MB&RD determined that the Superion device was "the same class of devices" as those expressly excluded by the TPM; and (3) MB&RD "recommended for the sixth time since 2007, and for the same reasons, that the [Superion device] should not be covered, because it is unproven and presented concerns about safety and durability." AR 1304. Plaintiff failed to do so at the administrative level, and he fails to do so before this Court.

Specifically, in his motion, Plaintiff presents two arguments. First, he contends that a single statement in the TPM regarding FDA coverage somehow eliminates any express exclusion for the Superion device. Plaintiff's MSJ, 11:15-12:16. Second, he argues that the regulatory term "standard means of treatment" may be construed to consider only the opinions of his personal physician. *Id.*, 12:17-14:6. Both arguments must fail.

**1. Plaintiff Fails to Overcome the Substantial Deference Granted to DHA in its Reasonable Interpretation of its Own Regulations.**

Plaintiff begins his argument citing a provision of the TPM that states in general terms that FDA-approved medical devices are covered. Plaintiff's MSJ, 11:15-20 (quoting TPM Chpt. 4, Sect. 6.1, para. 4.1). Plaintiff, however, improperly reads this provision in isolation as an overarching policy that TRICARE covers any FDA approved device. In doing so, he fails to overcome another burden—that an agency's interpretation of its own regulations are reasonable, and courts give substantial deference to that interpretation unless clearly erroneous or inconsistent. *Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1160 (9th Cir. 2012) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

The provision cited by Plaintiff must be interpreted consistent with other provisions of the TPM that specify that FDA pre-market approval is merely a condition precedent to a finding of safety and efficacy. Specifically, the policy manual states:

> Not all FDA approved devices are covered. Coverage of a medical device is subject to all other requirements of the law, rules, and policy governing

TRICARE. If the device is used for a noncovered or excluded indication, benefits may not be allowed.

Defendant's SSUF ¶ 8 (quoting TPM Chpt. 8, Sect. 5.1, para. 2.2); *see id.* (quoting TPM Chpt. 1, Sect. 2.1, para. 2.1). Similarly, Medicare coverage does not create a basis for coverage. *See* SSUF ¶ 8 (quoting TPM Chpt. 1, Sect. 2.1, para. 7.0). Finally, Healthcare Common Procedure Coding System (HCPCS) and Current Procedural Terminology (CPT) codes refer to medical billing codes for particular procedures, and those codes do not establish an endorsement or opinion on the safety and efficacy of the product. *See* AR 1300.

Pivoting to the exclusions contained in the TPM, *see* Defendant's SSUF ¶ 8 (quoting TPM Chpt. 4, Sect. 6.1, para. 5.9), Plaintiff argues that only the X-STOP product was excluded. Plaintiff's MSJ, 11:25-26. Yet, that exclusion expressly covers all procedures with CPT code 0171T and HCPCS code C1821. Defendant's SSUF ¶¶ 6-8; 13; *see* TPM Chpt 4, § 6.1, ¶ 5.9 (AR 1323). Plaintiff identified his surgery in his claim by referencing CPT code 22869 and HCPCS code C1821. Defendant's SSUF ¶ 6. Plaintiff conveniently ignores that HCPC code C1821 applies to all "interspinous process distraction devices," which includes Superion. AR 779 (identifying C1821 as "listed on the No Government Pay Procedure Code List"); *see* also AR 1330, n.3. Therefore, Plaintiff's reliance on his use of CPT code 22869 is meritless because the reference to HCPS code C1921 excluded all interspinous process distraction devices regardless of the CPT code used, and that provision was still in place at the time of the procedure.

Plaintiff nevertheless argues that no evidence was presented at the administrative hearing establishing an exclusion for coverage of interspinous spacer devices, and he chastises AJ Noel for relying on a "defect" or "loophole" in the TRICARE policy manual. Plaintiff's MSJ, 12:3-13. Yet, Plaintiff's argument is based on a misunderstanding of AJ Noel's statement. As AJ Noel explained in her recommended decision, CPT code 22869 replaced former CPT code 0171T in December 2016 because that CPT code expired. Defendant's SSUF ¶ 7. The TPM was then updated in 2019 to expressly exclude interspinous spacer devices associated with CPT code 22869. *Id.* ¶ 9; *see* TPM, Chpt 4 §

6.1, ¶ 5.9 (incorporating Change 40, January 25, 2019 changes) (AR 1330). Accordingly, AJ Noel concluded that the absence of an express reference to Superion or the new CPT code 22869 in the provisions of the TPM did not create a substantive coverage issue. AR 1305, 1314. It was in this context that AJ Noel correctly characterized the reference to the old CPT code 0171T as an administrative "defect" that "*did not create a loophole for the coverage of the Superion device or represent a change in the long-standing DHA position classifying the use of [Superion] as unproven care*." *Id*. (emphasis added).

Finally, by arguing that AJ Noel's recommended decision was based on a "complete lack of evidence," Plaintiff ignores the fact that DHA researched and reviewed Superion in light of the expired CPT code and the FDA approval. At the hearing, DHA produced a report from the MB&RD evaluating whether Superion "is safe and coverable." Defendant's SSUF ¶ 17; *see* AR 136-137. DHA OGC requested the report following Plaintiff's appeal because the original CPT code expired and Superion received FDA approval. *Id.* After a thorough evaluation, MB&RD concluded that there was still "insufficient evidence to recommend the use of [interspinous spacer devices] for the treatment of [lumbar spinal stenosis]." AR 788; *see* Defendant's SSUF ¶ 18. Therefore, the record demonstrates substantial evidence that the standing exclusion of all interspinous spacer devices was still appropriate.

Plaintiff reliance on a single passage within the TPM does not overcome the substantial deference that DHA is granted when interpreting its own regulations, and thus Plaintiff has failed to demonstrate that DHA acted arbitrarily or capriciously.

**2. Superion Is And Remains Unproven**.

Plaintiff argues that DHA's comparison of Superion with a laminectomy is improper because, in the opinion of Plaintiff's expert, Dr. Verdolin, a laminectomy could not be performed on Plaintiff. Plaintiff's MSJ, 12:21-24, 13:14-20. However, Plaintiff's argument is inconsistent with the regulatory standards for "reliable evidence."

The governing regulations specify that reliable evidence must reflect a "consensus among experts" that the device or procedure is safe and effective "*as compared with the*

*standard means of treatment of diagnosis*[.]" 32 C.F.R. § 199.4(g)(15)(D) (emphasis added). Based on the research utilized for the MB&RB report, the consensus of experts determined that the standard of means of treatment for lumbar spinal stenosis is a laminectomy. AR 773, 775. For his part, Dr. Verdolin agreed that a laminectomy is the standard means of treatment for lumbar spinal stenosis. AR 1196, 1199. Dr. Verdolin's medical opinion that a laminectomy could not be performed on Plaintiff, therefore, is a patient specific determination which does not change the consensus among experts regarding the standard means of treatment.

Additionally, expressly excluded from the definition of "reliable evidence" are:

> [S]tatements by providers or groups of providers containing only abstracts, anecdotal evidence or personal professional opinions. Also not included in the meaning of reliable evidence is the fact that a provider or a number of providers have elected to adopt a drug, device, or medical treatment or procedure as their personal treatment or procedure of choice or standard of practice.

32 C.F.R. § 199.2. Plaintiff ignores this express exclusion when he relies on Dr. Verdolin's personal professional opinion of his procedure of choice for Plaintiff, not a consensus among experts.

Other than his reliance on Dr. Verdolin's immaterial testimony regarding his "personal treatment or procedure of choice," Plaintiff produced a number of studies that he now contends represent the "highest level of evidence" regarding the safety and efficacy of Superion. Plaintiff's MSJ, 13:1-4 (citing AR 1045-1072).[3] Yet, those studies are largely

///

///

///

[3] In Plaintiff's Motion, he references a "SPORT Study." Plaintiff MSJ, 9:26-10:2, 13:27-14:2. The only document in the Administrative Record referencing the "SPORT Study" is a separate study authored by Pierce Nunley *et al.* that compares Superion to treatment using opioids. AR 1075. Plaintiff fails to mention that Nunley identified limitations to his study, which include the "absence of a nonsurgical control," the inability to "evaluate opioid usages as a primary or secondary outcome," and that the SPORT study "lacked a standardized methodology to quantify opioid usage." AR 1076-77.

limited to a comparison of Superion to the X-Stop, a device that has been removed from the market. *See* Defendant's SSUF ¶ 23.[4] By comparison, AJ Noel's recommended decision was based on MB&RD's six separate evaluations between 2007 and 2018 that found "a lack of well-controlled studies" demonstrating the safety and efficacy of Superion as compared to a laminectomy. *See* Defendant's SSUF ¶¶ 15-17.

Plaintiff's focus on the opinion of one medical professional—his own physician—is immaterial to the determination whether the Superion device is safe and effective within the meaning of the TRICARE policies and regulations. Conversely, Defendant properly construed its regulations and policies in concluding that coverage for the Superion device must be based on studies showing a "consensus among the experts" regarding the safety and efficacy of the product as compared with a laminectomy. Because Plaintiff failed to present any evidence of studies showing a "consensus among the experts"—and because MB&RD concluded there was an absence of these requisite studies—Defendant's coverage decision was clearly based on relevant factors and sound agency judgment. The Court, therefore, should deny Plaintiff's motion as to Counts II, III, and V.

**B. Because TRICARE Coverage Hearings Are Not "Required by Statute," Count VII Must Be Resolved in DHA's Favor**.

In Count VII of his FAC, Plaintiff alleges that DHA failed to "provide[] a copy of the recommended decision" and "a reasonable opportunity to submit exceptions to the recommended decision" before the final agency decision was reached. FAC [ECF #21] ¶¶ 84-86. Notably, Plaintiff does not—and cannot—allege that DHA violated its own

---

[4] The medical studies presented by Plaintiff consisted of (1) two studies authored by Vikas V. Patel, M.D., that followed outcomes for patients treated with the Superion device as compared with "a control spacer (X-Stop)"; (2) two studies authored by Pierce D. Nunley that followed outcomes for patients treated with the Superion device, with the first study using X-Stop patients as a control group and the second study using no control comparison; (3) a third study authored by Pierce D. Nunley that evaluated the use of opioid medications for patients treated with the Superion device; (4) a study authored by Jason Hartman that evaluated comorbidities only in patients treated with the Superion device; and (5) a study authored by Timothy R. Deer, M.D., (referenced by Plaintiff and his treating surgeon as the "MIST Guidelines) that reviewed and evaluated existing peer-reviewed literature. Defendant's SSUF ¶ 23. Defendant disputes all of Plaintiff's factual assertions regarding these studies. *See* Defendant's Response to Plaintiff's SSUF, Fact Nos. 9-12.

regulations; those regulations require only that the recommended decision be transmitted to the Director of TRICARE. 32 C.F.R. § 199.10(d)(12). Instead, Plaintiff's claim is premised on 5 U.S.C. § 557(c), which affords "the parties . . . a reasonable opportunity to submit . . . exceptions to the . . . recommended decision." However, Section 557 only applies in instances in which an administrative hearing is "required by statute." *See* 5 U.S.C. §§ 557(a) ("This section applies . . . when a hearing is required to be conducted in accordance with section 556"), 556(a) ("This section applies . . . to hearings required by section 553 or 554"), 553 (governing agency rule-making), 554 (governing "every case of adjudication *required by statute*") (emphasis added). Because the administrative hearing regarding Plaintiff's claim was not "required by statute," Count VII must be resolved in Defendant's favor.

**1. The TRICARE Statute Does Not Require Adjudicatory Hearings**.

The governing statute for TRICARE, 10 U.S.C. §§ 1071 – 1110b, contains no requirement for adjudicatory hearings. *National Ass'n of Psychiatric Treatment Ctrs. for Children v. Mendez*, 857 F. Supp. 85, 94 (D.D.C. 1994) ("*Mendez*").

In *Mendez*, a nonprofit trade association of regional treatment centers for emotionally ill children brought an APA suit against the Department of Defense challenging the agency's coverage determinations under CHAMPUS, the predecessor to TRICARE. *Id.* at 88-90. Among other allegations, the trade association claimed the agency violated "the requirements for formal adjudications under the APA" by refusing to produce certain agency witnesses for cross-examination in the context of a coverage appeal. *Id.* at 94. In rejecting these allegations, the court noted that "APA requirements for adjudication are triggered only where an adjudicatory hearing is required by statute," and the "CHAMPUS statute, 10 U.S.C. §§ 1071 *et seq.*, . . . sets forth no requirement for formal adjudication." *Id.* (citations omitted).

Here, as in *Mendez*, the Court must reject Plaintiff's Section 557 claim because the TRICARE statute does not require hearings, and, as such, "the requirements for formal adjudications under the APA" do not apply.

///

**2. Plaintiff's Reliance on *Clardy v. Levi* Is Misplaced.**

Like the plaintiff in *Mendez*, Plaintiff ignores TRICARE's governing statute and instead argues that his rights under the Fifth Amendment to the United States Constitution obligated Defendant to comply with Section 557. *Compare* Motion [ECF #33-1], 14:27-4 *with Mendez*, 857 F. Supp. at 94-95. To be sure, TRICARE benefits are a property interest, and the Fifth Amendment does require "that a person be given notice and a meaningful opportunity to be heard before being finally deprived of [that] property interest." *Mendez*, 857 F. Supp. at 94-95, citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). But, as noted in *Mendez*, "[t]he specific procedural protections required" depend on a balancing of three factors: (1) the gravity of the private interest affected; (2) the risk of erroneous deprivation under the current procedure, and the probable value, if any of additional procedural safeguards; and (3) the interest of the government, including the burdens of additional or substitute procedures." *Id*. at 95, citing *Mathews*, 424 U.S. at 335. Applying the "*Matthews* factors," the *Mendez* court concluded that the Fifth Amendment did not require the procedural protections asserted by the plaintiff. *Id*. at 95.

While Plaintiff references *Mathews* briefly, he offers no analysis of the *Mathews* factors in support of his contention that the Fifth Amendment required that he be afforded an opportunity to review and comment on the recommended decision. *See* Motion [ECF #33-1], 14:27-15:7. Instead, Plaintiff cites *Clardy v. Levi*, 545 F.2d 1241 (9th Cir. 1976) for the bold proposition that *all* administrative hearings that concern property rights are "required by statute" within the meaning of the APA. *Id.*, 15:8-13. Plaintiff's reliance on *Clardy*, however, is misplaced.

In *Clardy*, the Ninth Circuit considered whether the formal adjudication procedures set forth in the APA must be applied in the context of disciplinary proceedings instituted by the Bureau of Prisons. *Clardy*, 545 F.2d at 1242-43. The plaintiffs—prisoners placed in segregation confinement following an assault of another inmate—made procedural demands (e.g., a demand for representation by counsel and an opportunity for cross-examination of witnesses) in the context of their disciplinary proceedings. When these

demands were refused, they sought relief under the APA. *Id*. at 1243. Ultimately, the Ninth Circuit rejected plaintiffs' argument, noting that "the formality envisioned by [the APA is] not suited for various reasons to disciplinary proceedings of the Bureau of Prisons." *Id*. at 1244, 1246.

Here, Plaintiff does not rely on the holding of *Clardy* to support his position; instead, he relies on a broad statement made by the Ninth Circuit in its effort to re-state the legal basis proffered by the prisoner-plaintiffs for APA relief. The prisoner-plaintiffs, the Ninth Circuit noted, "insist" that the APA term "every case of adjudication required by statute" must be applicable to their disciplinary proceedings according to *Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950), a case in which the Supreme Court held that the formal adjudication procedures of the APA applied to deportation hearings. *Id*. at 1244. In this context, the Ninth Circuit noted that the prisoner-plaintiffs' reading of *Wong Yang Sung* was "quite correct[]" and "technically impressive," *id*., yet the Court ultimately rejected the prisoner-plaintiffs' argument because "history strongly suggests that the APA was not intended to apply to [prison disciplinary] proceedings." *Id*.

*Wong Yang Sung* was decided in 1950, and "Congress legislatively overruled that decision almost immediately afterward." *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991). When the Supreme Court issued its decision in *Mathews v. Elridge* twenty-six years later, serious questions developed regarding the continuing vitality of *Wong Yang Sung*. *See Collard v. U.S. Dept. of Interior*, 154 F.3d 933, 937 (9th Cir. 1998). Resolving this question, courts within the Ninth Circuit now consider *Mathews*—not *Wong Yang Sung*—to be "the standard for determining whether certain challenged administrative procedures comply with the requirements of due process." *Collard*, 154 F.3d at 937 (quoting *Girard v. Klopfenstein*, 930 F.2d 738, 742 (9th Cir. 1991)); *see 2-Bar Ranch Limited Partnership v. United States Forest Service*, 996 F.3d 984, 994 (9th Cir. 2021).

Applying *Mathews*, courts in the Ninth Circuit do not read the Fifth Amendment to require application of the statutory formal adjudicative procedures under the APA; instead, those courts ask whether the plaintiff "had an 'opportunity to be heard at a meaningful time

and in a meaningful manner.'" *2-Bar Ranch*, 996 F.3d at 995, quoting *Mathews*, 424 U.S. at 333. Here, this question must be answered in the affirmative. Plaintiff was represented by counsel and was afforded a full opportunity after ample notice to present evidence and witness testimony in support of his coverage claim. The hearing officer was then able to consider—and did consider—all evidence presented by Plaintiff. The fact that the hearing officer—acting in compliance with agency regulations and in the absence of a governing statute requiring additional formalities—did not forward a copy of her recommended decision to Plaintiff and invite comments before presented the decision to the Director of TRICARE does not alter this conclusion. *See 2-Bar Ranch*, 996 F.3d at 995 ("Plaintiffs do not contend . . . that the [agency's] administrative appeal procedures deprived them of due process. They assert, instead, that they had *some* due process right to be heard, and that the [agency's] appeal process is therefore governed by section 554—even though the specific procedures referenced in that section directly and by cross-reference are inapplicable").

Here, as in *2-Bar Ranch*, Plaintiff does not contend that the TRICARE regulations deprived him of due process; he argues instead that he had *some* due process right and, as such, Section 557 applied to require the agency to provide him an opportunity to comment on the recommended decision. But, that provision remains inapplicable by its terms.

Had Plaintiff raised a due process challenge to the TRICARE regulations, the application of the *Mathews* factors would not favor the application of a formal procedure for reviewing and commenting on the recommended decision.[5] The first of the three "*Matthews* factors" considers the gravity of the private interest affected, and it follows that this interest "is minimal" because "reimbursement is not based upon financial need." *Mendez*, 857 F. Supp. at 95. The second factor, which considers the probable value of any additional procedural safeguards, also supports this conclusion because there is limited

---

[5] Because Plaintiff did not raise a constitutional challenge to DHA's appeals process under 32 C.F.R. § 199.10, Defendant applies the *Matthews* factors for the sole purpose of explaining the Ninth Circuit's current treatment of *Wong Yang Sung* and *Matthews* and to show that the *Matthews* factors do not favor the application of the formal procedures under APA under 5 U.S.C. § 554 and 557(c).

utility in providing an opportunity to comment on a recommended decision where, as here, the plaintiff has already been afforded numerous opportunities to present evidence and arguments under 32 C.F.R. § 199.10.[6] Finally, the third factor, which considers the interests of the government, supports this conclusion. To require Defendant to revise its existing regulatory scheme and charge its hearing officers with the additional responsibility of soliciting and considering comments on a recommended decision would create a constitutionally unnecessary burden for the agency. *See Mendez*, 857 F. Supp. at 95 (recognizing the agency's "interest in the conservation of administrative resources").[7]

TRICARE's governing regulations have been in place since the 1980s. In the intervening forty years, no court considering a due process challenge has ever required the agency to augment and rewrite its regulations to include the procedures within the APA that, by their express terms, are only triggered when a hearing is required by statute. As recognized by the *Clardy* court, this historical background is significant. *See Clardy*, 545 F.2d at 1245 ("[I]t is a fact that from 1946 to the present the Bureau of Prisons has indicated its firm belief that it was not governed by the APA," and "Congress during this period has not enacted legislation designed to bring the Bureau under the procedures of the APA"). The Court, therefore, should reject Plaintiff's arguments based on *Clardy* and deny Plaintiff's motion as to Count VII.

///

---

[6] Plaintiff first presented his case when he appealed TRICARE's initial denial of the procedures. Defendant's SSUF ¶ 11. He had a second opportunity when he requested formal review to Hearings and Appeals. *Id.* ¶ 14. Plaintiff had a third opportunity when he submitted an opening statement and evidence prior to the hearing. AR 964-114. The hearing itself then presented a fourth opportunity to present evidence and arguments. He then had a fifth opportunity after the hearing to provide a closing statement and any additional evidence. AR 1288-1297. DHA's procedural safeguards provided plentiful opportunities for Plaintiff to prove his case, and a sixth opportunity through the imposition of 5 U.S.C. § 557(c) is a procedurally and constitutionally unnecessary safeguard for an already robust regulatory scheme that protects a TRICARE beneficiary's due process.

[7] Moreover, applying 557(c) implicates the higher evidentiary burden of "substantial evidence" under 5 U.S.C. 702(E), requiring revision of the standards of proof currently existing under 32 C.F.R. § 199.10. DHA's hearing is regulatory and non-adversarial, with the sole purpose of developing the record to permit the hearing officer to make a recommendation.

## III. CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court decide all Counts of the First Amended Complaint in Defendant's favor and deny all relief requested by Plaintiff.

Date: June 13, 2022

RANDY S. GROSSMAN
United States Attorney

By /s/ *Glen F. Dorgan*
GLEN F. DORGAN
Attorneys for Defendant