RANDY S. GROSSMAN
United States Attorney
GLEN F. DORGAN (SBN 160502)
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7665
Fax: (619) 546-7751
Email: glen.dorgan@usdoj.gov

Attorneys for Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MADDERN,<br><br>    Plaintiff,<br><br>v.<br><br>LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,<br><br>    Defendants. | Case No. 3:21-cv-01298-MMA-BLM<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS [ECF #36]**<br><br>DATE: June 27, 2022<br>TIME: 2:30 p.m.<br>DEPT: 3-C<br>JUDGE: Hon. Michael M. Anello |

Defendant LLOYD AUSTIN, Secretary U.S. Dept. of Defense, hereby submits the following response to Plaintiff's Statement of Undisputed Facts [ECF #36].

| No. | Plaintiff's Facts and Evidence | Defendant's Response |
|---|---|---|
| 1. | Prior to the filing of this case, Maddern was not provided with a copy of the recommended decision or a reasonable opportunity to submit exceptions. (Dkt. #21, at ¶ 85; Dkt. #24, at ¶ 85). | **Undisputed, but immaterial.** The governing regulations require only that the recommended decision be transmitted to the Director of TRICARE. 32 C.F.R. § 199.10(d)(12). Additionally, 5 U.S.C. § 557(c) does not apply, because TRICARE coverage hearings are not "required by statute." *See National Ass'n of Psychiatric Treatment Ctrs. for Children v. Mendez*, 857 F. Supp. 85, 94 (D.D.C. 1994). |
| 2. | The Superion product was covered by Medicare. (AR1163; AR1214; AR1237-8; AR1247; AR1260-1). | **Undisputed, but immaterial.** Medicare is governed by 42 C.F.R. § 1395 *et seq.*, and "TRICARE policy and benefit structure is never based solely on that of other Government medical programs, including Medicare." TPM Chpt. 1, Sec. 2.1, ¶ 7.0 (AR 1319). |
| 3. | Use of the Superion product results in decreased/no need for ongoing opioid treatments as compared to a laminectomy. (AR1073-78; AR1207-12; AR1235-6). | **Disputed and immaterial.** The study at issue, authored by Pierce Nelson, followed opioid use only in patients who were treated with the Superion device. *See* Methods, AR 1074. The author then compared the results with one prior study involving the use of opioids in patients who received laminectomies and found his results were "somewhat better than those realized after decompressive laminectomy." AR 1076. Because this study is limited in scope to opioid use and not the overall safety and efficacy of Superion as compared to a laminectomy, the study does not present a "consensus among experts" that Superion is safe and effective "as compared with the standard means of treatment or diagnosis," the laminectomy. 32 C.F.R. § 199.4(g)(15)(D). |

1

| No. | Plaintiff's Facts and Evidence | Defendant's Response |
|---|---|---|
| 4. | Before Mr. Maddern's procedures, a CPT Category I code applicable to the Superion product had issued. (AR1260-1). | **Undisputed but immaterial**. On December 31, 2016, CPT code 0171T expired and was replaced with CPT code 22869. AR 1300-01. This development is immaterial, however, because CPT codes refer to medical billing codes for particular procedures, and those codes do not establish an endorsement or opinion on the safety and efficacy of a medical device. AR 1300. |
| 5. | Prior to Mr. Maddern's procedures, the Superion product received FDA pre-market approval. (AR976-1044). | **Undisputed, but immaterial**. FDA pre-market approval is not dispositive for safety and effectiveness. TPM Chpt. 8, Sec. 5.1, ¶ 2.2 (AR 1325). |
| 6. | The articles submitted at AR1045-1073 of the two, three, four, and five year studies of the Superion product reported the results of well-controlled studies with clinically meaningful end-points published in refereed medical journals. (AR1045-1073; AR1228-37). | **Disputed and immaterial**. The studies did not compare the safety and efficacy of the Superion device to a laminectomy, the standard means of treatment or diagnosis. *See* 32 C.F.R. § 199.4(g)(15)(D). Instead, the studies either compared the Superion device to the X-Stop or followed only Superion patients with no control group. AR 1045, 1053, 1059-60, 1064-65, 1073. |
| 7. | A laminectomy would not have been safe to perform on Mr. Maddern. (AR1203-5; AR1299). | **Disputed and immaterial**. The evidence cited by Plaintiff does not support the fact purported, but instead establishes the personal professional opinion of Plaintiff's treating surgeon regarding the safest treatment of choice for Plaintiff. AR 1204 ("Maddern suffers from . . . sleep apnea, which makes him at a higher risk for general anesthesia," and "he suffers from diabetes"), AR 1299 ("Dr. Verdolin recommended the implantation of an IPD as the . . . best treatment given Beneficiary's medical history, which contraindicates the use of general anesthesia – a requirement for . . . the laminectomy procedure"). Dr. Verdolin's opinion regarding the safest treatment for |

| No. | Plaintiff's Facts and Evidence | Defendant's Response |
|---|---|---|
| | | Plaintiff is immaterial, because a provider's "personal professional opinion" or "personal treatment or procedure of choice" is expressly excluded from the regulatory definition of "reliable evidence" regarding the safety and efficacy of a medical device. 32 C.F.R. § 199.2. |
| 8. | At three years, laminectomy's had an efficacy rate in the range of 60%. (AR1199-1203). | **Disputed**. The testimony Plaintiff relies on consists solely of the testimony of his treating surgeon, Dr. Verdolin, and is merely an estimate of a finding purportedly published in a study, called the "Sport study." Yet, Dr. Verdolin's testimony was not and cannot be corroborated, because Plaintiff did not introduce the Sport study into evidence, and that study is not included in the Administrative Record. |
| 9. | At three years, the Superion product had an efficacy rate of between 81% and 91%. (AR1053). | **Disputed and Immaterial.** The study that Plaintiff references compares Superion with the X-STOP product, not laminectomies. AR 1053; *see* AR 1055 (comparative chart with X-Stop). X-STOP was discontinued because of an unacceptable complication rate. *See* Plaintiff's MSJ at 5:3-5. Therefore, comparing Superion with a discontinued, dangerous product does not provide an accurate efficacy rate and does not compare Superion with the laminectomy. Additionally, Plaintiff's own Motion, *see, e.g.,* Plaintiff's SSUF ¶ 13, goes to great lengths to make a distinction between Superion and X-STOP, yet relies on X-STOP as a tool for comparison. Finally, MB&RD reviewed this article and noted "the reported reoperation rates were approximately one-quarter of participants." AR 783. MB&RD considered that "high" and noted |

3

| No. | Plaintiff's Facts and Evidence | Defendant's Response |
|---|---|---|
|  |  | "[q]uestions remain as to the long-term safety of these devices." AR 773. |
| 10. | At five years, the Superion product had an efficacy rate of 84%. (AR1064). | **Disputed and Immaterial.** The study that Plaintiff references compares Superion with the X-STOP product, not laminectomies. AR 1064. Moreover, the article does not confirm an 84% "efficacy rate;" instead it merely indicates that 84% of patients at five years reported improved symptoms. AR 1064-65. X-STOP was discontinued because of an unacceptable complication rate. *See* Plaintiff's MSJ at 5:3-5. Therefore, comparing Superion with a discontinued, dangerous product does not provide an accurate efficacy rate and does not compare Superion with the laminectomy. Additionally, Plaintiff's own Motion, *see, e.g.,* Plaintiff's SSUF ¶ 13, goes to great lengths to make a distinction between Superion and X-STOP, yet relies on X-STOP as a tool for comparison. |
| 11. | Compared to a laminectomy measured by back and leg pain, ODI score, and ZCQ scope uniformly favored using the Superion product. (AR1108). | **Disputed and Immaterial.** The cited article is merely a review and evaluation of existing peer-reviewed literature. *See* Methods, AR 1091. Plaintiff's citation appears to focus on only one of the studies considered in the review—a study authored by Carl Lauryssen. *See* AR 1108. That study is extremely limited in comparing the efficacy of Superion with a laminectomy, because the study only considered clinical outcomes after two years. *See* AR 342-43. As such, the study did not address MB&RD's concerns regarding the long term safety of the Superion device. *See* AR 773. |

| No. | Plaintiff's Facts and Evidence | Defendant's Response |
|---|---|---|
| 12. | There is a consensus of the experts that there is the highest level of evidence that the Superion product is beneficial for patients. (AR1090-1114; AR1244-46). | **Disputed and immaterial**. The cited article is merely a review and evaluation of existing peer-reviewed literature. *See* Methods, AR 1091. Overall, MIST's Consensus Point 11 gave spacers a "Grade B, Level I, Consensus Strong" recommendation. "Level I" evidence only indicates "[a]t least 1 controlled and randomized clinical trial, properly designed." AR 1092, 1109. It is the lowest tier of Evidence Level under the MIST Guidelines. AR 1092. A Grade B is defined as "Recommendable (at least moderate evidence that measure is effective and that benefits exceed harms)." *Id*. Additionally, Consensus Point 11 expressly does not compare "spacers to open decompression." *Id*. |
| 13. | The X-STOP product and the Superion product are different products, made by different manufacturers, using different approaches. (A1045; A1056; A1074; A1104; A1106; A1121; A1131; A1250-51; A1263; AR1266). | **Undisputed but immaterial**. While the X-STOP and Superion devices are different products, made by different manufacturers, using different approaches, the two devices are similar in that they are both interspinous spacer devices associated with HCPCS code C1821 and are excluded from coverage under the TRICARE policy manual. TPM Chpt. 4, Sec. 6.1, ¶ 5.9 (AR 1322-23). |
| 14. | FDA approved surgically implanted devices required to treat illness or injury to the musculoskeletal system were a covered TriCare benefit when Mr. Maddern had the procedures. (AR1294). | **Disputed**. The provision cited by Plaintiff, TPM Chpt. 4, Sec. 6.1, ¶ 4.1 (AR 1294), ignores other provisions of the TRICARE policy manual that specify that FDA pre-market approval is merely a condition precedent to a finding of safety and efficacy and "[n]ot al FDA approved devices are covered." TPM Chpt. 8, Sec. 5.1, ¶ 2.2 (AR 1325); *see* TPM Chpt. 1, Sec. 2.1, ¶ 2.1 (AR 1318). |

5

| No. | Plaintiff's Facts and Evidence | Defendant's Response |
|---|---|---|
| 15. | There was no exclusion of the Superion product in the TriCare Policy Manual when Mr. Maddern had the procedures. (AR1296). | **Disputed**. The exclusion at issue states, "XSTOP Interspinous Process Decompression System (CPT procedure codes 0171T and 0172T, HCPCS code C1821) for the treatment of neurogenic intermittent claudication secondary to lumbar spinal stenosis is unproven." TPM Chpt. 4, Sec. 6.1, ¶ 5.9 (AR 1322-23). In his claim, Plaintiff identified his surgery by referencing HCPCS code C1821. AR 13. While Plaintiff also identified his surgery using CPT code 22869, AR 13, this CPT code replaced former CPT code 0171T in December 2016. AR 1300-01. In 2019, the TRICARE policy manual was updated to reflect this change and expressly exclude coverage for claims associated with CPT code 22869. AR 1301 n.7, 1330. Defendant reasonably interpreted its own regulations and exercised sound judgment based on relevant factors in concluding that policy manual in effect in 2017 "made it sufficiently clear that procedures performed under the codes related to the insertion of interspinous devices were considered unproven and would not be covered," notwithstanding the administrative delay in revising the policy manual to identify the current CPT code. AR 1305, 1314. |

Date: June 13, 2022

RANDY S. GROSSMAN
United States Attorney

By /s/ *Glen F. Dorgan*
GLEN F. DORGAN
Attorneys for Defendant