Avraham E. Aizenman (SBN 304663)
Email: eaizenman@reedsmith.com
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

James Pistorino (SBN 226496)
Email: james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA 94025
Telephone: (650) 400-0043

Attorneys for Plaintiff
Ronald Maddern

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RONALD MADDERN,

Plaintiff,

vs.

LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,

Defendant.

Case No. 21-cv-1298-MMA-BLM

**PLAINTIFF RONALD MADDERN'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Hearing Date: June 27, 2022
Time: 2:30 p.m.
Dep't: 3-c
Judge: Hon. Michael M. Anello

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## Table of Contents


I. BACKGROUND **Error! Bookmark not defined.**

II. Standard of Review 1

III. Causes of Action II and III 2

A. The Superion Product Is Covered/There is No Exclusion for the Superion Product 2

1. The Superion Product Is Covered 2

2. There Is No Exclusion for the Superion Product 3

B. The Superion Product is "Proven" 5

1. The Secretary Contends He Is Free to Disregard to Conclusions Of Every Authoritative Body As to Safety and Efficacy 7

2. The Secretary Contends That None of the Studies Directly Compare A Laminectomy to the Superion Product 7

3. The Secretary's Contends That Dr. Verdolin's Testimony Shed No Light On Whether There Was A "Consensus of Experts" That Superion Was Safe and Effective 8

4. The Secretary Bootstraps The Conclusion of His MB&RD 9

IV. Causes of Action V, VI, and VIII 9

A. Hearings Are "Required By Statute" 9

B. Cause of Action VI 11

V. CONCLUSION 12


REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clardy v. Levi*,
545 F.2d 1241 (9th Cir. 1976) .......... 10

*Collord v. U.S. Dept. of Interior*,
154 F.3d 933 (9th Cir. 1998) .......... 10

*Greene v. Babbit*,
943 F. Supp 1278 (W.D. Wash. 1996) .......... 11

*Matthews v. Eldridge*,
424 U.S. 319 (1976) .......... 10

*Motor Vehicle Mfrs. Assoc. of U.S. v. State Farm Mutual Auto. Inc. Co.*,
436 U.S. 29 (1983) .......... 1, 2, 4

*Nat'l Assoc. of Psychiatric Treatment Centers for Children v. Mendez*,
857 F.Supp. 85 (D. D.C. 1994) .......... 10

*Snoqualmie Indian Tribe v. F.E.R.C.*,
445 F.3d 1207 (9th Cir. 2008) .......... 1

*Won Yang Sung v. McGrath*,
339 U.S. 33 (1950) .......... 10

**Statutes**

5 U.S.C. § 554 .......... 10

5 U.S.C. § 554(d) .......... 10

5 U.S.C. § 557(c) .......... 2, 10

5 U.S.C. § 706(2)(A) .......... 1, 10

5 U.S.C. § 706(2)(D) .......... 2

5 U.S.C. § 706(2)(E) .......... 1



REED SMITH LLP
A limited liability partnership formed in the State of Delaware



**Other Authorities**

Scalia & Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) .......... 3, 5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The Secretary's motion for summary judgment should be denied. After 14 years in a wheelchair and with no other treatment options, Mr. Maddern was treated with the Superion product which enabled him to begin walking almost immediately. The product is deemed safe and effective by every authority (FDA, AMA, Medicare, a raft of scientific publications, experts in the field). Nevertheless, the Secretary has denied Maddern's claim on, *inter alia*, the frivolous grounds that the lack of an exclusion for the Superion product was an "administrative defect" / "loophole." The Secretary further chose to simply ignore all the evidence submitted regarding the safety and efficacy of the Superion product. Further, when Maddern appealed the denial of his claim, the Secretary's counsel and the decision makers concealed the recommended decision from Maddern until after this suit was filed and also did not issue a final decision until more than 18 months after the hearing in this matter. Further, the Secretary's counsel and the decision makers engaged in *ex parte* contacts about this matter and concealed them from Maddern.

The Secretary's motion should be denied and Maddern's motion granted.

## I. STANDARD OF REVIEW

The Secretary's comments regarding the standard of review are, at best, incomplete. Mot. at 6-8. For causes of action that relate the conclusion of non-coverage and the bases thereof, the decision should be reversed if it is either arbitrary and capricious and/or not supported by substantial evidence. *See* Dkt. #21 at 8 (arbitrary and capricious – 5 U.S.C. § 706(2)(A)); 9 (not supported by substantial evidence – 5 U.S.C. § 706(2)(E)). As noted in Maddern's own papers, an agency's decision can only be upheld, if at all, on the basis of the reasoning in that decision. *See Motor Vehicle Mfrs. Assoc. of U.S. v. State Farm Mutual Auto. Inc. Co.*, 436 U.S. 29, 50 (1983); *Snoqualmie Indian Tribe v. F.E.R.C.*, 445 F.3d 1207, 1212 (9th Cir. 2008).

Causes of action that are based on violation of statutory requirements are reviewed as a matter of law. *See* Dkt. #21 at 9 (5 U.S.C. § 706(2)(D)); 10 (5 U.S.C. § 557(c)).

## II. CAUSES OF ACTION II AND III

These causes of action relate to the arbitrary and capricious/not supported by substantial evidence standard. As shown in Maddern's own motion, the denial in this case is premised on: 1) the notion that there was some "specific exclusion" of the Superion product, that the lack of an exclusion for the Superion product was an "administrative defect"/"loophole", or (more vaguely) that it was "sufficiently clear" that the Superion product was not covered; and 2) that the Superion product is "unproven."

### A. The Superion Product Is Covered/There is No Exclusion for the Superion Product

#### 1. The Superion Product Is Covered

It is undisputed that the Superion product is an FDA approved, surgically implanted device for treating an illness/injury to the spine/vertebrae. Both below and in his papers to this Court, Mr. Maddern pointed to TPM, Chap. 4, Section 6.1, para. 4.1 which states:

> Services and supplies required in the diagnosis and treatment of illness or injury involving the musculoskeletal system are covered. U.S. Food and Drug Administration (FDA) approved surgically implanted devices are also covered.

Thus, simply reading the policies, the Superion product is covered.

The Secretary's current paper attempts to rely on Chap. 8, Section 5.1 for the proposition that not everything approved by the FDA will be covered, in particular if the device is used for a "noncovered or excluded indication." Mot. at 9.

As a sheer matter of procedure (as noted above), the agency's decision can only be upheld on the basis articulated by the agency. *Motor Vehicle*, 436 U.S. 50. In the



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

present case, Dr. Yale's decision did not rely on § 5.1 in making his conclusions and, therefore, it is improper for the Secretary to attempt to rely on that section to defend the decision(s) below. The Court need make no further inquiry in this regard.

Should the Court choose to, substantively, the Secretary's position is also flawed. First, of course, there has never been any contention that use of the Superion product to treat Mr. Maddern was an excluded indication or a use not covered by the FDA approval. Indeed, there never could be because the Superion product was used to treat Maddern in exactly the way contemplated by the FDA approval - to dramatic effect.

Second, the Chapter and Section cited by Maddern specifically concerns surgery related to the musculoskeletal system (Chap 4, Sec. 6.1), while the Chapter and Section the Secretary cites (Chap. 8, Sec. 5.1) is "Other Services/Medical Devices." Thus, the specific coverage provision of Chap. 4, Sec. 6.1 controls over the (perhaps) more general coverage provision of Chap. 8, Sec. 5.1). *See* Scalia & Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) § 28 (general/specific cannon).

The Secretary did not meet his burden (on this motion) to show non-coverage.

**2. There Is No Exclusion for the Superion Product**

The Secretary appears to contend that the X-STOP product and the Superion product are the same/versions of each other and that there was some exclusion for the Superion product. Mot. at 8 ("agency policies exclude interspinous spacer devices like Superion from coverage"); 9 ("the predecessor to Superion, the X-STOP device"); 10 ("the manual excluded *all* interspinous spacer devices associated with CPT procedure code 0171T and HCPCS code C1821") (emphasis in original); *Id*. ("express exclusion applicable to the old CPT code").[1]

[1] The Secretary contends that he did not confuse the X-STOP and Superion products. Mot. at 14-16. None of the Secretary's protestations can explain his repeated reference to the X-STOP as a "prior version" of the Superion product and effort to relying on an exclusion that, on its face, applies only to the X-STOP product.

As an initial matter, Ms. Noel contended that there was a "specific exclusion of from coverage of a prior version of this IPD device" (AR1305), while simultaneously contending that the lack of an exclusion was an "administrative defect"/"loophole." *Id*. Dr. Yale reiterated the "administrative defect"/"loophole" claim but (rather than an alleged "specific exclusion") relied more vaguely on an alleged "long-standing DHA policy classifying the Vertiflex Superion interspinous spacer procedure as unproven." AR1314.

As a sheer matter of procedure (as noted above), the agency's decision can only be upheld on the basis articulated by the agency. *Motor Vehicle*, 436 U.S. 50. Thus, because Dr. Yale's decision was founded on the notion that there was no exclusion[2], the Secretary's denial cannot be defended on the grounds that there was, in fact, an exclusion. To the extent that Dr. Yale's conclusion was founded on an alleged "long-standing DHA policy classifying the Vertiflex Superion interspinous spacer procedure as unproven", the decision did not identify that policy and the Secretary cannot fabricate a new basis for Dr. Yale's conclusion on judicial review. The Court need go no farther than this to resolve the Secretary's motion in this regard.

Should the Court choose to, substantively, the Secretary's contentions do not withstand even the slightest scrutiny. Paragraph 5.9 of the TPM stated:

> X-STOP interspinous Process Decompression System (CPT procedure codes 0171T and 0172T, HCPCS code C1821) for the treatment of neurogenic intermittent claudication secondary lumbar spinal stenosis is unproven.

*See* AR1296. Based on this, apparently, the Secretary contends that "all" interspinous spacers were excluded. Mot. at 10. Simply wishing or pretending that the express limitation "X-STOP" is not there will not make it so. The Secretary's contention in this regard is not just wrong, it is baseless. Technically speaking, of course, the Secretary's

[2] Which Dr. Yale chalked up to an "administrative defect" / "loophole." AR1314. That is a legally unsupportable position which is reflective of the absence of a neutral decision maker.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

effort to read out the word "X-STOP" violates canons of construction, *e.g.*, cannon against surplusage and "*expressio unius est exclusio alterius*." *See* Scalia & Garner, §§ 26 (surplusage cannon); 10 (negative implication). On its face, the exclusion is limited to the X-STOP product and says nothing about the Superion product.

The Secretary's contentions regarding CPT codes (Mot. at 10-11) reflect a fundamental misunderstanding of what those are. As Maddern showed in his own papers, the "Category" of a CPT code reflects the assessment by the AMA of a medical procedure. A "Category III" CPT code reflects the AMA's determination that, based on the evidence at that time, the procedure is considered experimental/investigational. By contrast, a "Category I" CPT code is the highest level of approval and reflects the AMA's assessment that: 1) the procedure is performed by many physicians across the United States; 2) the procedure is consistent with current medical practice; 3) the clinical efficacy of the procedure is document in peer reviewed literature. *See* Dkt. #33-1 at 4 (*citing* AMA guidelines). A Category I CPT code is only issued by the AMA based on strict compliance with the criteria for a Category I CPT Code, not the amount of time a Category III code has been in effect. Thus, when the AMA issued a Category I CPT code based on the only spacer on the market (the Superion product), that reflected the fact of the AMA's changed assessment of spacers. The Secretary's apparent notion that codes are interchangeable and that Category III codes "expire" (like last week's produce) and are simply "replaced" with Category I codes is without basis.

**B. The Superion Product is "Proven"**

Putting aside the specific inclusion of FDA approved, surgically implanted items to address musculoskeletal illness/injury (*i.e.*, the Superion product), Maddern showed that the Superion product was "proven safe and effective." As detailed in Maddern's own motion for summary judgment (*see* Dkt. #33-1 at 2-5; 8-10; 12-14), Maddern produced unrebutted evidence of:

1) the FDA pre-market approval;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2) the adoption of the Category I CPT code by the AMA;

3) coverage by Medicare of the Superion product;

4) scientific articles appearing in peer-reviewed publications demonstrating the safety and efficacy of the Superion product at 2, 3, 4, and 5 years;

5) additional scientific articles demonstrating the safety and efficacy of the Superion product for use in people with comorbidities and the reduction in the use of opioids as compared to a laminectomy;

6) the MIST paper reflecting the further consensus of the experts and comparing laminectomy outcomes to those using spacers; and

7) the testimony of Dr. Verdolin with regard to all of the above as well as the MAUDE database records (reflecting an extremely small number of complications) and the SPORT trial (reflecting that a laminectomy was only around 60% effective at 3 years while the Superion product was between 81 and 91% effective at three years and 84% effective at 5 years).

Importantly, Dr. Verdolin testified that a laminectomy was not an option for treating Maddern because he also suffers from diabetes. Thus, the "standard" treatment of a laminectomy was not an option. The only options were: 1) the treatment Maddern has been receiving that had left him in a wheelchair for 14 years and on opioids (*i.e.*, no treatment/no effective treatment); and 2) the Superion product.

The Secretary's motion for summary judgment contends that Maddern did not show that the Superion product was "proven." Mot. at 11-14. Before addressing the Secretary's arguments, it is worth noting that the Secretary did not and does not challenge any of the articles, etc. submitted by Maddern as not being "peer-reviewed", etc. In addition, at the hearing, Dr. Verdolin testified as a fact witness as to his treatment of Maddern. Dr. Verdolin was also offered and admitted as an "expert" in the field. *See* AR1189 (Transcript at 73:7-18) (ADMIN. JUDGE NOEL: All right. Do you have any objection to my considering Dr. Verdolin as an expert in this subject matter? MS.

GREER: No, ma'am."). Dr. Verdolin's testimony as both a fact witness and an expert witness is also unrebutted and unchallenged.

Despite the mountain of unrebutted evidence/testimony and the fact the Maddern literally walked after the procedure, the Secretary contends that the Superion product was still "unproven." The Secretary's contention in this regard is based on the following premises/excuses:

**1. The Secretary Contends He Is Free to Disregard to Conclusions Of Every Authoritative Body As to Safety and Efficacy**

The Secretary contends that under his regulation he may disregard the conclusion of the very agency charged with making safety and efficacy determination (*i.e.*, the FDA) as well as the primary agency responsible for providing payment for medical claims (i.e., Medicare). Mot. at 9-10; In this regard, the Secretary alleges a unique power to see the truth, while those who are actually experts do share the Secretary's great insights.

At the end of the day, whatever the Secretary regulations say or do not say, they cannot overcome the requirements of the APA that any decision not be arbitrary and capricious/be supported by substantial evidence. Thus, the Secretary cannot promulgate regulations saying no amount of evidence can show that a product is safe and effective and, on that basis, bury his head in the sand an ignore all the evidence. Rather than dispute the accuracy of the FDA' and Medicare's conclusions, the Secretary simply contends that any evidence offered is insufficient. Clearly, that approach is barred and a decision premised on that idea is arbitrary and capricious/not supported by substantial evidence.

**2. The Secretary Contends That None of the Studies Directly Compare A Laminectomy to the Superion Product**

As shown in Maddern's own papers, a laminectomy is not a standard means of treating persons who have stenosis *and* diabetes. This is so, at least, because it is too





REED SMITH LLP
A limited liability partnership formed in the State of Delaware

dangerous to use general anesthesia on such persons. Maddern suffers from diabetes and, therefore, a laminectomy could not be performed on him. AR1203-5; AR1299.

The Secretary does not contest any of this.

Thus, given that a laminectomy is not a standard means of treating someone with diabetes, the Secretary's demand for a direct comparison between a laminectomy and the Superion product simply violate the Secretary's own regulations. As between no treatment/no effective treatment, every study, etc. regarding the Superion product demonstrated its safety and efficacy.

Moreover, as demonstrated, even though a laminectomy was not a standard means of treating his conditions, Maddern produced evidence of the scientific papers comparing the failure rate of a laminectomy to the Superion product, the reduction of opioid use, and the improved responses using spacers. AR1199-1203; AR1053; AR1064; AR1108. Thus, while this is a misguided inquiry, Maddern actually made the showing.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**3. The Secretary's Contends That Dr. Verdolin's Testimony Shed No Light On Whether There Was A "Consensus of Experts" That Superion Was Safe and Effective**

The Secretary contends that Dr. Verdolin's testimony shed no light on the consensus of experts that the Superion product was safe and effective. Mot. at 13. There is no evidence to support this contention.

Indeed, Dr. Verdolin testified about the CPT Category I code assigned (AR1237; AR1251 "achieved consensus"), the FDA approval (AR1225-27), Medicare coverage (AR1237), the various scientific papers showing the effectiveness of the Superion product, and the conclusions of the MIST paper by the "luminaries" in the field (AR1244). In addition, Dr. Verdolin testified about the "comorbidities" paper demonstrating the effectiveness of the Superion product for persons who could undergo a laminectomy. AR1245.

Indeed, the assignment of a Category I CPT code, by definition, reflects the consensus of experts as to the safety and efficacy of the Superion product. Simply pretending that Dr. Verdolin did not testify as demonstrated will not make it so.

**4. The Secretary Bootstraps The Conclusion of His MB&RD**

With regard to the MB&RD determination that is the subject of this review, the Secretary contends that is dispositive. Mot. at 13. That is, the initial rejection was based on the MB&RD allegations and those are the subject of this review. As offered by the Secretary, the MB&RD conclusions should be upheld because the MB&RD made the conclusions. This is simple bootstrapping. Maddern showed, based on all the evidence submitted that the Superion product was safe and effective and, having made that showing, the Secretary did not rebut it.

Indeed, with regard to the MB&RD, Dr. Verdolin testified that it appeared to be prepared by persons without medical degrees. See AR1241-42.

At the end of the day, Maddern presented a mountain of evidence showing that the Superion product was proven safe and effective. The Secretary simply chose to ignore it and deny coverage. That is the epitome of arbitrary and capricious/not supported by substantial evidence. Indeed, there is literally no evidence that the Superion product is not safe and effective. The Secretary's did not carry his burden on summary judgment, his motion should be denied, and Maddern's granted.

## III. CAUSES OF ACTION V, VI, AND VIII

### A. Hearings Are "Required By Statute"

With respect to Causes of Action V, VI, and VII, the Secretary's motion is initially premised on the idea that a hearing regarding the denial of Maddern's benefits was not "required by statute." Mot. at 17-18. This is so, the Secretary contends, because 10 U.S.C. § 1071 – 1110b "contains no requirement for adjudicatory hearings." That is not correct.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

As articulated by the Supreme Court in multiple instances, before a person can be finally derived of a property interest, the due process clause of the Fifth Amendment requires a hearing. *Matthews v. Eldridge*, 424 U.S. 319, 332-333 (1976) ("This Court has consistently held that some form of hearing is required before an individual is finally deprived of a property interest. … The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (cleaned up). Further, with regard to the requirements of 5 U.S.C. §§ 554(d), 557(c), and 706(2)(A), *e.g.*, the Supreme Court has held that "required by statute" includes hearings expressly required by statute as well as hearings required by the Constitution. *Won Yang Sung v. McGrath*, 339 U.S. 33, 48-51 (1950) (deportations subject to hearing requirement under the APA, though Immigration Act did not explicitly require one). *Clardy v. Levi*, 545 F.2d 1241, 1244 (9th Cir. 1976) ("Hearings compelled by reason of the due process Fifth Amendment requirement are treated for purposes of 5 U.S.C. § 554 as required 'by statute.'"). *See also Collord v. U.S. Dept. of Interior*, 154 F.3d 933, 936 (9th Cir. 1998).[3]

In the present case, Maddern has a property interest in continued receipt of Government benefits that is protected by the Fifth Amendment due process protections. *Matthews*, 424 U.S. at 332. Thus, the requirements of §§ 554(d), 557(c), and 706(2)(A) applied to the Secretary's handling of Maddern's claim and, *e.g.*, the Secretary was required to provide Maddern a copy of the recommended decision and an opportunity to submit exceptions thereto. Because the Secretary failed to comply with these fundamental requirements, the Secretary violated the statutory requirement.

[3] Indeed, the Secretary relies on a case (*Nat'l Assoc. of Psychiatric Treatment Centers for Children v. Mendez*, 857 F.Supp. 85, 93-95 (D. D.C. 1994)), where the Court concluded as Maddern asserts here. Mot. at 18. While that Court considered the same Constitutional due process requirement arising from a property interest, that Court was faced with different alleged procedural protections than those in this case and was not faced with, e.g., the failure to provide a copy of a recommended decision prior to the issuance of a final decision.

In the present case, it is undisputed that the Secretary did not provide Maddern a copy of the recommended decision and an opportunity to submit exceptions. *See* Dkt. #21 at ¶ 85; Dkt. #24 at ¶ 85. Thus, the Secretary's motion with respect to Cause of Action VII in this regard must be denied. Mot. at 20.[4]

**B. Cause of Action VI**

As set forth in other papers and is undisputed, in this case, counsel for the Secretary and both Ms. Noel and Dr. Yale engaged in a series of *ex parte* contacts about this case and colluded to conceal the communications from Maddern. During this time, Ms. Greer falsely represented when a recommended decision issued and conspired to conceal the recommended decision from Maddern. From the date of the hearing, the Secretary sat on the matter for more than 18 months until Maddern was forced to retain counsel to threaten a suit for a writ of mandamus unless a decision was received within 10 days. Thereafter, a "final decision" issued premised on the idea that the actual lack of an exclusion was an "administrative defect" or "loophole" and denying Maddern's claim. Meanwhile, the recommended decision would continue to be concealed from Maddern until after this suit was filed.

Only after Maddern deduced that there were *ex parte* contacts and filed suit did the Secretary admit to some *ex parte* contacts while continuing to conceal others. Subsequently, Maddern's motion for discovery of the *ex parte* contacts was denied. *See* Dkt. #29. Respectfully, Maddern disagrees.

Nevertheless, Maddern concedes that, because this Court has refused to allow discovery of, *e.g.*, the admitted *ex parte* contacts between Ms. Greer and Dr. Yale about this case, Maddern lacks evidence to prove his claim.[5]

---

[4] For these same reasons, the Secretary's motion (Mot. at 20) with regard to Cause of Action IV (done without observance of the procedure required by law) must be denied.

[5] The same result would have been achieved in *Greene v. Babbit*, 943 F. Supp 1278 (W.D. Wash. 1996) had the record been limited the final decision crafted by the Secretary and his counsel.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## IV. CONCLUSION

For the reasons set forth above, the Secretary's motion should be denied. Conversely, Maddern's motion should be granted.

DATED: June 13, 2022

Respectfully submitted,

REED SMITH LLP

By: s/ Avraham E. Aizenman
Avraham E. Aizenman
Email: eaizenman@reedsmith.com

By: s/ James C. Pistorino
James C. Pistorino
Email: james@dparrishlaw.com

*Attorneys for Plaintiff Ronald Maddern*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware