Avraham E. Aizenman (SBN 304663)
Email: eaizenman@reedsmith.com
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

James Pistorino (SBN 226496)
Email: james@dparrishlaw.com
Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043

Attorneys for Plaintiff
Ronald Maddern

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MADDERN,<br><br>        Plaintiff,<br><br>  vs.<br><br>LLOYD AUSTIN, in his capacity as Secretary of the United States Department of Defense,<br><br>        Defendant. | Case No. 21-cv-1298-MMA-BLM<br><br>**PLAINTIFF RONALD MADDERN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  June 27, 2022<br>Time:  2:30 p.m.<br>Dep't:  3-c<br>Judge: Hon. Michael M. Anello |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | RESPONSE TO STATEMENT OF MATERIAL FACTS | 1 |
| II. | The Denial of Coverage Should be Reversed | 3 |
| | A. There Is No Exclusion of the Superion Product | 3 |
| | B. The Superion Product Was Proven | 4 |
| III. | Violation of 5 U.S.C. § 557(c) | 6 |
| IV. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2 Bar Ranch Limited Partnership v. United States Forest Service*,
   996 F.3d 984 (9th Cir. 2021) ................................................................................. 8

*Clardy v. Levi*,
   545 F.2d 1241 (9th Cir. 1976) ........................................................................... 6, 7

*Collord v. U.S. Dept. of Interior*,
   154 F.3d 933 (9th Cir. 1998) ................................................................................. 7

*Matthews v. Eldridge*,
   424 U.S. 319 (1976) ..................................................................................... 6, 7, 8

*Nat'l Assoc. of Psychiatric Treatment Centers for Children v. Mendez*,
   857 F.Supp. 85 (D. D.C. 1994) ............................................................................. 7

*Won Yang Sung v. McGrath*,
   339 U.S. 33 (1950) ............................................................................................ 6, 7

**Statutes**

5 U.S.C. § 554 ............................................................................................................ 6

5 U.S.C. § 554(d) ....................................................................................................... 6

5 U.S.C. § 557(c) .................................................................................................... 6, 7

5 U.S.C. § 706(2)(A) ................................................................................................. 6

Mr. Maddern's motion for summary judgment should be granted. As set forth in Maddern's motion papers, the Secretary's denial of Maddern's claim is arbitrary and capricious and not supported by substantial evidence and should be reversed. In addition, the Secretary violated the statutory command when he concealed the recommended decision from Maddern until after this case was filed.

As to the actual bases for the denial, the Secretary cannot defend his contention that there was some exclusion for the Superion product and/or that the lack of an exclusion was the result of an "administrative defect" or a "loophole." Likewise, the Secretary's effort to defend his contention that the Superion product is unproven is premised on simply ignoring all the evidence submitted. That is not a good faith basis for rejecting a claim.

With regard to the statutory violation, the Secretary's concession that a hearing was required by the due process clause of the Fifth Amendment is fatal to the Secretary's defense. Because a hearing was required, pursuant to the statute, the Secretary was required to provide Maddern with a copy of the recommended decision and a reasonable opportunity to submit exceptions. The Secretary failed to do that, and, therefore, violated the statute. Maddern's motion for summary judgment should be granted.

**I.     RESPONSE TO STATEMENT OF MATERIAL FACTS**

While the Secretary has disputed numerous facts, in each case, the dispute is not about the facts alleged. Instead, the Secretary simply wishes that the sources do not say what they do.

For example, a laminectomy is associated with long-term use of opioids, which Dr. Verdolin testified is "quite dangerous" and the use of the Superion product results in reduced/no need for opioid treatment. Thus, Dr. Verdolin testified that this demonstrated that safety and efficacy of the Superion product over a laminectomy. AR1235-36 ("speaks to its effectiveness and inherent safety"). Citing both the scientific

papers and Dr. Verdolin's unrebutted testimony, Separate Statement of Fact #3 alleged: "Use of the Superion product result in decreased/no need for ongoing opioid treatments as compared to a laminectomy." While not contesting that any of the sources say what is alleged or offering counter-evidence, the Secretary disputed the fact on the grounds that he prefers a different scientific comparison. Obviously, that is not sufficient to carry the Secretary's burden.

The Secretary employed the same approach with regard to Separate Statement of Fact # 6: "The articles submitted at AR1045-1073 of the two, three, four, and five year studies of the Superion product reported the results of well-controlled studies with clinically meaningful end-points published in refereed medical journals."

The Secretary employed the same approach with regard to Separate Statement of Fact # 8: "At three years, laminectomy had an efficacy rate in the range of 60%."

The Secretary employed the same approach with regard to Separate Statement of Fact # 9: "At three years, the Superion product had an efficacy rate of between 81 and 91%."

The Secretary employed the same approach with regard to Separate Statement of Fact # 10: "At five years, the Superion product had an efficacy rate of 84%."

The Secretary employed the same approach with regard to Separate Statement of Fact # 11: "Compared to a laminectomy measured by back and leg pain, ODI scope, and ZCQ score uniformly favored using the Superion product."

The Secretary employed the same approach with regard to Separate Statement of Fact # 12: "There is a consensus of the experts that there is the highest level of evidence that the Superion product is beneficial for patients."

With regard to other facts, the Secretary disputes them but, again, does not dispute that the cited references say what is alleged or offer any counter-evidence. For example, Dr. Verdolin testified that a laminectomy could not be safely performed on Maddern and, thus, a laminectomy was not a treatment option for him. Citing this

– 2 –
PLAINTIFF RONALD MADDERN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

testimony, Separate Statement of Fact # 7 alleged: "A laminectomy would not have been safe to perform on Mr. Maddern." The Secretary disputes this fact but does not offer any evidence to counter Dr. Verdolin's testimony. Instead, the Secretary merely avers that it is just Dr. Verdolin's testimony. Without objection, Dr. Verdloin was admitted both as a fact witness and as an expert witness and the Secretary did not attempt to counter/impeach Dr. Verdolin's testimony in any way. Thus, by itself, Dr. Verdolin's testimony is sufficient to establish the points on which it is offered. While the Secretary was free to offer his own evidence in the form of expert testimony, scientific papers, etc. to counter Dr. Verdolin's testimony, the Secretary did not do so and Dr. Verdolin's testimony is unrebutted.

With regard to Separate Statement of Fact # 15 (*i.e.*, "There was no exclusion of the Superion product in the TriCare Policy Manual when Mr. Maddern had the procedures."), the Secretary's effort to rely on an exclusion for the X-STOP product is telling. The Secretary offered no evidence that the Superion product was excluded at the time Maddern had the procedures and Maddern's evidence in this regard is unrebutted.

**II.     THE DENIAL OF COVERAGE SHOULD BE REVERSED**

    **A.     There Is No Exclusion of the Superion Product**

As shown in Maddern's own papers, pursuant to Chap 4, Sec. 6.1, para 4.1 of the TriCare Policy Manual in effect at the time:

> Services and supplies required in the diagnosis and treatment of illness or injury involving the musculoskeletal system are covered. U.S. Food and Drug Administration (FDA) approved surgically implanted devices are also covered.

In the present case, it is undisputed that the Superion product was such an FDA approved surgically implanted device. Thus, the product is covered within the terms of the TriCare policy.

– 3 –
PLAINTIFF RONALD MADDERN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

As shown, both the recommended decision and the final decision contended that, while there was no exclusion for the Superion product, that was an "administrative defect" / "loophole." That is a position made from whole cloth and totally devoid of merit.

The gist of the Secretary's current opposition is that there was an exclusion limited to the X-STOP product but that the word "X-STOP" should be ignored and *all* spacers considered excluded. Opp. at 3-5. Obviously, rejections founded on ignoring the very words of the coverage policies lack merit.[1]

Maddern's showing that the Superion product was covered is unrebutted.

### B. The Superion Product Was Proven

With regard to whether the Superion product was "proven", Maddern's showing is unrebutted. As shown in Maddern's papers, Maddern presented evidence of:

1) the FDA's approval;

2) Medicare coverage;

3) the AMA's award of a Category I CPT code;

4) scientific papers showing the 2, 3, 4, and 5 year safety and efficacy of the Superion product;

5) a scientific paper showing reduced usage of opioids when using the Superion product as compared to a laminectomy;

6) a scientific paper showing the outcomes of using the Superion product on persons with comorbidities (like Maddern);

7) a scientific paper showing the consensus of the experts (the MIST study) as the safety and efficacy of the Superion product and improved outcomes are compared to a laminectomy;

---

[1] As Maddern has noted in other papers, CPT codes apply to entire categories of procedures/products. Thus, all interspinous spacer products would have initially come within the ambit of CPT Code 0171T, HCPCS C1821, 22869. However, rather than exclude anything with these codes, the TriCare Manual only excluded the X-STOP product. Later, after the X-STOP product was withdrawn and based solely on the performance of the Superion product, a Category I CPT code was awarded to spacers given their demonstrated safety and efficacy.

– 4 –
PLAINTIFF RONALD MADDERN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

8) testimony regarding the failure rates of laminectomy's as compared to the Superion product;

9) testimony regarding the MAUDE database complication entries; and

10) the fact that a laminectomy was not an option for Maddern given his comorbidities.

All of this evidence was unrebutted.

In opposition, the Secretary contends that he has regulations saying that he can ignore all the evidence refuse to consider the conclusions of the very entities charged with making the safety and efficacy determinations conclusive. Opp. at 5-7. Regardless of the merits of that position, pursuant to the APA, any decision the Secretary does make cannot be arbitrary and capricious and must be supported by substantial evidence. Thus, because ignoring all the evidence is arbitrary and capricious and/or the conclusion that the Superion product is not proven safe and effective is not supported by substantial evidence, the decision must be reversed.

The Secretary has never offered any evidence that a laminectomy is the "standards means" of treating someone with diabetes, while the uncontradicted testimony of Dr. Verdolin and the "comorbidities" study is that it is not. Thus, again, as between no treatment/no effective treatment and the evidence offered regarding the Superion product's safety and efficacy, the Superion product is "proven" and, again, covered. Moreover, even as between the Superion product and a laminectomy, Maddern's evidence that the Superion product has greater efficacy at 3 and 5 years, results in reduced/no opioid usage, and better outcomes was unrebutted.

Because Dr. Verdolin's testimony was comprehensive and unrebutted, the Secretary alleges that it does not reflect the "consensus of experts." Opp. at 5-6. This simply misses the point. Again, applying the hierarchy of reliable evidence, Maddern provided the highest level in the form of the published scientific studies/FDA approval/etc. Thus, Dr. Verdolin's testimony was based on these materials, *e.g.*, rather than his own anecdotal experience. Simply as an example, when Maddern presented

the evidence of the FDA approval, the AMA Category I CPT code, and the MIST study that was evidence of the "consensus of experts."

There simply has never been any evidence that the Superion product is anything other than safe and effective as compared to either no treatment/no effective treatment and/or a laminectomy. The Secretary's decision below was based on confusing the X-STOP product with the Superion product/ignoring the evidence. This is the very definition of arbitrary and capricious/lacking substantial evidence to support and the decision should be reversed.

### III.   VIOLATION OF 5 U.S.C. § 557(C)

As set forth in Maddern's own papers, the Secretary violated 5 U.S.C. § 557(c) when, at least, the Secretary concealed the recommended decision from Maddern and failed to provide him with an opportunity to submit exceptions prior to the final decision.

As articulated by the Supreme Court in multiple instances, before a person can be finally deprived of a property interest, the due process clause of the Fifth Amendment requires a hearing. *Matthews v. Eldridge*, 424 U.S. 319, 332-333 (1976) ("This Court has consistently held that some form of hearing is required before an individual is finally deprived of a property interest. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (cleaned up). Further, with regard to the requirements of 5 U.S.C. §§ 554(d), 557(c), and 706(2)(A), *e.g.*, the Supreme Court has held that "required by statute" includes hearings expressly required by statute as well as hearings required by the Constitution. *Won Yang Sung v. McGrath*, 339 U.S. 33, 48-51 (1950) (deportations subject to hearing requirement under the APA, though Immigration Act did not explicitly require one). *Clardy v. Levi*, 545 F.2d 1241, 1244 (9th Cir. 1976) ("Hearings compelled by reason of the due process Fifth Amendment requirement are treated for purposes of 5 U.S.C. §

554 as required 'by statute.'"); *see also Collord v. U.S. Dept. of Interior*, 154 F.3d 933, 936 (9th Cir. 1998).

In the present case, Maddern has a property interest in continued receipt of Government benefits that is protected by the Fifth Amendment due process protections. *Matthews*, 424 U.S. at 332. Thus, the requirements of §§ 554(d), 557(c), and 706(2)(A) applied to the Secretary's handling of Maddern's claim and, *e.g.*, the Secretary was required to provide Maddern a copy of the recommended decision and an opportunity to submit exceptions thereto. Because the Secretary failed to comply with these fundamental requirements, the Secretary violated the statutory requirement.

In opposition, the Secretary concedes, as he must, that Maddern has a property interest in the benefits sought and that a hearing was required by due process clause of the Fifth Amendment to the Constitution before Maddern can be deprived of it. Opp. at 9. [2] Given that, as set forth in *Won Yang Sung*, *Clardy*, and *Collord*, such a hearing is treated as "required by statute" under § 557, etc. Thus, these proceedings are treated as ones where a hearing is required by statute and, for example, the Secretary violated § 557(c) when he failed/refused to provide Maddern a copy of the recommended decision and an opportunity to submit exceptions.

Respectfully, all of the material appearing at pages 9-11 of the Secretary's brief is simply irrelevant. Once a hearing was required, under § 557(c), the Secretary's was required to provide Maddern with a copy of the recommended decision and an opportunity to submit exceptions before the final decision. Whatever the format/formality of a "hearing" and whether it complies with due process requirements (e.g., whether the exceptions could be argued orally, submitted in person,

---

[2] Indeed, the Secretary relies on a case (*Nat'l Assoc. of Psychiatric Treatment Centers for Children v. Mendez*, 857 F.Supp. 85, 93-95 (D. D.C. 1994)), where the Court concluded as Maddern asserts here. While that Court considered the same Constitutional due process requirement arising from a property interest, that Court was faced with different alleged procedural protections than those in this case and was not faced with, *e.g.*, the failure to provide a copy of a recommended decision prior to the issuance of a final decision.

– 7 –
PLAINTIFF RONALD MADDERN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

responses/replies should have been allowed), etc. is irrelevant because the statute required the Secretary to provide Maddern a copy and he did not do so. Thus, the Secretary's citation to cases such as *2 Bar Ranch Limited Partnership v. United States Forest Service*, 996 F.3d 984, (9th Cir. 2021) simply misses the point. Likewise, the Secretary's effort to minimize/distinguish *Matthews v. Eldridge* is also unavailing. Regardless of whatever level of formality/amount of process would be required by the due process clause, because a hearing was required, the Secretary violated the statute when he failed to provide a copy of the recommended decision and provide Maddern a reasonable opportunity to submit exceptions.

Thus, Maddern's motion for summary judgment should be granted.

## IV.  CONCLUSION

For the reasons set forth above, Maddern's motion for summary judgment should be granted.

DATED: June 17, 2022

Respectfully submitted,

REED SMITH LLP

By: /s/ Avraham E. Aizenman
Avraham E. Aizenman
Email:  eaizenman@reedsmith.com

By: /s/ James C. Pistorino
James C. Pistorino
Email:  james@dparrishlaw.com

*Attorneys for Plaintiff Ronald Maddern*